**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| K. MIZRA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO. 6:20-CV-01031-ADA** |
| | ) | |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT CISCO SYSTEMS, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

   I.   BRIEF OVERVIEW OF THE '705 AND '892 PATENTS........................................ 1

     A.  U.S. Patent No. 8,234,705 ('705 Patent). ....................................................... 1

     B.  U.S. Patent No. 8,965,892 ('892 Patent). ....................................................... 3

   II.  DISPUTED TERMS AND CONSTRUCTIONS ........................................................ 4

     A.  U.S. Patent No. 8,234,705 ............................................................................... 4

        1.  "trusted platform module" .................................................................... 4

     B.  U.S. Patent No. 8,965,892 ............................................................................. 10

        1.  "document" ........................................................................................... 10

        2.  "electronic document" ........................................................................ 17

  III.  AGREED UPON CONSTRUCTIONS ..................................................................... 18

CONCLUSION............................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*,
    473 F.3d 1196 (Fed. Cir. 2007)..................................................................................16

*CCS Fitness, Inc. v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002)....................................................................................8

*Chemtall, Inc. v. United States*,
    878 F.3d 1012 (Fed. Cir. 2017)..................................................................................15

*CloudofChange, LLC v. NCR Corp.*,
    No. 6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020)..........................12

*Cordis Corp. v. Bos. Sci. Corp.*,
    658 F.3d 1347 (Fed. Cir. 2011)....................................................................................8

*Genentech, Inc. v. Iancu*,
    809 F. App'x 781 (Fed. Cir. 2020) ...............................................................................9

*Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*,
    139 S. Ct. 628 (2019)................................................................................................14

*Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*,
    Nos. 2016–1284, 2016–1787, 2018 WL 1583031 (O'Malley, J. concurring in
    the denial of panel rehearing) ...................................................................................15

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014)..................................................................................16

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004)..................................................................................16

*Int'l Biomedical, Ltd. v. Gen. Elec. Co.*,
    No. 1-14-CV-397-LY, 2015 WL 7431408 (W.D. Tex., Nov. 20, 2015)..................................8

*Medicines Co. v. Mylan, Inc.*,
    853 F.3d 1296 (Fed. Cir. 2017)..................................................................................16

*N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*,
    7 F.3d 1571 (Fed. Cir. 1993).......................................................................................9

*Organik Kimya AS v. Rohm & Haas Co.*,
    873 F.3d 887 (Fed. Cir. 2017)....................................................................................10

*Parthenon Unified Memory Architecture LLC v. ZTE Corp.*,
   No. 215CV00225JRGRSP, 2016 WL 310174 (E.D. Tex. Jan. 25, 2016) .............................11

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) .......................................................................12, 18

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
   182 F.3d 1298 (Fed. Cir. 1999) ...............................................................................................13

*Renishaw PLC v. Marposs Societa'
   per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ...........................................................................17

*Saffran v. Johnson & Johnson*,
   712 F.3d 549 (Fed. Cir. 2013) ..................................................................................................16

*Santarus, Inc. v. Par Pharm., Inc.*,
   694 F.3d 1344 (Fed. Cir. 2012) ................................................................................................11

*SkinMedica, Inc. v. Histogen Inc.*,
   727 F.3d 1187 (Fed. Cir. 2013) ................................................................................................18

*Southwall Techs., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) ....................................................................................................7

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
   164 F.3d 1372 (Fed. Cir. 1998) ..................................................................................................8

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
   831 F.2d 1017 (Fed. Cir. 1987) ................................................................................................10

*Teleflex, Inc. v. Ficosa North America Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ..................................................................................................5

*TMI Prod., Inc. v. Rosen Ent. Sys., L.P.*,
   610 F. App'x 968 (Fed. Cir. 2015) .....................................................................................12, 13

*Trustees of Columbia Univ. v. Symantec Corp.*,
   811 F.3d 1359 (Fed. Cir. 2016) ................................................................................................11

*Victor Co. of Japan, Inc. v. Intervideo, Inc.*,
   No. A-08-CA-041-SS, 2009 WL 10670040 (W.D. Tex. July 27, 2009) ............................12, 13

## Statutes

35 U.S.C. § 102(a)(1).....................................................................................................................14

35 U.S.C. § 112 ...............................................................................................................................2

**Other Authorities**

Bryan Garner, *LawProse Lesson #68*, https://www.lawprose.org/lawprose-
    lessons-67-68/ ................................................................................................................14

ISO/IEC Standard 11889-1, Information technology—Trusted Platform Module,
    Part 1, Overview (1st Ed. May 15, 2009), https://standards.iso.org/ittf/
    PubliclyAvailableStandards/c050970_ISO_IEC_11889-1_2009.zip ......................................8

*Trusted Platform Module Summary*, Trusted Computing Group,
    https://trustedcomputinggroup.org/resource/trusted-platform-module-tpm-
    summary/................................................................................................................................9

## INTRODUCTION

Cisco's proposed constructions are straightforward applications of the following basic principle: when applicants tell the Patent Office the claimed inventions cover or exclude certain things, those statements are binding. K.Mizra's opening brief concedes critical points about the scope of the asserted claims. But K.Mizra invites error by asking the Court to ignore express definitions in the prosecution history of U.S. Patent No. 8,234,705 and the specification of U.S. Patent No. 8,965,892.

## I.   BRIEF OVERVIEW OF THE '705 AND '892 PATENTS

### A.   U.S. Patent No. 8,234,705 ('705 Patent).

The '705 Patent, called "Contagion Isolation and Inoculation," describes a way to protect a computer network against potentially dangerous host devices. When host devices attempt to access a protected network, the invention determines whether the host presents a security threat. D.I. No. 23-1, '705 Patent, Abstract & 3:8-45. If the host's security state is inadequate, the invention quarantines the host to restrict access to the network. *Id.* The claims recite a specific way to make this determination and, if necessary, quarantine the host. They require a digitally signed attestation of cleanliness from a trusted computing base associated with a trusted platform module. *See* '705 Patent, 19:57-20:23, 21:1-39, 22:14-49, (independent claims 1, 12, 19).

The parties dispute the meaning of "trusted platform module." As part of the security evaluation, the claims require "contacting a trusted computing base associated with a ***trusted platform module*** within the first host." *See, e.g.*, '705 Patent Claim 1, 19:60-62 (emphasis added). Every asserted claim requires such a "trusted platform module." *Id.* at 19:60-62, 21:7, 22:22.

The specification makes no mention of the "trusted platform module" limitation—not by name or in substance. *See, e.g., id.* at 14:1-12 (describing examples of trusted computing base,

1

with no mention of trusted platform module). This is a critical deficiency, but that is an issue for another day.[1]

For present purposes what matters is that the applicant defined the term "trusted platform module" during prosecution. Years after filing the original application, the applicant first sought to obtain amended claims requiring a "trusted platform module." At that time, the applicant acknowledged that "trusted platform module" or TPM is a term of art and unambiguously defined the limitation as "the name of a published specification"—the Trusted Computing Group TPM specification, and "the general name of implementations *of that specification*." D.I. No. 23-2 Applicant Remarks, at 6-7 (1/10/2010) (emphasis added). The applicant therefore limited the "trusted platform module" to a particular standard, also called ISO/IEC standard 11889, *id.*, and repeated this definition verbatim later in the prosecution, Ex. A, Applicant Remarks, at 6 (7/19/2011). These are the only references to a "trusted platform module" in the intrinsic record.

K.Mizra now seeks impermissibly to broaden "trusted platform module" to cover any "secure cryptoprocessor." Pl. Br. 9-10. The claims, however, do not recite or broadly cover a "secure cryptoprocessor." K.Mizra cannot point to a single place where that term appears in the '705 Patent—because it doesn't. The claims require a "trusted platform module," which is not and cannot be construed to cover a secure cryptoprocessor generally. The limitation is limited to the definition the applicant supplied during prosecution, and the construction should recognize that it therefore covers only implementations of the published specification the applicant identified.

---

[1] At the appropriate time, Cisco anticipates seeking summary judgment of invalidity pursuant to pre-AIA 35 U.S.C. § 112 based on the lack of written description support for this limitation.

**B.     U.S. Patent No. 8,965,892 ('892 Patent).**

The '892 Patent, called "Identity Based Filtering," relates to "techniques for content filtering" to protect those "surfing" the world wide web, who may encounter "undesirable content." D.I. No. 23-4, '892 Patent, 1:13-34. The main point in dispute concerns email.

Nothing in the '892 Patent specification suggests that the invention has anything to do with reviewing or filtering email. K.Mizra's overview of the patent wrongly implies otherwise. For example, K.Mizra asserts in its brief that "[a]t the time of the invention, the vast amounts of electronic documents and content on the internet such as PDFs, webpages, ***and electronic mail accessible via a network address*** presented a myriad of undesirable content that users encountered." *See* Pl. Br. 7 (emphasis added) (citing '892 Patent, 1:19-22). But the cited portion K.Mizra relies on actually describes "surfing" the web, and ***says nothing about email***: "[i]n consuming content, for example 'surfing' the world wide web (including following a link, entering a URL, accessing a bookmark, and any other document retrieval), a variety of undesirable content may be encountered." '892 Patent, 1:19-22.

K.Mizra also wrongly states that the specification lists "emails" as examples of "electronic documents." *Compare* Pl. Br. at 12 (stating that the patent "lists examples of electronic documents such as web pages, PDF documents, Flash documents, ***and emails*** versus non-electronic documents such as printed documents") (emphasis added) (citing '892 Patent, 2:15-18) *with* '892 Patent, 2:15-17 ("Examples of a document include a web page, a PDF document, and a Flash document."). In reality, the cited passage excludes email:

> ***As used herein, a document does not refer to*** a non-electronic document such as a printed document, nor to an electronic document not accessible via a network address, such as a local file not accessible via a network address, or ***an email***.

'892 Patent, 2:17-21 (emphasis added). The patent describes filtering other types of documents, predominantly webpages of various kinds. *See* '892 Patent, 3:59-4:2, 4:21-26, 5:15-17, 5:36-42, 6:61-67, 7:52-61. It never discusses, let alone describes, filtering email. Rather, the sole mention of email is **only** to exclude it. '892 Patent, 2:17-21.

K.Mizra's argument that "document" and "electronic document" should receive their plain meaning conflicts with the specification. In this patent, "document" and "electronic document" do not include non-electronic documents; they do not include electronic documents inaccessible via a network address; and they do not include email. By attempting to sweep "email" into the purview of "document" and "electronic document" when the specification expressly excludes email, K.Mizra impermissibly seeks to expand the scope of the '892 Patent. The specification's lexicography is controlling.

## II.     DISPUTED TERMS AND CONSTRUCTIONS

### A.     U.S. Patent No. 8,234,705

#### 1.     "trusted platform module"

| Claim Term | Cisco's Proposed Construction | K.Mizra's Proposed Construction |
|---|---|---|
| "trusted platform module" (claims 1, 12, 19) | A secure cryptoprocessor that implements the Trusted Platform Module specification from the Trusted Computing Group | A secure cryptoprocessor that can store cryptographic keys, which includes but is not limited to a cryptoprocessor that implements the Trusted Platform Module specification from the Trusted Computing Group |

The parties dispute whether the correct construction of "trusted platform module" is the express definition the applicant supplied during prosecution or, as K.Mizra contends, any secure cryptoprocessor that can store cryptographic keys. *See* Pl. Br. 10. Cisco urges the Court to construe

4

"trusted platform module" to mean "a secure cryptoprocessor that implements the Trusted Platform Module specification from the Trusted Computing Group." Cisco's is the only interpretation consistent with the applicant's express definition, which is controlling.

"[A]n inventor may choose to be his own lexicographer if he defines the specific terms used to describe the invention with reasonable clarity, deliberateness, and precision." *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (citations and quotation marks omitted). The specification may supply the definition. *See id.* Or, as here, "[s]uch a definition may appear . . . in the prosecution history." *Id.* (citations omitted).

In the '705 Patent, the phrase "trusted platform module" first appears in the claims. The specification never mentions the term and sheds no light on its meaning. The prosecution history, however, supplies the express definition—twice.

In January 2010, in response to an anticipation rejection, the applicant pointed to the "trusted platform module" limitation and explained that both "'trusted computing base' and 'trusted platform module[']" are ***terms of art with specific meanings*** that are in no way discussed" in the cited prior art. D.I. No. 23-2 Applicant Remarks, at 6-7 (1/10/2010) (emphasis added). The applicant then explained that the "specific meaning" of "trusted platform module" was a particular published specification and implementations of that specification:

> The Wikipedia entry for "Trusted Platform Module["] (http://en.wikipedia.org/wiki/Trusted_platform_module; retrieved January 10, 2010) begins, "***In computing, Trusted Platform Module (TPM) is both the name of a published specification detailing a secure cryptoprocessor that can store cryptographic keys that protect information, as well as the general name of implementations of that specification, often called the "TPM chip" or "TPM Security Device"*** (as designated in certain Dell BIOS settings[1]). The TPM specification is the work of the Trusted Computing Group. The current version of the TPM specification is 1.2 Revision 103, published on July 9, 2007." ***Reinforcing the industry adoption of this technology and standardization around the term of art used in the claims, this specification has also been adopted as ISO/IEC standard 11889.***

*Id.* at 6-7 (emphasis added); *see also* Ex. A, Applicant Remarks, at 6 (7/19/2011) (repeating definition).

The only viable reading of this passage is that the applicant defined "trusted platform module" as (1) the published Trusted Platform Module specification from the Trusted Computing Group and (2) implementations of the Trusted Platform Module specification.

K.Mizra agrees that the same passage supplies the definition, *see, e.g.*, Pl. Br. at 9-10, but misreads it. The prosecution history unquestionably is not "agnostic" about a particular specification. *Id.* at 10. Nothing in the intrinsic record supports the notion that "trusted platform module" is a "general name" for secure cyptoprocessors or that the term means ***any*** secure cryptoprocessor that can store cryptographic keys. There is no mention of a cryptoprocessor anywhere in the patent. And the prosecution history makes clear that "trusted platform module" is a "general name" only for implementations of "***that*** specification"—i.e., the Trusted Platform Module specification.

K.Mizra's briefing implies, incorrectly, that the patent describes a "trusted platform module" as an example of a "secure cryptoprocessor." *Id.* at 9. It does not; again, the specification does not mention either of those terms. The part of the specification K.Mizra cites discusses a different claim limitation: "trusted computing base." *E.g.*, '705 Patent, 19:61-62. The claims require both a "trusted computing base" and a "trusted platform module." The specification's discussion of the former limitation lends no support to K.Mizra's proposed construction of "trusted platform module."

K.Mizra next tries to sow confusion by implying that ISO/IEC 11889 is a different standard. It argues that the disputed limitation "corresponds to any general implementation of [a cryptoprocessor that can store cryptographic keys] as described in, for example, ***various*** industry

standards and specifications such as . . . the 'ISO/IEC 11889 Standard.'" Pl. Br. at 10 (emphasis added). That reading is indefensible. The prosecution history is crystal clear that ISO/IEC 11889 and the Trusted Platform Module specification are the ***same***: "***this*** specification"—the Trusted Platform Module specification—"***has also been adopted as ISO/IEC standard 11889***." D.I. No. 23-2 Applicant Remarks, at 6-7 (1/10/2010) (emphasis added). There can, of course, be more than one name for a specification, and more than one implementation that meets the requirements of this particular specification. That does not mean the "trusted platform module" can embrace "a number of different cryptoprocessors" that fail to implement the Trusted Platform Module specification. Pl. Br. 9-10.

Further dispelling any doubt about the term's meaning, the applicant referenced the current version of the Trusted Platform Module specification, and noted "industry adoption of ***this*** technology and standardization ***around the term of art***." D.I. No. 23-2 Applicant Remarks, at 6-7 (1/10/2010) (emphasis added). The applicant's language was clear and consistent: the claim term "trusted platform module" is a term of art that means the published Trusted Platform Module specification, or an implementation of that specification.

Because the language is unambiguous, the construction should start and end with the applicant's definition. "A patentee may not proffer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification and the prosecution history, and treat the claims as a nose of wax." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995) (cleaned up).

The context, however, provides a further reason to construe "trusted platform module" as the applicant defined it: the applicant offered this definition to overcome the examiner's finding of anticipation, and repeated the same argument and definition in appealing the examiner's

rejection of the claims. D.I. No. 23-2 Applicant Remarks, at 6 (1/10/2010); Ex. A, Appeal Brief, at 6 (7/19/11). Ultimately, following further amendment, the examiner accepted the claims and identified "trusted platform module" as a basis for avoiding anticipation. Ex. A, Notice of Allowance, at 7 (6/21/12). An applicant cannot disavow a definition offered during prosecution to distinguish prior art. *See Int'l Biomedical, Ltd. v. Gen. Elec. Co.,* No. 1-14-CV-397-LY, 2015 WL 7431408, at *2 (W.D. Tex., Nov. 20, 2015) ("[D]istinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover."); *see also Cordis Corp. v. Bos. Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011) (patentee's proposed construction foreclosed by representations made during prosecution in traversing anticipation rejection); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998) (citing "rule that explicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art may serve to narrow the scope of a claim").[2]

Moreover, the ISO/ISEC standard 11889 itself refutes K.Mizra's reading and confirms Cisco's: ISO/IEC standard 11889 is the name for the Trusted Platform Module specification within the ISO naming protocol. It is not a different specification. *See* ISO/IEC Standard 11889-1, Information technology—Trusted Platform Module, Part 1, Overview (1st Ed. May 15, 2009), at vi ("ISO/IEC 11889 is from the Trusted Computing Group (TCG) Trusted Platform Module (TPM) specification 1.2 version 103"); *id.* at iv ("ISO/IEC 11889-1 was prepared by the Trusted Computing Group (TCG)"); *id.* at 1 ("ISO/IEC 11889 defines the Trusted Platform Module (TPM),

---

[2] This settled rule applies even to overcome the ordinary meaning of a term. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366-67 (Fed. Cir. 2002) ("a claim term will not carry its ordinary meaning if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment"). It thus certainly applies here, where the prosecution history defines the term in accordance with its common usage in computing, by identifying a particular published specification.

a device that enables trust in computing platforms in general."), *available at* https://standards.iso.org/ittf/PubliclyAvailableStandards/c050970_ISO_IEC_11889-1_2009.zip.[3] Even if K.Mizra had extrinsic evidence to support its construction, that could not overcome the clear prosecution history. But here, nothing K.Mizra cites actually supports its overly broad interpretation.

Finally, contrary to K.Mizra's assertion, Cisco's construction reads out nothing. The patent doesn't disclose any embodiments of the "trusted platform module." Cisco's proposed construction is the only explanation the applicant offered during prosecution—no other construction appears anywhere in the intrinsic record. K.Mizra's construction impermissibly seeks to expand the patent beyond what is disclosed and claimed. *See, e.g., Genentech, Inc. v. Iancu*, 809 F. App'x 781, 784 (Fed. Cir. 2020) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent.") (quoting *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003)); *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993) ("A patent applicant cannot disclose and claim an invention narrowly and then, in the course of an infringement suit, argue effectively that the claims should be construed to cover that which is neither described nor enabled in the

---

[3] K.Mizra also points to a blog post about TPM listed under "Other Publications" on the '705 Patent. Pl. Br. 10 n.1 (citing '705 Patent at (56), OTHER PUBLICATIONS) & Ex. C. But nothing in that short blog post suggests that Trusted Platform Module, or TPM, has a meaning other than the Trusted Platform Module specification from the Trusted Computing Group. It refers to "a small chip called the 'trusted platform module' or TPM." *See* Pl. Ex. C, OLS: Linux and trusted computing, Jul. 22, 2005, http://lwn.net/Articles/144681/. That description aligns with that of the Trusted Computing Group: "TPM (Trusted Platform Module) is a computer chip (microcontroller) that can securely store artifacts used to authenticate the platform (your PC or laptop)." *Trusted Platform Module Summary*, Trusted Computing Group, https://trustedcomputinggroup.org/resource/trusted-platform-module-tpm-summary/. In any event, the mere listing of an outside publication cannot overcome the unambiguous definition the applicant provided during prosecution.

patent."); *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1024 (Fed. Cir. 1987) ("one can not interpret a claim to be broader than what is contained in the specification and claims as filed"); *see also Organik Kimya AS v. Rohm & Haas Co.*, 873 F.3d 887, 892 (Fed. Cir. 2017) (even under the broadest reasonable interpretation standard "construction cannot be divorced from the specification and the record evidence") (cleaned up).

### B.    U.S. Patent No. 8,965,892

#### 1.    "document"

| Claim Term | Cisco's Construction | K.Mizra's Construction |
|---|---|---|
| "document" (claims 1, 5, 6, 14, 15) | The term "document" excludes non-electronic documents, electronic documents not accessible via a network address, and email | No construction necessary |

K.Mizra criticizes Cisco's proposed construction on the grounds that (1) the exclusion of non-electronic documents and electronic documents that are inaccessible via a network address is "redundant," and (2) that the exclusion of all email (as opposed to "only locally stored emails that are not accessible via a network address") is incorrect. Pl. Br. 15. K.Mizra is wrong on both counts. The Court should construe the term "document" to exclude "non-electronic documents, electronic documents not accessible via a network address, and email" because that is precisely how the specification defines the term:

> A document refers herein to any electronic document that is accessible via a network address such as a URL. Examples of a document include a web page, a PDF document, and a Flash document. As used herein, a document does not refer to a non-electronic document such as a printed document, nor to an electronic document not accessible via a network address, such as a local file not accessible via a network address, or an email.

'892 Patent, 2:13-21. The "only meaning that matters in claim construction is the meaning in the context of the patent." *Trustees of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016).

**1. With respect to non-electronic documents and electronic documents that are inaccessible via a network address, K.Mizra concedes that Cisco is correct on the substance.** Faced with this language, K.Mizra repeatedly and correctly concedes that the invention covers only electronic documents accessible via a network address. *See, e.g.*, Pl. Br. 16 ("As discussed above, when reading the claim in its totality, including the preamble, it is clear that all instances of the word, 'document,' refer to electronic documents accessible via a network address."); *id.* at 15 ("As illustrated below, the recitation of the term 'document' in the context of claim 1, for example, is understood as referring to electronic documents accessible via a network address."); *id.* at 12 ("claim is directed towards the subset of electronic documents that are accessible via a network address").[4]

Given the claim language and K.Mizra's concessions, Cisco is obviously correct that the term "document" covers only electronic documents accessible via a network address. A negative limitation is thus warranted. "Negative claim limitations are adequately supported when the specification describes a reason to exclude the relevant limitation." *Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1351 (Fed. Cir. 2012); *see also Parthenon Unified Memory Architecture LLC v. ZTE Corp.*, No. 215CV00225JRGRSP, 2016 WL 310174, at *8 (E.D. Tex. Jan. 25, 2016) ("The inclusion of a negative limitation within a claim construction generally requires support from the intrinsic evidence.").

---

[4] Given these concessions, K.Mizra's suggestion that "Cisco's proposal is an improper attempt to narrow the claim scope to a particular embodiment," Pl. Br. 16-17, makes no sense.

***2. Cisco's proposed construction is proper and not redundant.*** Far from being redundant, Cisco's proposed construction is necessary to avoid jury confusion. As K.Mizra observes, the term "document" has a common meaning "readily understandable to a lay juror." Pl. Br. 11. That's exactly the problem. A lay juror would reasonably understand the term "document" to include printed or paper documents and locally stored electronic documents such as word-processing documents and PDFs. The patent's usage thus ***differs*** from ordinary meaning. To avoid juror confusion, the Court should construe the term "document" as the specification requires. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) ("[O]ur cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs.").[5]

What's more, K.Mizra's discussion of the preamble supports Cisco's construction, not K.Mizra's. Without a holding that the preamble is limiting, there is not even arguable redundancy.[6] Yes, the preamble here is limiting; however, K.Mizra does not cite a single case in which a court refused to construe a limitation because the construction would dovetail with preamble language. As the Federal Circuit has explained, "it is essential that the court charged with claim construction construe the preamble and the remainder of the claim . . . as one unified and internally consistent

---

[5] K.Mizra relies on this Court's decision in *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *2 (W.D. Tex. July 15, 2020) to support its "plain and ordinary meaning" position. In *CloudofChange*, however, the terms given their plain and ordinary meaning were not defined in the specification. *See id.* (explaining that exceptions to plain, ordinary meaning presumption did not apply). And the cases that K.Mizra cites in support of its "redundancy" argument likewise do not involve express lexicography in the specification that changes the plain, ordinary meaning of a term. *See TMI Prod., Inc. v. Rosen Ent. Sys., L.P.*, 610 F. App'x 968, 971-73 (Fed. Cir. 2015); *Victor Co. of Japan, Inc. v. Intervideo, Inc.*, No. A-08-CA-041-SS, 2009 WL 10670040, at *9 (W.D. Tex. July 27, 2009).

[6] K.Mizra's concession that the preamble is limiting is and should be binding.

recitation of the claimed invention." *See, e.g., Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1306 (Fed. Cir. 1999) (noting "support in the preamble of the claims" for construction, which must be "consistent" with "that preamble language"). K.Mizra relies on inapposite cases in which courts rejected proposed claim constructions that would have created "redundancies in the claim language," in that they would have rendered certain language meaningless, superfluous, or confusing. *TMI Prod., Inc. v. Rosen Ent. Sys., L.P.*, 610 F. App'x 968, 972 (Fed. Cir. 2015) (rejecting proposed construction that would have rendered "selective" unnecessary); *see also Victor Co. of Japan, Inc. v. Intervideo, Inc.*, No. A-08-CA-041-SS, 2009 WL 10670040, at *8 (W.D. Tex. July 27, 2009) (rejecting constructions that would have resulted in confusing repetition of claim language). Here, the claims repeatedly refer to "document" as a stand-alone term. Cisco's proposed construction clarifies what the claims mean by "document," and is consistent with the preamble language without creating redundancy that would warrant rejection.

Given K.Mizra's concession that the patent's claims are limited to electronic documents accessible via a network address, the only substantive dispute between the parties is the treatment of email. Cisco's construction of both "document" and "electronic document" makes clear that in the '892 Patent, these terms exclude email. As explained next, K.Mizra's argument that "document" and "electronic document" include emails that are accessible via a network address and exclude only emails that are locally saved cannot withstand scrutiny.

*3. As used in the '892 Patent, "document" and "electronic document" exclude email.* The specification categorically excludes email from the definition of "document" and "electronic document." The applicant defined "document" to exclude three categories: (1) a non-electronic document such as a printed document; (2) an electronic document not accessible via a network

address, such as a local file not accessible via a network address; and (3) an email. '892 Patent, 2:17-21.

The phrasing, grammar, and punctuation of the relevant sentence confirm that "an email" is a separate excluded category. To begin, where the applicant meant to indicate that a category of documents encompassed only those "not accessible via a network address," the applicant said so explicitly:

> As used herein, a document does not refer to a non-electronic document such as a printed document, nor to an electronic document ***not accessible via a network address***, such as a local file ***not accessible via a network address***, or an email.

'892 Patent, 2:17-21 (emphasis added). The applicant took care to be precise about network accessibility—twice. Had the applicant meant to exclude only those "emails ***not accessible via a network address***," the applicant would have said so. He did not.

Further, the applicant set off the unmodified phrase "or an email" with a serial (or Oxford) comma. "The serial comma separates items, including the last from the next to last, in a list of more than two." Ex. B, Bryan Garner, *The Elements of Legal Style* 17 (Oxford 1991). The comma thus indicates that "or an email" is not a continuation of the prior clause. Indeed, the very point of punctuating a list using a serial comma is to "avoid ambiguity." *Id.* at 17-18; *see also* Bryan Garner, *LawProse Lesson #68*, https://www.lawprose.org/lawprose-lessons-67-68/ (identifying failure to use serial comma as the most frequent punctuation mistake transactional lawyers make, because "litigable ambiguities often result"). Just as "otherwise available to the public" in post-AIA 35 U.S.C. § 102(a)(1) is its own separate final category,[7] the separation of the phrase "or an email" from the preceding phrases "with a comma, followed by use of the word 'or,'" implies "that what

---

[7] *Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*, 139 S. Ct. 628, 632-34 (2019) (affirming judgment of the Federal Circuit).

follows the comma is something different from and independent of the preceding concepts." *Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.*, Nos. 2016–1284, 2016–1787, 2018 WL 1583031, at *3 (O'Malley, J. concurring in the denial of panel rehearing).

Had the applicant intended K.Mizra's reading, he easily and naturally could have said "… nor to an electronic document not accessible via a network address, such as a local file or an email," or "… nor to an electronic document not accessible via a network address, such as a local file or email not accessible via a network address." He did not. All of this points to Cisco's reading:

> As used herein, a document
>
> [1] does not refer to a non-electronic document such as a printed document,
>
> [2] *nor*
> to an electronic document *not accessible via a network address*, such as a local file
> *not accessible via a network address,*
>
> [3] *or*
> an email.

'892 Patent, 2:17-21 (bracketed numbers and emphasis added).

What's more, K.Mizra's reading makes the term "email" superfluous. If "email" means only "email not accessible via a network address," that narrow category of email is subsumed within "a local file not accessible via a network address." It would not need to be listed separately.

**4. *K.Mizra's efforts to avoid the specification's unambiguous language are all unpersuasive. First*,** K.Mizra denies that this language represents the applicant's lexicography. The relevant sentence, however, begins with the archetypal definitional phrase "as used herein." And two sentences prior, the applicant used the similar definitional language "document refers herein." '892 Patent, 2:13-14. The Federal Circuit has repeatedly recognized that this language and similar phrases are definitional. *See, e.g., Chemtall, Inc. v. United States*, 878 F.3d 1012, 1023 (Fed. Cir. 2017) (patentee acted as his own lexicographer by beginning definitional statement

about claim term with phrase "[a]s used herein"); *Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007) (finding that patent "unambiguously provides definitions of … claim terms" by employing the prefatory phrase "as used herein, means"); *see also Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1306 (Fed. Cir. 2017) (contrasting non-definitional with definitional specification language, the latter characterized by the use of phrases such as "'refers to' or 'as defined herein'" after the claim term). Not surprisingly, in arguing that the specification is merely providing "examples" and not a definition, K.Mizra underlines other phrases but *not* the key definitional language, "as used herein." *See* Pl. Br. 13. There can be no reasonable dispute that the applicant intended this language as definitional.

*Second*, contrary to K.Mizra's suggestion, a "clear and unmistakable disavowal" is unnecessary. The Federal Circuit has repeatedly held that lexicography and disavowal are distinct, alternative grounds for departing from the plain and ordinary meaning of a term. *See, e.g., Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). For the specification's lexicography to control, "[a]ll that is required is that the patent applicant set out the different meaning in the specification in a manner sufficient to give one of ordinary skill in the art notice of the change from ordinary meaning." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004). Cisco's construction is thus correct as long as the applicant clearly set forth a definition other than the plain meaning, and clearly expressed an intent to redefine the term. *Hill-Rom Servs.*, 755 F.3d at 1371. The unambiguous definitional language here ("as used herein" and "refers herein") readily satisfies this standard. As a result, the Court need not decide whether the intrinsic evidence reflects a "clear and unmistakable disavowal" of email. In any event, if it were to reach this question, the disclaimer of email is definitive, unqualified, and sufficiently clear. *See, e.g.*, *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013)

(noting that "applicants rarely submit affirmative disclaimers along the lines of 'I hereby disclaim the following ...' during prosecution and need not do so to meet the applicable standard," and holding that "Saffran's unqualified assertion that 'the device used is a sheet'" entitled the public to conclude that "'device' recited in the claims . . . is 'a continuous sheet'").

*Third*, K.Mizra wrongly suggests that the applicant's definitional language is nothing more than a description of a particular embodiment. Not so. It is settled law that "one may look to the written description to define a term already in a claim limitation, for a claim must be read in view of the specification of which it is a part." *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1248 (Fed. Cir. 1998). The applicant used broad definitional language: "as used *herein*." And K.Mizra concedes that the other two excluded categories (printed documents and electronic documents not accessible via a network address) are excluded from *all* embodiments. The definitional passage thus cannot be read as merely a description of a particular embodiment. Indeed, where the applicant intended such a meaning, he used appropriately limited language such as "[i]n some embodiments" and "[e]xamples of." *See* '892 Patent, 2:30, 2:39, 2:57, 2:60, 2:65. "As used herein" means what it says: as used in this patent. And as used in this patent, "document" and "electronic document" exclude non-electronic documents, electronic documents not accessible via a network address, and email.

### 2.   "electronic document"

| Claim Term | Cisco's Proposed Construction | K.Mizra's Proposed Construction |
|---|---|---|
| "electronic document" (claims 1, 14, 15) | The term "electronic document" excludes electronic documents not accessible via a network address, and email | No construction necessary |

For all of the reasons explained immediately above, as used in the '892 Patent the term "electronic document" excludes (1) electronic documents not accessible via a network address, and (2) email. In substance, K.Mizra again concedes that the invention covers **only** electronic documents accessible via a network address. Pl. Br. 12, 14, 15. To avoid juror confusion, the term "electronic document" should be so construed. K.Mizra's redundancy objection fares no better here. "Electronic document" appears in the claims as a standalone term. *E.g.*, '892 Patent, 8:63, 9:48. And the specification is crystal-clear that ***wherever*** it appears, that term excludes electronic documents not accessible via a network address. '892 Patent, 2:17-21.

With respect to email, all of Cisco's arguments from the preceding section apply equally to "electronic document." K.Mizra has not supported its suggestions that the specification excludes only emails without a network address, let alone only locally saved emails. The applicant chose to act as his own lexicographer and adopted a particular meaning for the term "electronic document." That definition excludes email, and that definition controls. *See, e.g., SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1195 (Fed. Cir. 2013) ("If the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess, the inventor's lexicography governs." (cleaned up)); *Phillips*, 415 F.3d at 1316 (same).

## III.   AGREED UPON CONSTRUCTIONS

The parties agree upon the construction of two terms: "trusted computing base" ('705 Patent) and "identity relating to a person" ('892 Patent).

| Patent | Claim Term | Agreed Construction |
|---|---|---|
| '705 Patent (claims 1, 12, 19) | "trusted computing base" | Hardware or software that has been designed to be a part of the mechanism that provides security to a computer system |

| '892 Patent (claims 1, 14, 15) | "identity relating to a person" | Identifier associated with a person such as a user name, user ID, user number, email address, or any other identifier suitable for referring to a person's Identity |
|---|---|---|

## CONCLUSION

Cisco respectfully asks the Court to adopt its proposed constructions.

Dated: June 16, 2021                          Respectfully submitted,


By: */s/ Melissa R. Smith*
    Melissa R. Smith (State Bar No. 24001351)
    melissa@gillamsmithlaw.com
    **GILLAM & SMITH LLP**
    303 South Washington Avenue
    Marshall, TX 75670
    Telephone: 903.934.8450
    Facsimile: 903.934.9257

    Elizabeth R. Brannen (*Pro Hac Vice*)
    ebrannen@stris.com
    Kenneth J. Halpern (*Pro Hac Vice*)
    khalpern@stris.com
    **STRIS & MAHER LLP**
    777 S. Figueroa St, Ste 3850
    Los Angeles, CA 90017
    Telephone: (213) 995-6800
    Fascimile: (213) 216-0299

    *Attorneys for Defendant*
    *Cisco Systems, Inc.*

19

### CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. All counsel of record are participants in CM/ECF and have consented to electronic service.

*/s/ Melissa R. Smith*
Melissa R. Smith