## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| K.MIZRA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:20-cv-01031-ADA |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## <u>PLAINTIFF K.MIZRA LLC'S REPLY CLAIM CONSTRUCTION BRIEF</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  U.S. PATENT NO. 8,234,705 ................................................................................2

     A.   "trusted platform module" (claims 1, 12, 19) ..........................................2

          i.    The Term Trusted Platform Module is Not Limited to Only
                Secure Cryptoprocessors that Implement the Trusted
                Computing Group Specification.......................................................2

III. U.S. PATENT NO. 8,965,892 ...............................................................................3

     A.   "document" (claims 1, 5, 6, 14, 15) / "electronic document" (claims 1,
          14, 15) ......................................................................................................3

          i.    The Patent Specification Does Not Redefine the Terms
                "Document" and "Electronic Document" .......................................3

          ii.   The Patentee Did Not Use a Serial Comma to Exclude All
                Emails..............................................................................................5

          iii.  Construing "Document" and "Electronic Document" is
                Redundant with the Preamble and Incorrectly Adds
                Negative Limitations .......................................................................7

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs v. Andrx Pharms., Inc.*,
  473 F.3d 1196 (Fed. Cir. 2007)...........................................................................4

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
  632 F.3d 1246 (Fed. Cir. 2011).........................................................................10

*Chemtall, Inc. v. United States*,
  878 F.3d 1012 (Fed. Cir. 2017)...........................................................................4

*CloudofChange, LLC v. NCR Corp.*,
  No. 6-19-CV-00513-ADA, 2020 U.S. Dist. LEXIS 124625 ......................................9

*Diamondback Indus. v. Repeat Precision, LLC*,
  No. 6:19-CV-00034-ADA, 2019 U.S. Dist. LEXIS 226483 (W.D. Tex. Aug. 20, 2019) ..........6

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014)........................................................................4, 5

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ........................................................................................6

*Medicines Co. v. Mylan, Inc.*,
  853 F.3d 1296 (Fed. Cir. 2017)...........................................................................4

*Partheon Unified Memory Architecture LLC v. ZTE Corp.*,
  No. 2:15-cv-00225-JRG-RSP, 2016 U.S. Dist. LEXIS 8038 ..................................10

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999)...........................................................................8

*Santarus, Inc. v. Par Pharm., Inc.*,
  694 F.3d 1344 (Fed. Cir. 2012).........................................................................10

*TMI Prod., Inc. v. Rosen Ent. Sys., L.P.*,
  610 F. App'x 968 (Fed. Cir. 2015)........................................................................9

*Victor Co. of Japan, Inc. v. Intervideo, Inc.*,
  No. A-08-CA-041-SS, 2009 WL 10670040 (W.D. Tex. July 27, 2009) ......................9

# I.    <u>INTRODUCTION</u>

K.Mizra's claim construction positions are faithful to the inventions of the '705 and '892 Patents and do not attempt to unnecessarily limit the claims to a specific and unwarranted implementation, as Cisco seeks to do.

K.Mizra's proposed construction for the '705 Patent claim term "trusted platform module" comports with the plain meaning of the term as understood by a POSA, and is fully supported by the intrinsic record. Cisco, on the other hand, argues that the term is so limited that it must meet the requirements of a particular third-party specification. Cisco's construction ignores the plain meaning of the trusted platform module in the context of the intrinsic record and urges an unsupported construction that limits the module to the one implementation required by the Trusted Computing Group. Consistent with the intended purpose of the module, K.Mizra's construction includes that implementation, as well as other implementations suitable for the same purpose.

The terms "document" and "electronic document" in the '892 Patent should be afforded their plain and ordinary meanings, as lay jurors understand the meaning of these common terms. The patent specification does not express an intent to redefine the terms, nor do the plain and ordinary meanings of these terms conflict with the specification. The preamble of the claim clearly sets out the scope of the terms. There is thus no need to construe them, and doing so would be redundant and confuse the jury. Cisco insists on construing the terms repetitively, so that it can inject its improper exclusion of *all* emails from electronic documents based on its incorrect reading of a sentence in the specification. Accordingly, K.Mizra's proposed constructions should be adopted.

## II.    U.S. PATENT NO. 8,234,705

### A.    "trusted platform module" (claims 1, 12, 19)

#### i.    The Term Trusted Platform Module is Not Limited to Only Secure Cryptoprocessors that Implement the Trusted Computing Group Specification

The parties agree that the term trusted platform module is a secure cryptoprocessor that implements the Trusted Platform Module (TPM) specification from the Trusted Computing Group (TCG), but disagree on whether it is limited to just that specific implementation, or whether it also includes other general implementations that meet the same purpose for the invention. Cisco's arguments are directed to why a trusted platform module should be defined as a secure cryptoprocessor that implements the TPM specification from the TCG, but Cisco does not offer any support for why the definition must be limited to necessarily exclude other general implementations similar to the TCG specification. The claims and intrinsic record are not so limited. Cisco's argument also ignores the substantive content of the same passage in the '705 Patent File History that Cisco alleges supplies an express definition. Def. Br. 5. The passage states that the trusted platform module is the name of a published specification "detailing a secure cryptoprocessor that can store cryptographic keys that protect information." Yet Cisco's construction ignores the storage of cryptographic keys, whereas K.Mizra's construction is consistent with and includes all aspects of this description.

Cisco contends that the only viable reading of the passage in the '705 Patent File History is that the term "trusted platform module" is *defined* as (1) the published TPM specification from the Trusted Computing Group and (2) implementations of the TPM specification. Def. Br. 6. However, the patentee's remarks to the Examiner make clear that the purpose of implementing the

trusted platform module and its secure cryptoprocessor was to prevent falsified reports to ensure a reliable attestation of an end-user computer's cleanliness:

> The use of a trusted computing base, trusted platform module, and valid digitally signed attestation of cleanliness in detecting an insecure condition are significant innovations, as they can, for example, *prevent false reports by ensuring that an attestation of cleanliness is reliable and the result of properly executed checks*. Without the use of such techniques, approaches such as Liang are potentially vulnerable to false reports by infected machines, and may fail to quarantine such machines, resulting in higher infection rates and greater propagation of malicious software.

*See, e.g.*, ECF No. 23-2, Applicant Remarks, at 8 (1/10/2010) (emphasis added). As such, a POSA would have understood that *any general implementation* of a trusted platform module with secure cryptography would have been suitable for purposes of practicing the invention. Although the patentee referenced the TPM specification from the TCG as a specific example, nothing in the '705 Patent's File History or specification that compels exclusion of other implementations appropriate to achieve the same objective. There is no manifest intention demonstrated by the intrinsic record to limit the claimed trusted platform module to only the specific implementation of the Trusted Computing Group. Thus, K.Mizra's proposal which includes Cisco's narrower definition is the proper construction and should be adopted.

## III.    U.S. PATENT NO. 8,965,892

### A.    "document" (claims 1, 5, 6, 14, 15) / "electronic document" (claims 1, 14, 15)

#### i.    The Patent Specification Does Not Redefine the Terms "Document" and "Electronic Document"

The terms "document" and "electronic document" need no construction because both POSAs and lay jurors are eminently familiar with those terms. The '892 Patent's specification does not clearly express an intent to redefine the terms document and electronic document, as would be required to find patentee lexicography. *See, e.g.*, *Hill-Rom Servs., Inc. v. Stryker Corp.*,

755 F.3d 1367, 1371 (Fed. Cir. 2014) ("The standards for finding lexicography . . . are exacting. 'To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning' and must 'clearly express an intent to redefine the term.'").

Cisco contends that the '892 Patent's use of the phrases "as used herein" and "refers herein" set forth definitions for the claim terms. However, none of the cases that Cisco cite are on point. Every cited case found that the patentee acted as his own lexicographer by explicitly setting off the to-be-defined terms *in quotation marks*. For example:

- *Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1306 (Fed. Cir. 2017)
  - "As used here, 'batch' or 'pharmaceutical batch' refers to . . ." ('727 Patent at 5:24)
  - "The term 'drug product' herein refers to . . ." ('727 Patent at 5:37)
- *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1023 (Fed. Cir. 2017)
  - "As used herein, 'amide' refers to  . . ." ('760 Patent at 5:8)
  - "As used herein, 'aralkyl' refers to  . . ." ('760 Patent at 5:39)
- *Abbott Labs v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007)
  - "'Erythromycin derivative' as used herein, means . . ." ('718 Patent at 3:34)
  - "'Pharmaceutically acceptable' as used herein, means . . ." ('718 Patent at 3:40)

The '892 Patent does not unambiguously express definitional intent in the way that the patentees in these cases did. The '892 Patent specification, in describing the terms document and electronic document, does not use quotation marks around the terms. Accordingly, the patentee did not clearly express an intent to act as his own lexicographer so as to redefine these terms away from their plain and ordinary meanings.

Absent a clear intention to limit the claim scope using "words or expressions of manifest exclusion," it is improper to construe claim terms as being limited to a particular embodiment,

even if the patent describes only a single embodiment. *See, e.g.*, *Hill-Rom Servs., Inc.*, 755 F.3d at 1371-72. As discussed above, there is no expression of unambiguous exclusion here, and thus the construction of these terms should not be limited to the '892 Patent's description of the example embodiment that contains the phrases "as used herein" and "refers herein." *See, e.g.*, '892 Patent at 2:11-23.

### ii. The Patentee Did Not Use a Serial Comma to Exclude All Emails

The '892 Patent's specification does not give rise to its own lexicography, but even if it did, it does not define the terms "document" and "electronic document" to effect a wholesale exclusion of all emails from the scope of those terms. Cisco misreads the specification to argue that the term "document" does not refer to each of (1) non-electronic documents, (2) electronic documents not accessible via a network address, and (3) emails. Def. Br. 13-14. Cisco mischaracterizes the following sentence as listing three categories, when in fact, it only lists two.

> As used herein, a document does not refer to *[1]* a non-electronic document such as a printed document, nor to *[2]* an electronic document not accessible via a network address, such as a local file not accessible via a network address, or an email.

'892 Patent at 2:17-21 (numbered brackets added). Cisco's reading of this sentence is incorrect for at least two reasons.

*First*, Cisco's argument that the sentence intended to list three categories is inherently premised on Cisco's equation of the above passage's single "nor" with the "or" that introduces the passage's terminal phrase "or an email." But the fact that the word "nor" appears just once in this sentence indicates that the patentee intended to list two elements, not three—as illustrated below:

> As used herein, a document does not refer
>
> [1] ***to a*** non-electronic document such as a printed document,
>
> ***nor***
>
> [2] ***to an*** electronic document not accessible via a network address, such as a local file not accessible via a network address, or an email.

'892 Patent at 2:17-21 (bracketed numbers and emphasis added). In other words, had this sentence intended to list three parallel elements, it would have used a second "nor" to introduce the third element, not an "or." Thus, the phrase "or an email" that Cisco incorrectly reads as a third category is rather meant to provide a further example of local files not accessible via a network address.

*Second*, and similarly, the use of only two instances of the preposition "***to***" also indicates that the sentence intends to list only two categories (as illustrated above). Had the sentence intended to list "an email" as a third category, the patentee would have drafted the sentence with a third preposition—e.g., "***to*** an email"—consistent with the preceding two categories.

Given that, as shown above, only two categories of exclusions from the term "document" are listed in the sentence, the principles of the serial or Oxford comma do not apply here as Cisco contends, because the serial comma is used only for listing ***more than two items***—as demonstrated by the very same text on which Cisco relies. *See, e.g.*, Ex. A, Bryan Garner, *The Elements of Legal Style* 15 (2d. Oxford 2002).[1] Therefore, the comma before the phrase "or an email" does not serve to list a third category of exclusion from the term "document."

---

[1] The Court has, of course, previously observed that reliance on Mr. Garner's opinions may be inappropriate in the context of matters of law that are the province of the Court—of which claim construction is one. *See Diamondback Indus. v. Repeat Precision, LLC*, No. 6:19-CV-00034-ADA, 2019 U.S. Dist. LEXIS 226483 (W.D. Tex. Aug. 20, 2019); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

6

Cisco also argues that the sub-category of an email that is not accessible via a network address is subsumed within the category of a local file not accessible via a network address, and thus need not be listed separately. Def. Br. 15. This is just as unavailing as Cisco's serial comma argument. As indicated by the phrase "such as," the sentence is merely listing an example of a local file not accessible via a network address—i.e., a locally stored email file. In a similar manner, a preceding sentence in the same paragraph offers examples of electronic documents such as PDF and Flash documents. *See, e.g.*, '892 Patent at 2:12-17. The sentence at issue here is clear— examples of an electronic document not accessible via a network address include documents such as local files or emails. Therefore, the patentee did not intend to exclude emails that are accessible via a network address from the term "document."

### iii. Construing "Document" and "Electronic Document" is Redundant with the Preamble and Incorrectly Adds Negative Limitations

Cisco agrees that the preamble sets forth the scope of the claim as a method for determining a reputation associated with ***an electronic document accessible via a network address***, but insists on redundantly construing the terms "document" and "electronic document" to repeat what the preamble already says, so that Cisco can effect exclusion of all emails from the claim terms (which argument in and of itself is incorrect for the reasons stated above). Cisco argues that its construction is not redundant with the preamble. Def. Br. 12-13. But this is simply not true—save for Cisco's unfounded insertion of its overbroad exclusion of all email messages. The preamble clearly describes that the claim relates to electronic documents accessible via a network address. There is thus no need to further construe the term "documents" and "electronic documents" as excluding electronic documents ***not*** accessible via a network address.

In in its argument that the claim terms should be construed for consistency with the preamble, Cisco's reliance on *Pitney Bowes* misses the mark. In that case, the Federal Circuit held

that claim terms cannot be construed in a manner *in*consistent with the preamble. *See, e.g.*, *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1306 (Fed. Cir. 1999). The preamble of the patent claim in that case recited "a method of producing on a photoreceptor an image of generated shapes made up of spots." *Id*. at 1302. To be consistent with this preamble, the term "spots" was construed as "spots of discharged area on the photoreceptor" instead of the "spots of light generated by the beam of light." *Id*. at 1306. Here, K.Mizra is not proposing that the term "document" be construed in any manner that is inconsistent with the preamble, "[a] method for determining a reputation associated with an electronic document accessible via a network address." K.Mizra is merely proposing that no construction is necessary for the term beyond its plain and ordinary meaning, because the preamble already provides sufficient clarity on the scope of the claim. There is nothing inconsistent about K.Mizra's proposal, unlike the construction rejected in *Pitney Bowes*.

Cisco also alleges that K.Mizra relies on inapposite cases. Def. Br. 13. This is not true. For example, in the *TMI* case, the plaintiff proposed a construction for the term "to permit selective access" as meaning "to allow choice for entry." But a later limitation in the same claim recited "wherein the housing defines a second opening and the media player is positioned within the recess such that the input opening of the media player is accessible through the second opening of the housing." The Federal Circuit rejected the proposal, stating that the narrower later limitation would render the "selective access" limitation (under the plaintiff's proposed broadening construction) redundant, because the later limitation already required the housing to permit access to the input opening of the media player as well as further defined the structure of the housing. *TMI Prod., Inc. v. Rosen Ent. Sys., L.P.*, 610 F. App'x 968, 972 (Fed. Cir. 2015). Similarly, here, Cisco's proposal to construe documents as excluding non-electronic documents not accessible via a network address

is also redundant in light of the preambles' clear recitation of a method for determining a reputation associated with an electronic document accessible via a network address.

As a further example, Cisco's interpretation of the *Victor Co.* case is similarly incorrect. There, the court rejected a proposed construction that would result in the following confusing and redundant claim if the construction was substituted into the claim term, even though the claim already limited the referenced positional data to a "relative position":

> a third [data indicating a relative and/or absolute position of another data] indicative of a relative position of a third data compressed in the least amount

*Victor Co. of Japan, Inc. v. Intervideo, Inc.*, No. A-08-CA-041-SS, 2009 WL 10670040, at *8 (W.D. Tex. July 27, 2009). Here, substituting Cisco's proposed construction into each occurrence of the terms document and electronic document would render a similarly confusing, redundant, and also incorrect result. For example, the preamble would read as follows:

> A method for determining a reputation associated with an [electronic document that excludes electronic documents not accessible via a network address . . .] accessible via a network address, comprising

Accordingly, Cisco's proposed construction is improper, redundant, and should be rejected.[2]

The other cases that Cisco cites in support of its proposed negative limitations do not support its positions. For example, the *Santarus* case does not stand for the proposition that claims can be construed with negative limitations. Instead, the issue there was whether express exclusionary language in the claim was supported by the written description of the patent. *See Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1350 (Fed. Cir. 2012) ("The written description

---

[2] Cisco also attempts to distinguish the *CloudofChange* case by arguing that in that case the terms were given their plain and ordinary meaning because they were not defined in the specification. Def. Br. 12, fn. 5. However, as explained in Section III.A.i, the terms at issue in the '892 Patent were also not defined, and thus should be afforded their plain and ordinary meaning.

issue relates to the inclusion of the clause 'wherein the composition contains no sucralfate' in the claims of the '772 patent.").

Similarly, the *Parthenon* case does not support Cisco's proposal. The *Parthenon* court squarely declined to include a negative limitation explaining that "[a]s to the intrinsic evidence, Defendants only cite to an embodiment. Defendants do not cite to any disclaimer or disavowal. Even if only a single embodiment exists, the preferred embodiment is not required to be read into the claims." *Partheon Unified Memory Architecture LLC v. ZTE Corp.*, No. 2:15-cv-00225-JRG-RSP, 2016 U.S. Dist. LEXIS 8038, at *22-23 (citing *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("Even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.") (internal citations omitted)). As explained above, Cisco cannot show that there was such clear intention to limit the scope of the '892 Patent to exclude all emails.

Finally, Cisco's argument that KMizra's interpretation of an email document that is network accessible cannot "withstand scrutiny" is without merit. See Def. Br. 13. Cisco's alleged statements on disavowal of emails relates to the passage in the '892 Patent that is directed to a description of Fig. 1—which details the claimed document filtering based on identity. '892 Patent at 2:10-21, Fig. 1. Cisco has not and cannot dispute that emails that are network accessible can be the type of documents for identity-based filtering as described in Fig. 1. KMizra's interpretation of emails passes scrutiny with the identity-based filtering disclosed in the '892 Patent. For all of these reasons, the Court should reject Cisco's proposed constructions.

Date: June 30, 2021

Respectfully submitted,

FOLIO LAW GROUP PLLC

*/s/ Cliff Win, Jr.*
Cristofer I. Leffler, WA Bar No. 35020
Cliff Win, Jr., CA Bar No. 270517
**Folio Law Group PLLC**
14512 Edgewater Lane NE
Lake Forest Park, WA 98155
T: (206) 512-9051
Email: cris.leffler@foliolaw.com
Email: cliff.win@foliolaw.com

Joseph M. Abraham, TX SB No. 24088879
**Law Office of Joseph M. Abraham, PLLC**
13492 Research Blvd., Suite 120, No. 177
Austin, TX 78750
T: (737) 234-0201
Email: joe@joeabrahamlaw.com

*Attorneys for K.Mizra LLC*

**PROOF OF SERVICE**

**K.Mizra LLC v. Cisco Systems, Inc.**
**Case No. 6:20-CV-01031-ADA**

On June 30, 2021, I served a true copy of the following document(s) described as

PLAINTIFF K.MIZRA LLC'S REPLY CLAIM CONSTRUCTION BRIEF on the interested

parties in this action as follows:

Via Email:

Elizabeth Brannen
elizabeth.brannen@strismaher.com

Kenneth Halpern
khalpern@strismaher.com

Melissa Richards Smith
melissa@gillamsmithlaw.com

Dated: June 30, 2021                    */s/ Cliff Win, Jr.*
                                         Cliff Win, Jr.