**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| K. MIZRA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO. 6:20-CV-01031-ADA** |
| | ) | |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S SUR-REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

I. THE '705 PATENT ....................................................................................................... 1

II. THE '892 PATENT ....................................................................................................... 3

    A. The parties agree that the claims extend only to electronic documents accessible via a network address. ........................................................................................................ 3

    B. As used in the '892 Patent, "document" and "electronic document" exclude email. ...... 5

CONCLUSION ........................................................................................................................... 8

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Andrx Pharms., Inc.*,
  473 F.3d 1196 (Fed. Cir. 2007)..................................................................................6

*Advanced Media Networks, LLC v. AT&T Mobility LLC*,
  748 Fed. Appx. 308 (Fed. Cir. 2018)..........................................................................2

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001)..................................................................................3

*Baxter Int'l, Inc. v. Becton, Dickinson & Co.*,
  No. 17 C 7576, 2020 WL 5191495 (N.D. Ill. Mar. 18, 2020)....................................6

*Chemtall, Inc. v. United States*,
  878 F.3d 1012 (Fed. Cir. 2017)..................................................................................6

*Diamondback Indus., Inc. v. Repeat Precision, LLC*,
  No. 6:19-CV-00034-ADA, 2019 WL 7761432 (W.D. Tex. Aug. 20, 2019)..............7

*TMI Prod., Inc. v. Rosen Ent. Sys., L.P.*,
  610 F. App'x 968 (Fed. Cir. 2015) .............................................................................4

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
  811 F.3d 1359 (Fed. Cir. 2016)..................................................................................6

*Victor Co. of Japan, Inc. v. Intervideo, Inc.*,
  No. A-08-CA-041-SS, 2009 WL 10670040 (W.D. Tex. July 27, 2009) ...................4

**Other Authorities**

21 C.F.R. § 133.3(a)............................................................................................................2

**INTRODUCTION**

Cisco's constructions are faithful to what the applicants told the Patent Office and public. Although K.Mizra hopes to avoid them, the applicants' representations are binding.

## I.   THE '705 PATENT

Cisco's is the only construction of "trusted platform module" (TPM) consistent with the intrinsic evidence: "A secure cryptoprocessor that implements the Trusted Platform Module specification from the Trusted Computing Group." K.Mizra agrees that the identical prosecution history passages Cisco identified are the only references to "trusted platform module" anywhere in the intrinsic record, and acknowledges that the patentee described "trusted platform module" as a "term of art" in computing, Pl. Br. 9-10—with express reference to the Trusted Platform Module specification, *see* Pl. Reply Br. 2-3. But K.Mizra repeats its baseless claim that nothing in the intrinsic record "compels exclusion" of implementations of other secure cryptoprocessors. Pl. Reply Br. 3. Not so.

K.Mizra wrongly assumes the proposition it must prove, namely, that those of ordinary skill in the art would understand "trusted platform module" to mean "secure cryptoprocessor that can store cryptographic keys." The concededly controlling intrinsic evidence says no such thing.

The patentee could not have been clearer that in "computing, Trusted Platform Module (TPM) *is both the name of a published specification* detailing a secure cryptoprocessor that can store cryptographic keys that protect information, as well as the general name of implementations *of that specification.*" D.I. No. 23-02 Applicant Remarks, at 6-7 (1/20/2010) (emphasis added). This passage doesn't say TPM refers to secure cryptoprocessors generally. The word "general" modifies "name," indicating that the name "trusted platform module" refers to any "implementations *of that specification*"—because there are multiple ways to implement the TPM

1

specification. To count as a TPM, though, a secure cryptoprocessor must implement *that* specification, i.e., the Trusted Platform Module specification from the Trusted Computing Group. An applicant who represents that in dairy farming, "milk" is "a term of art that is the general name for products fitting the FDA definition of 'milk'[1]" has claimed a range of products (e.g., whole milk, reduced fat milk, concentrated milk, etc.), but not almond or soy, which fall outside the FDA definition.

The patentee went on to note that the claims use this term of art: "Reinforcing the industry adoption of this technology and standardization around *the term of art used in the claims*, this specification has also been adopted as ISO/IEC standard 11889." *Id.* (emphasis added). By stating that the adoption of the TPM specification as the ISO/IEC standard represents "standardization around the term of art used in the claims," the patentee clearly equated the standard—i.e., the Trusted Platform Module specification from the Trusted Computing Group that has also been adopted as ISO/IEC standard 11889—with the "term of art used in the claims." K.Mizra offers no meaningful response to Cisco's interpretation of this unambiguous passage; does not dispute that the patentee invoked this definition to overcome an anticipation rejection; and addresses none of the cases Cisco cites, *See* Cisco Br. 7-8.

Nor has K.Mizra provided any support for its position that those of ordinary skill would understand the term "trusted platform module" to refer to a secure cryptoprocessor that does *not* satisfy the Trusted Platform Module specification. There simply is no support for K.Mizra's implausible reading. *Cf., e.g.*, *Advanced Media Networks, LLC v. AT&T Mobility LLC*, 748 Fed. Appx. 308, 312-13 (Fed. Cir. 2018) (where district court correctly found that IEEE 802.3 and 802.11 standards defined the ordinary meaning of the term "ethernet," patentee could give that

---

[1] *See* 21 C.F.R. § 133.3(a) (defining milk).

term a different meaning only by "clearly set[ting] forth a definition of the disputed term") (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). No skilled artisan reading the patentee's discussion of "trusted platform module" could reasonably conclude that the patentee said anything that would supersede the Trusted Platform Module specification. It's as if the patentee had represented that "iPhone" is "a term of art that refers to a smartphone produced and sold by Apple, capable of certain functions" and then later argued that because other smartphones could serve the same functions, the term "iPhone" should encompass any smartphone. K.Mizra's proposed construction is an impermissible, after-the-fact effort to twist the claims "like a nose of wax." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (cleaned up).

## II.     THE '892 PATENT

Cisco's proposed constructions of "document" and "electronic document" implement two clear limitations from the specification: both terms (1) exclude documents that are *not* accessible via a network address; and (2) exclude email. K.Mizra offers no good reason to reject Cisco's constructions and leave these terms undefined.

### A.     The parties agree that the claims extend only to electronic documents accessible via a network address.

Substantively, K.Mizra agrees that both "document" and "electronic document," as used in the claims, refer only to "electronic documents accessible via a network address." Pl. Reply Br. 7, 9. The Court may therefore accept Cisco's position and simply construe both terms this way, or hold that the preamble is limiting and accept K.Mizra's contention that construing the terms is therefore, in this respect, unnecessary.

There are good reasons to reject K.Mizra's "redundancy" argument. Notably, K.Mizra fails to respond to Cisco's main point: construing the terms will avoid confusion. K.Mizra repeats its

assertion that "lay jurors are eminently familiar" with these terms. Pl. Reply Br. 3. That is precisely Cisco's point: the plain, ordinary meaning of "document" and "electronic document," is substantially different than the meaning in the '892 Patent. Cisco's proposed construction of "document" and "electronic document" reiterates what the preamble *should* (but may not) make clear, without creating any confusion or redundancy in the subsequent claim language. The only redundancy K.Mizra identifies is with the preamble, Pl. Reply Br. 9, and K.Mizra still does not cite a single case in which a court declined to construe a limitation because doing so would align later claim language with the preamble.[2]

In short, the parties agree on substance: the claims are limited to electronic documents accessible via a network address. For clarity, Cisco asks the Court to adopt its proposed constructions.

---

[2] K.Mizra devotes substantial space to arguing that Cisco incorrectly interpreted *Victor Co. of Japan, Inc. v. Intervideo, Inc.*, No. A-08-CA-041-SS, 2009 WL 10670040 (W.D. Tex. July 27, 2009) and *TMI Prod., Inc. v. Rosen Ent. Sys., L.P.*, 610 F. App'x 968 (Fed. Cir. 2015). But K.Mizra does not identify any inaccuracy, and there is none. Pl. Reply Br. 8-9. Cisco made a single point about these cases: neither involves express lexicography in the specification that changes the plain, ordinary meaning of a term. Cisco Br. 12 n.5. That is true, and that is why the cases are inapposite. K.Mizra's extended discussion of these cases merely confirms their lack of relevance. Pl. Reply Br. 8-9. In *Victor*, the construction rejected as redundant would have made the claim language "confusing."  2009 WL 10670040, at *8. That's because the proposed construction of "positional data" referred to "relative" or "absolute" position, but the claim language referenced positional data "indicative of a relative position." *Id.* In *TMI*, the court rejected a construction of "permits selective access" that would have made the term "selective" redundant and unnecessary. The Court instead adopted a construction that afforded a specific and limiting meaning to "selective." 610 F. App'x at 971-72. Neither case bears any similarity to this one. Here, adopting a clear and substantively undisputed construction of "document" and "electronic document" would aid the fact finder and would not alter the scope of the claims, because K.Mizra agrees that the patent recites "a method for determining the reputation associated with an electronic document…accessible via a network address." Pl. Reply Br. 9.

**B.**    **As used in the '892 Patent, "document" and "electronic document" exclude email.**

The Court should also construe "document" and "electronic document" to exclude email, because that is what the specification says: "[a]s used herein, a document does not refer to . . . an email." '892 Patent, 2:17-21. K.Mizra tries to argue that this definition isn't really a definition or, if it is a definition, it should be rewritten to say "an email that is not accessible via a network address." K.Mizra's arguments lack merit.

*First,* this part of the specification is not merely a description of an embodiment. The phrasing "as used herein" is broad and in no way limits the definition to a particular embodiment. As Cisco previously argued (and K.Mizra hopes the Court will overlook), the patentee used language such as "[e]xamples of" and "some embodiments" when that was his intent. Cisco Br. 17; '892 Patent, 2:30, 2:39, 2:57, 2:60, 2:65. For example, a separate passage in the specification confirms that the patentee used different language when describing specific embodiments:

> A 'URL' *refers herein to* any network-based identifier by which a document may be accessed. *In some embodiments*, a URL may be associated with a document location, such as an HTTP URL.

'892 Patent, 3:34-37 (Emphasis added.). K.Mizra offers no response to this point. Nor does K.Mizra dispute that in other respects—the exclusion of paper documents and local files inaccessible via a network address—the definition applies to all embodiments. Pl. Reply Br. 7. So does the exclusion of email.

*Second*, K.Mizra's "quotation mark" argument lacks logical and legal support. True, quotation marks can help indicate which term is being defined. But that can be clear without them, as it is here. And for good reason, no cases hold that a defined term must appear in quotation

marks.[3] What matters is that the Federal Circuit *has* consistently recognized that the phrase "as used herein" (and similar language) is definitional. *E.g., Chemtall, Inc. v. United States*, 878 F.3d 1012, 1023 (Fed. Cir. 2017) (noting that "a patentee may set out a definition of a term and act as his own lexicographer" and the patents-in-suit "do so explicitly, beginning the definition of 'amide' with the phrase '[a]s used herein'"); *Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007) (explaining that patent "unambiguously provides definitions of other claim terms" where it uses the language "as used herein"). Here, the specification provides an express definition and uses that same unequivocal language of lexicography: "as used herein." *See also, e.g., Baxter Int'l, Inc. v. Becton, Dickinson & Co.,* No. 17 C 7576, 2020 WL 5191495, at *4 (N.D. Ill. Mar. 18, 2020) ("Here, the '192 Patent uses the phrase 'as used herein,' which indicates that the inventor acted as his own lexicographer.").

*Third,* although K.Mizra strains to avoid the specification's exclusion of email, its reading is ungrammatical and unpersuasive. To begin, K.Mizra does not even respond to Cisco's primary textual argument: that if the patentee intended to exclude only email not accessible via a network address, the patentee would have said so. The relevant sentence states in full: "As used herein, a document does not refer to a non-electronic document such as a printed document, nor to an electronic document *not accessible via a network address*, such as a local file *not accessible via a network address*, or an email." '892 Patent, 2:17-21 (emphasis added). K.Mizra cannot, and thus does not, explain why the Court should add the phrase "not accessible via a network address" to

---

[3] There is obviously no rule that requires quotation marks around a defined term, because "a claim term may be clearly redefined without an explicit statement of redefinition" and a specification can even "define claim terms by implication." *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) (cleaned up).

modify email, when the patentee used it in the two preceding clauses but deliberately chose not to when discussing email.

Tellingly, to support its mistaken construction K.Mizra repeatedly re-writes the passage. At one point, it says "the sentence is merely listing an example of a local file not accessible via a network address—i.e. a *locally stored email file*." Pl. Br. 7 (emphasis added). But the specification doesn't say "locally stored email file." It says "email." Then K.Mizra offers another explanation for why the sentence is "clear"—"examples of an electronic document not accessible via a network address include documents such as local files or emails." *Id.* That is not what the sentence says either. The patentee said, in no uncertain terms, that "a document" does not refer to "an email"— with no modifiers.

K.Mizra's focus on the serial comma, or its supposed absence, is unavailing. As Cisco explained, the better reading is that the sentence lists three exclusions, and the serial comma before "or an email" clearly sets off the third category. Cisco Br. 14-15. In response, K.Mizra contends that the sentence's "not . . . , nor . . . , or" is not a perfectly parallel expression of a serial list. Perhaps, but that critique is purely stylistic. It does not affect meaning, which is why K.Mizra offers no alternate explanation for the placement of the commas or the overall sentence structure. The comma preceding "or an email" only makes sense if it is setting off the third item in a list.[4] If "or an email" is a continuation of the phrase beginning "such as," there would be no comma. And

---

[4]Cisco cited a recognized grammar source, *The Elements of Legal Style*, for its description of serial commas. In response, K.Mizra cited a case in which the Court excluded expert testimony from the book's author, Bryan Garner. Pl. Reply Br. 6 n.1. In that case, the Court acknowledged that "Mr. Garner is widely and correctly recognized within the legal community as an expert lexicographer, grammarian, and textualist." *Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 6:19-CV-00034-ADA, 2019 WL 7761432, at *1 (W.D. Tex. Aug. 20, 2019). The Court held, however, that Mr. Garner's proffered opinions on the scope of a license "constitute legal opinions" and were thus not admissible. *Id.* Obviously, Cisco is not relying on Mr. Garner's legal opinions in this case. The holding in *Diamondback* is irrelevant.

if the patentee simply intended to provide redundant examples of electronic documents not accessible via a network address, it makes no sense to describe the first as "a local file not accessible via a network address" and the second as simply "an email."

Regardless, the key point is that the patentee could readily have conveyed in multiple different ways that it was excluding only "emails not accessible via a network address." Cisco Br. 15. That is not what the patentee said. As K.Mizra has it, the patentee could have omitted email from the sentence altogether, because locally stored emails are "local files." Cisco Br. 14. Instead, the patentee used the modifier "not accessible via a network address" for multiple other terms and *not* for email. Moreover, K.Mizra cannot point to a single reference anywhere in the intrinsic record that describes or discusses filtering email. But email simply is not what the '892 Patent is about. The specification says so explicitly.

K.Mizra's proposal directly contradicts the specification. The Court should adopt Cisco's proposed construction because the exclusion of email is clear and unambiguous.

## CONCLUSION

Cisco respectfully asks the Court to adopt its proposed constructions.

Respectfully Submitted,

Dated: July 15, 2021

**CISCO SYSTEMS, INC.**

By: */s/ Melissa Smith*

Melissa Smith (State Bar No. 24001351)
melissa@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903.934.8450
Facsimile: 903.934.9257

Elizabeth R. Brannen
ebrannen@stris.com
STRIS & MAHER, LLP
777 South Figueroa Street, Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Facsimile: (213) 261-0299

*Attorneys for Defendant*
*Cisco Systems, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service on this 15th day of July, 2021.

*/s/ Melissa R. Smith*