**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| K. MIZRA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO. 6:20-CV-01031-ADA** |
| | ) | |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT CISCO SYSTEMS, INC.'S OPENING BRIEF IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.    THE PATENTS ........................................................................................................ 2

    A.  U.S. Patent No. 8,234,705 ('705 Patent). ...................................................... 2
    B.  U.S. Patent No. 8,965,892 ('892 Patent)......................................................... 4

II.   LEGAL STANDARDS ............................................................................................ 5

III.  ARGUMENT ........................................................................................................... 7

    A.  The '705 Patent is invalid for lack of written description.............................. 7
    B.  The '892 Patent is invalid for claiming ineligible subject matter. ............... 12

CONCLUSION................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agilent Techs., Inc. v. Affymetrix, Inc.,*
567 F.3d 1366 (Fed. Cir. 2009)....................................................................1, 5, 7

*Alice Corp. Pty. v. CLS Bank Int'l,*
573 U.S. 208 (2014).................................................................................. *passim*

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
314 F.3d 1313 (Fed. Cir. 2003)..............................................................................7

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018)............................................................................18

*Bicon, Inc. v. Straumann Co.,*
441 F.3d 945 (Fed. Cir. 2006)..............................................................................11

*Bilski v. Kappos,*
561 U.S. 593 (2010)..............................................................................................13

*Capon v. Eshhar,*
418 F.3d 1349 (Fed. Cir. 2005).............................................................................7

*Cisco Systems, Inc. v. K.Mizra LLC,*
No. IPR2021-00593 (P.T.A.B. Sept. 24, 2021) ................................................1, 19

*Cisco Systems, Inc. v. K.Mizra LLC,*
No. IPR2021-00594 (P.T.A.B. Sept. 24, 2021) ....................................................1

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
859 F.3d 1352 (Fed. Cir. 2017)............................................................................18

*Enfish, LLC v. Microsoft Corp.,*
822 F.3d 1327 (Fed. Cir. 2016)............................................................................18

*FairWarning IP, LLC v. Iatric Systems, Inc.,*
839 F.3d 1089 (Fed. Cir. 2016)..................................................................15, 17, 18

*Glasswall Solutions Ltd. v. Clearswift Ltd.,*
754 Fed. Appx. 996 (Fed. Cir. 2018)....................................................14, 15, 16, 18

*Helmsderfer v. Bobrick Washroom Equipment, Inc.,*
527 F.3d 1379 (Fed. Cir. 2008)............................................................................11

*Intell. Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)........................................................................ *passim*

*Invitrogen Corp. v. Clontech Laboratories, Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005)....................................................................................6

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997)..............................................................................7, 10

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)............................................................................16, 17

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
    723 F.3d 1336 (Fed. Cir. 2013)........................................................................ *passim*

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008)....................................................................................6

*Purdue Pharma L.P. v. Faulding Inc.*,
    230 F.3d 1320 (Fed. Cir. 2000)....................................................................................7

*Schering Corp. v. Amgen Inc.*,
    222 F.3d 1347 (Fed. Cir. 2000)....................................................................................8

*TDE Petroleum Data Sols., Inc. v. AKM Enters., Inc.*,
    657 F. App'x 991 (Fed. Cir. 2016) ........................................................................15, 18

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
    728 F.3d 1309 (Fed. Cir. 2013)............................................................................11, 12

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
    264 F.3d 1111 (Fed. Cir. 2001)....................................................................................7

*VLSI Tech. LLC v. Intel Corp.*,
    No. 1:19-CV-977-ADA, 2021 WL 2773013 (W.D. Tex. Apr. 12, 2021) .................................7

*West View Research, LLC v. Audi AG*,
    685 Fed. App'x 923 (Fed. Cir. 2017)..............................................................14, 17, 18

**Statutes**

35 U.S.C. § 101 ........................................................................................... *passim*

35 U.S.C. § 112 ......................................................................................1, 5, 7, 12

35 U.S.C. § 132(a) .................................................................................................10

America Invents Act ................................................................................................5

**Other Authorities**

Rule 12(b)(6)...........................................................................................................................18

Rule 52(c)...............................................................................................................................18

U.S. Patent No. 8,234,705................................................................................. *passim*

U.S. Patent No. 8,965,892................................................................................. *passim*

**INTRODUCTION**

K.Mizra asserts two patents against Cisco; both suffer from multiple fatal flaws. The PTAB, for example, has instituted *inter partes* review, finding that Cisco's petition with respect to U.S. Patent No. 8,234,705[1] "establishes that there is a reasonable likelihood that [Cisco] would prevail in showing the unpatentability of all the challenged claims." *Cisco Systems, Inc. v. K.Mizra LLC*, No. IPR2021-00593, at 2 (P.T.A.B. Sept. 24, 2021); *see also Cisco Systems, Inc. v. K.Mizra LLC*, No. IPR2021-00594, at 2 (P.T.A.B. Sept. 24, 2021) (instituting IPR with respect to the challenged claims of U.S. Patent No. 8,965,892).[2] But invalidity based on prior art is an issue for another day. In this motion, Cisco asks the Court to hold that based on the undisputed factual record and intrinsic evidence (1) the '705 Patent lacks adequate written description and (2) the '892 Patent claims ineligible subject matter.

All asserted claims of the '705 Patent contain a limitation, "trusted platform module" or "TPM," that the specification never mentions. The 2004 provisional application contains nothing about this term. Neither does the original 2005 utility patent application. In name and substance, the applicant first introduced the concept of a "trusted platform module" *nearly 5 years later*. But while amending the claims to add the "trusted platform module" limitation succeeded at the time in overcoming the examiner's prior art-based rejection, it rendered the claims invalid under pre-AIA 35 U.S.C. § 112 because the specification does not convey that the applicant "was in possession of the claimed invention." *Agilent Techs., Inc. v. Affymetrix, Inc.,* 567 F.3d 1366, 1379 (Fed. Cir. 2009) (cleaned up). The *original* specification must fully describe the purported

---

[1] As Cisco will address separately, K.Mizra's claim against Cisco on the '705 Patent is also contractually barred.

[2] The PTAB is expected to issue final written decisions (FWDs) in September 2022. Under the current schedule in this case, the FWDs will issue after trial. If appropriate, Cisco may at a later juncture seek to stay this case pending resolution of the IPRs.

invention, not least to ensure that the applicant possessed the invention at the time of filing. The '705 Patent fails this basic requirement.

The '892 Patent has its own fatal flaw: it is directed to the abstract idea of filtering and fails to qualify for patentability under 35 U.S.C. § 101. It claims nothing more than conventional steps for looking up information about a document and characterizing the information. The Federal Circuit has rejected a materially indistinguishable patent, explaining that "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, filtering files/e-mail—is an abstract idea." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016). That holding governs here.

The intrinsic evidence supplies the relevant facts: the patent claims and specifications, the patent applications and provisional applications, and the prosecution history. Because those facts are undisputed, summary judgment is appropriate on both issues.

## I.   THE PATENTS

### A.  U.S. Patent No. 8,234,705 ('705 Patent).

The '705 Patent is called "Contagion Isolation and Inoculation." Ex. 1, '705 Patent. It claims priority to a provisional application (No. RJ-025) filed on September 27, 2004. The application for the '705 Patent (RAD2P001) was filed on September 27, 2005. After seven years and multiple rejections and amendments, the patent issued with substantially amended claims.

The '705 Patent describes protecting a computer network against potentially dangerous host devices. When host devices attempt to access a protected network, the invention determines whether the host presents a security threat. Ex. 1, Abstract & 3:8-45. If the host's security state is inadequate, the invention quarantines the host to restrict access to the network. *Id.* The claims recite a specific way to make this determination and, if necessary, quarantine the host. As part of the security evaluation, the claims require "contacting a trusted computing base associated with a

*trusted platform module* within the first host." *See, e.g.*, Ex. 1, Patent Claim 1, 19:60-62 (emphasis added). The claims further require a digitally signed attestation of cleanliness from the trusted computing base associated with a trusted platform module. *See id.*, 19:57-20:23, 21:1-39, 22:14-49, (independent claims 1, 12, 19).

The Court has construed "trusted platform module" to mean a "secure cryptoprocessor that can store cryptographic keys and that implements the Trusted Platform Module specification from the Trusted Computing Group." ECF No. 46, 1. Every claim requires this "trusted platform module." Ex. 1, 19:60-62, 21:7, 22:22.[3]

The patent specification, however, makes no mention of the "trusted platform module" limitation—not by name or in substance. *See, e.g., id.* at 14:1-12 (describing two examples of a trusted computing base, with no mention of trusted platform module). Nor did the original claims, Ex. 2, Application for United States Patent, 1-37 (9/27/2005), or the provisional application to which the '705 Patent claims priority, Ex. 3, Provisional Application (9/27/2004).

The applicant first mentioned the "trusted platform module" in 2009, nearly *five years* after filing the original application, when submitting amended claims to overcome yet another rejection. Ex. 4, '705 Patent File History Excerpts, Amendments, April 14, 2009, 23-27. The reason for this new limitation? Expressly to overcome an anticipation rejection. *See id.* (claiming the cited prior art does not teach the new limitation). Ex. 4, Applicant Remarks, April 14, 2009, 29. A few months later, still trying to overcome the examiner's rejections, the applicant explained that "trusted platform module" or "TPM" is "the name of a published specification"—the Trusted Computing Group TPM specification, and "the general name of implementations *of that specification*." Ex. 4, Applicant Remarks, Janurary 10, 2010, 62-63. The applicant further explained that the "current

---

[3] K.Mizra asserts claims 1-3, 5-7, 9, 10-13, and 15-19 of the '705 Patent.

version of the TPM specification is 1.2 Revision 103, published on July 9, 2007" and was adopted as ISO/IEC standard 11889. *Id.* The ISO/IEC standard 11889 was first published in May 2009—4 years after the '705 patent application, and 5 years after its provisional. *See* ECF No. 24, 8 (discussing ISO/IEC Standard 11889-1, Information technology—Trusted Platform Module, Part 1, Overview (1st Ed. May 15, 2009)).

The applicant thus not only did not disclose the Trusted Platform Module in either its provisional or original application; when it amended its claims to disclose that limitation years later, it referenced a specification that did not even exist when those applications were filed.

**B.   U.S. Patent No. 8,965,892 ('892 Patent).**

The '892 Patent, called "Identity Based Filtering," relates to "techniques for content filtering" to protect those "surfing" the world wide web, who may encounter "undesirable content." Ex. 5, '892 Patent, 1:13-34. The patent describes filtering electronic documents accessible via a network address, predominantly webpages of various kinds. *See id.*, 3:59-4:2, 4:21-26, 5:15-17, 5:36-42, 6:61-67, 7:52-61. The Court has construed electronic document to include email if the email is accessible via a network address. ECF No. 46 at 2.

The '892 Patent claims a series of conventional steps for looking up information about a document and characterizing that information, primarily by identifying a person or group associated with the document. *See, e.g.*, Ex. 5, 8:59-9:6 (representative Claim 1: describing determining an identity, determining an identity reputation, and determining a document reputation); *id.* 9:20-31 (Claims 5-7, 9: describing, e.g., "analyzing the document," "determining whether the document reputation is acceptable," and allowing or disallowing "navigation to the document"); *id.* 9:32-40 (Claims 10-12: describing identities associated with comments, messages, and social connections). The specification acknowledges that the claims depend on existing

filtering methods and technology, explaining that "content analysis" involves "keyword matching to detect objectionable content, Bayesian filtering, Support Vector Machine based analysis, and other content analysis technologies *known to those skilled in the art*. '892 Patent, 2:32-35 (emphasis added); *see id.* 5:29-30 ("Such filters are known to those skilled in the art.").

The patent contains both method and system claims, but the system claims (Claims 14 and 15) merely describe the same conventional, generic steps of the method implemented through an equally generic "processor" or "computer program product" with "computer instructions." *Id.* at 9:43–10:13.[4] All of the technology the claims reference is generic. *See, e.g., id.* at 9:41-42 (Claim 13 disclosing the method as a component of a "web browser").

## II.    LEGAL STANDARDS

*Written description requirement*. The written description requirement is codified at 35 U.S.C. § 112. Because the '705 Patent pre-dates the America Invents Act, it is governed by the pre-AIA version of § 112, which provided in relevant part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112 (pre-2012). The Federal Circuit has explained that "[a]dequate written description means that the applicant, in the specification, must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the claimed invention." *Agilent Techs., Inc. v. Affymetrix, Inc.,* 567 F.3d 1366, 1379 (Fed. Cir. 2009) (cleaned up). Thus, "claims added during prosecution must find support sufficient to satisfy § 112 in the written description of the original priority application." *Novozymes A/S v. DuPont Nutrition Biosciences*

---

[4] K.Mizra asserts claims 1, 5-6, 14-15, and 17-18 of the '892 Patent.

*APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013). Satisfaction of "the written description requirement is a question of fact," *id.*, but is "amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008). Cisco must demonstrate by clear and convincing evidence that the patent is invalid for lack of written description, *ICU Med., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009). K.Mizra must then come forward with evidence raising at least a genuine issue of fact regarding whether the patents failed the requirement. *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052, 1072-73 (Fed. Cir. 2005).

   ***Patent-eligible subject matter.*** Patent-eligible subject matter is defined as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (cleaned up). Because "[l]aws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work," a patent grant "might tend to impede innovation more than it would tend to promote it" and thwart "the primary object of the patent laws." *Id.* (cleaned up). *Alice* established a two-part framework for assessing patent-eligibility: first, courts "determine whether the claims at issue are directed to one of those patent-ineligible concepts"; and if so, courts analyze the claims to look for an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-218 (cleaned up).

   ***Summary judgment standard.*** "Summary judgment must be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavit show that there is no genuine

dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-CV-977-ADA, 2021 WL 2773013, at *2 (W.D. Tex. Apr. 12, 2021). The court must "view all inferences drawn from the factual record in the light most favorable to the nonmoving party" and may not make credibility determinations or weigh the evidence. *Id.* But mere "conclusory allegations" are not enough to defeat summary judgment. A party opposing summary judgment "is required to identify specific evidence in the record and to articulate the precise way that evidence supports their claim." *Id.*

## III. ARGUMENT

### A. The '705 Patent is invalid for lack of written description.

The '705 Patent fails for lack of an adequate written description because a key limitation—the trusted platform module—is entirely missing from the specification and was only disclosed in claim amendments years after the original application. The written description requirement "serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed." *Capon v. Eshhar*, 418 F.3d 1349, 1357 (Fed. Cir. 2005). It "prevent[s] an applicant from later asserting that he invented that which he did not." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003). It is thus black-letter law that every claim limitation must appear in the specification, *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997), and that the "written description doctrine prohibits new matter from entering into claim amendments." *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1379 (Fed. Cir. 2009).

Claims added during prosecution must "find support sufficient to satisfy § 112 in the written description of the original priority application." *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1328-29 (Fed. Cir. 2000); *see also TurboCare Div. of Demag Delaval*

*Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001) ("When the applicant adds a claim or otherwise amends his specification after the original filing date . . . the new claims or other added material must find support in the original specification."). "Assessing possession as shown in the disclosure requires an objective inquiry into the four corners of the specification." *Novozymes*, 723 F.3d at 1344 (cleaned up). "The fundamental inquiry is whether the material added by amendment was inherently contained in the original application." *Schering Corp. v. Amgen Inc.,* 222 F.3d 1347, 1352, (Fed. Cir. 2000).

The original application for the '705 Patent utterly lacks support for the "trusted platform module" limitation. The prosecution history defeats any suggestion that the original 2005 application (much less in the provisional application) described this limitation. The original specification discloses only examples of a "trusted computing base" and "trusted software":

> A computer associated with an address identified in a list is queried for a cleanliness assertion (1302), for example by contacting a trusted computing base within a computer, and requesting an authenticated infestation scan by trusted software. An example of a trusted computing base within a computer is the Paladium security initiative under development by Microsoft and supported by Intel and American Micro Devices. Another example of a trusted computing base is described in various TCG specifications, such as the TCG Architecture Overview, published by the Trusted Computing Group. Trusted code bases may for example execute antivirus scans of the remainder of the computer, including untrusted portions of the disk and/or operating system. In some embodiments, trusted code bases may digitally sign assertions about the cleanliness (e.g. infestation status) and/or state of their computers. In some embodiments, the query for cleanliness (1302) may be responded to by anti-contagion software, such as antivirus software, with assertions about the currency of a scan, such as the last time a scan was performed, or a version associated with a current anti-contagion software or definition file in use, wherein a sufficiently updated software and/or scan may act as a cleanliness assertion.

Ex. 2, 23-24. The original claims contained "trusted computing base" and "trusted software" as limitations. Claim 3, for example, read as follows: "detecting an insecure condition includes querying the first host for a cleanliness assertion, including by: contacting a trusted computing base within the first host; and requesting an authenticated infestation scan by trusted software."

*Id.*, 34:15-18. The 2004 provisional application contained language virtually identical to the 2005 application quoted above, with no mention of a trusted platform module. Ex. 3, 23-24.

During prosecution, however, the examiner rejected original claim 3 (along with all of the other original claims) as anticipated. Ex. 4, 2008-11-14 Non-final rejection, 4-5. As the examiner explained, the cited prior art disclosed checking for the presence of anti-virus software and applying appropriate virus policies to scan for viruses. *Id.*

In an April 2009 response, the applicant amended the claims. Ex. 4, 2009-4- Am. Rec., 3. The amendment formally cancelled Claim 3, and combined elements of Original Claim 1 and 3 while dropping the "trusted software" limitation and adding the TPM limitation that gives rise to this motion. Amended Claim 1 recited: "detecting the insecure condition *includes contacting a trusted computing base associated with a trusted platform module* within the first host, receiving a response, and determining whether the response includes a valid digitally signed attestation of cleanliness." *Id.* (emphasis added). In support of the amendment, the applicant argued that the prior art did not disclose "contacting a trusted computing base associated with a trusted platform module." *Id.*, 2009-4-14 App Remarks, 8. The examiner nevertheless rejected Amended Claim 1. *Id.*, 2009-07-09 non-final rejection, 3.

The applicant requested reconsideration and argued that as amended, Claim 1 was not anticipated *precisely because* of the new "trusted platform module" limitation:

> Nothing in this, or elsewhere in Liang [the prior art], appears to teach or suggest "contacting a trusted computing base," nor "a trusted computing base associated with a trusted platform module within the first host," as recited in claims 1, 9, and 14. Applicant notes that *"trusted computing base" and "trusted platform module["] are terms of art with specific meanings that are in no way discussed in Liang*.
> ….
> *Liang does not appear to teach or suggest a trusted platform module*, nor a trusted computing base associated with a trusted platform module. Indeed, Applicant discussed the previously presented amendment to claims 1, 9, and 14 with the

> Examiner . . . on April 14, 2009. During that interview, the Examiner explicitly stated that she believed the language in these claims as amended in Amendment A and presented herein overcame Liang, as indeed, they appear to do.

*Id.*, 2010-01-10 App Remarks, 6-7 (emphasis added). In this effort to overcome the prior art, the applicant further explained that "Trusted Platform Module (TPM) is both the name of a published specification detailing a secure cryptoprocessor that can store cryptographic keys that protect information, as well as the general name of implementations of that specification, often called the "TPM chip" or "TPM Security Device." The applicant identified the TPM specification as "the work of the Trusted Computing Group," referencing the current version "published on July 9, 2007," and noting that the specification was also "adopted as ISO/IEC standard 11889." *Id.*

Ultimately, after an appeal during which the applicant continued to press these arguments and after additional amendments, the '705 Patent issued in July 2012. The examiner identified "trusted platform module" as a basis for avoiding anticipation. Ex. 4, Notice of Allowance, 7. The two independent claims (1 and 12) both include the trusted platform module limitation.

This undisputed record confirms that the claimed "trusted platform module" is new matter added by amendment in 2009. The original specification does not describe this limitation—at all. Although applicants need not describe claimed subject matter *in haec verba*, "the specification must contain an equivalent description of the claimed subject matter." *Lockwood*, 107 F.3d at 1572; 35 U.S.C. § 132(a) ("No amendment shall introduce new matter into the disclosure of the invention."). Here, the original specification makes no mention of a TPM or any type of secure cryptoprocessor that can store cryptographic keys. During prosecution, "trusted platform module" replaced "trusted software," which is in the specification but not the issued claims. "Trusted software" is not a disclosure of a trusted platform module, which the Court has held is "[a] "secure

cryptoprocessor that can store cryptographic keys and that implements the Trusted Platform Module specification from the Trusted Computing Group." ECF No. 46, 1.

The specification's discussion of "trusted computing base" does not describe a "trusted platform module." Ex. 1, 13:66-14:7. These are separate claim limitations, *id.* 19:61-62, with different meanings. The "trusted computing base" is "[h]ardware or software that has been designed to be a part of the mechanism that provides security to a computer system." ECF No. 35, 1. The specification gives two different examples of a "trusted computing base," and no examples (or mention) of a "trusted platform module." Their differing definitions and separate recitation in the claims make it self-evident that "trusted computing base" and "trusted platform module" are not equivalent. So does the fact that the applicant treated them as distinct limitations during prosecution Ex. 4, 2010-01-10 App Remarks, 6-7 (providing separate and distinct definitions for trusted platform module and trusted computing base). The examiner also treated them as different, allowing the claims to issue only after addition of the TPM limitation. *See also Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("Our precedent instructs that different claim terms are presumed to have different meanings"); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006) (all the terms in a claim must be given effect, and none rendered superfluous). Nothing in the original specification indicates to a person of ordinary skill in the art that that the applicant was in possession of the newly added (and entirely distinct) TPM limitation or regarded it as part of the claimed invention.

The '705 Patent thus indisputably fails the written description requirement. K.Mizra is now "claiming more than [the applicant] actually invented and disclosed to the public, as measured by the written description of the invention provided with their patent applications." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1319 (Fed. Cir. 2013). The Federal Circuit has

"consistently held that, to satisfy § 112, a patent's written description must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Novozymes*, 723 F.3d at 1344. No one reading the 2005 application could recognize that the applicant "invented" a method that required a secure cryptoprocessor implementing the Trusted Platform Module specification. The applicant added that limitation years after filing the application to overcome prior art that anticipated the software referenced in the original claims. Because the newly added limitation has no support in the original specification, the claims are invalid under § 112. *See Trading Techs.*, 728 F.3d at 1319 (claims cannot "overreach" the specification).

What's more, the applicant's remarks during prosecution suggest that the applicant did not possess or regard the TPM as part of the invention in 2004 or 2005. The applicant explained during prosecution what the term "trusted platform module" meant by referencing a specification published in 2007, which was not published as an ISO/IEC standard until May 2009. *Supra*, 3. Summary judgment that the asserted claims of the '705 Patent are invalid as a matter of law for lack of an adequate written description is warranted.

**B.     The '892 Patent is invalid for claiming ineligible subject matter.**

No one may patent an idea. As the Supreme Court has explained, patents "that claim laws of nature, natural phenomena, and abstract ideas" are invalid under 35 U.S.C. § 101. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). *Alice* dictates a two-step process for assessing validity under §101. First, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. If so, the Court must proceed to step two, and "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* at 221 (cleaned up). Simply adding "conventional steps, specified at a high level of generality" is not enough. *Id* at 222. And likewise,

12

"steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility." *Intellectual Ventures*, 792 F.3d at 1370

The '892 Patent fails the *Alice* test because it claims the abstract idea of filtering documents based on reputation. Claim 1 is representative:

> A method for determining a reputation associated with an electronic document accessible via a network address, comprising:
> determining an identity relating to a person, wherein the identity is associated with the electronic document;
> determining that the person is a member of a group, wherein the group is associated with a group-related service and wherein the group is associated with a group reputation;
> determining an identity reputation, wherein the identity reputation is associated with the identity and wherein the identity reputation is based at least in part on the group reputation; and
> determining a document reputation, wherein determining the document reputation uses the identity reputation.

'892 Patent, 8:59-9:6. The purported "method" disclosed for determining an electronic document's reputation comprises nothing more than checking for information about persons or groups who created or are associated with a document. The objective, as the specification explains, is to look for "unwanted content" such as obscenity and pornography. *Id.* at 5:20-25. Determining a "reputation" by looking for information about people and groups is an abstract idea in the same vein as using an intermediary to help settle financial transactions and hedging against financial risk, which the Supreme Court held abstract in *Alice* and *Bilski*, respectively: these are all established and familiar practices that predate computers and the internet. *See Alice*, 573 U.S. at 219 (intermediated settlement and risk hedging are abstract ideas, representing "economic practice[s] long prevalent in our system of commerce" (cleaned up)); *see also Bilski v. Kappos*, 561 U.S. 593, 611 (2010).

In fact, the Federal Circuit has already held that materially similar patent claims directed to "filtering e-mails that have unwanted content" were patent-ineligible under § 101. *Intell.*

*Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016). The patent invalidated in

*Intellectual Ventures* claimed:

> A method for identifying characteristics of data files, comprising:
>     receiving, on a processing system, file content identifiers for data files from a plurality of file content identifier generator agents, each agent provided on a source system and creating file content IDs using a mathematical algorithm, via a network;
>     determining, on the processing system, whether each received content identifier matches a characteristic of other identifiers; and
>     outputting, to at least one of the source systems responsive to a request from said source system, an indication of the characteristic of the data file based on said step of determining.

*Id*. at 1313.

The specific verbiage differs slightly, but the concept of the *Intellectual Ventures* patent is materially indistinguishable from the '892 Patent's: receiving identifying information and determining "reputation" or "characteristics" based on that information. And the Federal Circuit's reasoning applies here with equal force: "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, filtering files/e-mail—is an abstract idea." *Id*. at 1313. Filtering based on identifying characteristics is akin to the "long-prevalent practice for people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail." *Id.* The patent thus "merely applie[d] a well-known idea using generic computers 'to the particular technological environment of the Internet.'" *Id.* The '892 Patent likewise claims a series of abstract steps.

Consistent with *Alice* and *Intellectual Ventures*, numerous other decisions hold that similar claims are abstract *See, e.g., Glasswall Solutions Ltd. v. Clearswift Ltd.*, 754 Fed. Appx. 996, 997-99 (Fed. Cir. 2018) (filtering of electronic files and data by re-generating an electronic file without nonconforming data held abstract); *West View Research, LLC v. Audi AG*, 685 Fed. App'x 923, 926

(Fed. Cir. 2017) (claims held abstract because they "do not go beyond receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual or audio response to the initial data query"); *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1093-94 (Fed. Cir. 2016) (method of collecting and analyzing accesses to a patient's health information according to specified rules to determine if there was improper access held abstract because claims were "directed to a combination" of "abstract-idea categories" of collecting information, analyzing information, and presenting the results of the collection and analysis of information); *TDE Petroleum Data Sols., Inc. v. AKM Enters., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016) (claims directed to collecting information and analyzing it using operations performed by a general-purpose computer were abstract).

Turning to step two, the '892 Patent does not "contain[] an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (cleaned up). An inventive concept is "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Intellectual Ventures,* 838 F.3d at 1313 (cleaned up). "[C]onventional steps, specified at a high level of generality, which are well known in the art and consist of well-understood, routine, conventional activities previously engaged in by workers in the field" are not sufficient. *Id.* (cleaned up). Nor are "generic computer-implemented steps." *Glasswall*, 754 F. App'x at 998.

Here, the '892 Patent discloses only routine, conventional steps implemented with generic computers and existing software applications. In multiple places, the specification reiterates that the claims incorporate existing, well-known computer applications. For example, "content

15

analysis" involves "keyword matching to detect objectionable content, Bayesian filtering, Support Vector Machine based analysis, and other content analysis technologies *known to those skilled in the art*. Ex. 5, 2:32-35 (emphasis added); *see id.* 5:29-30 ("Such filters are known to those skilled in the art."). The specification describes using generic "database[s]" and querying existing "external data source[s]" like "social network aggregators and identity providers." *Id.* at 5:57-65, 7:2-5. It describes transmission of information over existing, generic networks ("the internet" or a "local area network") using standard protocols like HTTP. *Id.* at 6:58-61. Reputation may be determined by checking standard databases like criminal records and blacklists. *Id.* at 7:30-32.[5]

The claims themselves, both alone and in combination, likewise fail to add the "something more" necessary to transform the abstract idea into a "patent-eligible application." *Alice*, 573 U.S. at 217. Claim 1 does not recite any technological elements at all apart from an "electronic document" accessed at a network address, which is just as generic as the email and electronic files recited in *Intellectual Ventures* and *Glasswall*. Claims 2-22, to the extent they add anything to representative Claim 1, merely describe the abstract idea of filtering based on reputation in generic computer and internet-based contexts. Claims 2-12 and 16-22 add generic descriptions of identity checking and filtering that "could all be performed by humans without a computer," *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016), such as "analyzing the document;" "determining whether the document reputation is acceptable;" and allowing or disallowing navigation to the document. Ex. 5, 9:20-25, 30-31. The steps of these claims "recite nothing more than the collection of information," *Mortg. Grader*, 811 F.3d at 1324,

---

[5] The specification also disclaims any special or inventive ordering of steps by explaining that "the order of the steps of disclosed processes may be altered." Ex. 5, 1:58-60.

including "determining a URL" and looking at social networks, messages, comments, blacklists, and social connections associated with the document. Ex. 5, 9:7-40, 10:30-47.

Claims 13-15 merely add "generic computer components." *Mortg. Grader*, 811 F.3d at 1324. Claim 13 claims the method as a generic "web browser" component, *id.*, 9:41-42, while Claims 14 and 15 purport to claim a system implemented through a generic "processor" or "computer program product" with "computer instructions." *Id.* at 9:43–10:13. The Federal Circuit rejected markedly similar system claims in *Fair Warning*, explaining that "nominal recitations of basic computer hardware, such as 'a non-transitory computer-readable medium with computer-executable instructions' and a microprocessor" did not transform a patent-ineligible method claim into a patentable system claim. *FairWarning,* 839 F.3d at 1096.

The Federal Circuit has repeatedly held that similar claims that recite conventional steps for collecting and analyzing information fail *Alice's* step two. *See, e.g., Intellectual Ventures*, 838 F.3d at 1313 (receiving data file identifiers, characterizing them, and communicating characterization not inventive); *FairWarning,* 839 F.3d at 1096 (generating a rule to assess transactions, applying it, and announcing result not inventive); *West View Research*, 685 F. App'x at 926 ("claims do not go beyond receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual or audio response to the initial data query"). The '892 Patent discloses nothing that improves the functioning of a computer or improves computer technology; the claims uniformly cite only existing, generic technology. *Mortg. Grader.*, 811 F.3d at 1324–25 ("generic computer components do not satisfy the inventive concept requirement"). The claims thus "fail to add something more to transform the claimed abstract idea of collecting and analyzing information . . . into a patent-eligible application." *FairWarning*, 839 F.3d at 1095.

17

Because "the claims recite conventional elements at a high level of generality and do not constitute an inventive concept," *West View Research*, 685 F. App'x 927, summary judgment is warranted. The Court has construed the claims and the patent says what it says. No material facts are in dispute and no additional factual development is necessary for the Court to decide patent-eligibility as a matter of law. *See, e.g., Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("As our cases demonstrate, not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry."). That is especially true given the marked similarity of these claims to the filtering claims invalidated in *Intellectual Ventures*. Both the Federal Circuit and the Supreme Court "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Federal Circuit has even approved dismissal of complaints under § 101. *FairWarning*, 839 F.3d at 1097 ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("we have repeatedly affirmed § 101 rejections at the motion to dismiss stage"); *Glasswall*, 754 F. App'x at 999 ("we find no error in the district court's resolution of the patent ineligibility of the claims on a Rule 12(b)(6) motion"); *TDE Petroleum*, 657 F. App'x at 993. *Intellectual Ventures* reviewed summary judgment and Rule 52(c) motions. 838 F.3d at 1311. There is no reason for the Court to postpone its assessment of patent-eligibility.

## CONCLUSION

Cisco respectfully asks the Court to grant summary judgment of invalidity in its favor on all claims.

Dated: November 18, 2021                     Respectfully submitted,


By: */s/ Melissa R. Smith*
    Melissa R. Smith (State Bar No. 24001351)
    melissa@gillamsmithlaw.com
    **GILLAM & SMITH LLP**
    303 South Washington Avenue
    Marshall, TX 75670
    Telephone: 903.934.8450
    Facsimile: 903.934.9257


    Elizabeth R. Brannen (*Pro Hac Vice*)
    ebrannen@stris.com
    Kenneth J. Halpern (*Pro Hac Vice*)
    khalpern@stris.com
    **STRIS & MAHER LLP**
    777 S. Figueroa St, Ste 3850
    Los Angeles, CA 90017
    Telephone: (213) 995-6800
    Fascimile: (213) 216-0299

*Attorneys for Defendant*
*Cisco Systems, Inc.*

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2021, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. All counsel of record are participants in CM/ECF and have consented to electronic service.

*/s/ Melissa R. Smith*
Melissa R. Smith