# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| K.MIZRA LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>CISCO SYSTEMS, INC.,<br><br>    Defendant. | Case No. 6:20-cv-01031-ADA |

## PLAINTIFF K.MIZRA LLC'S OPPOSITION TO DEFENDANT CISCO SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARDS ......................................................................................... 2

      A.    Written Description .................................................................................. 2

      B.    Patent Eligible Subject Matter ................................................................. 2

III.  ARGUMENT ....................................................................................................... 3

      A.    The '705 Patent Satisfies the Written Description Requirement ............................. 3

      B.    The '892 Patent Claims are Directed to Patent Eligible Subject Matter ................. 9

            1.    *Alice* Step One: The Claimed Invention in the '892 Patent is Directed
                  to an Improvement to Computer-Related Technology and Not an
                  Abstract Idea .............................................................................. 9

            2.    *Alice* Step Two: The claimed invention in the '892 patent recites an
                  inventive concept that is significantly more than the alleged abstract
                  idea. ......................................................................................... 13

IV.   CONCLUSION ................................................................................................. 15

# **TABLE OF AUTHORITIES**

## **Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).................................................................................................. 2, 3

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)...................................................................................... 13

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)........................................................................................ 4

*Amgen Inc. v. Sanofi*,
    872 F.3d 1367 (Fed. Cir. 2017)........................................................................................ 9

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................................... 2

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010)........................................................................................ 2

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)...................................................................................... 13

*Bd. of Trs. of the Leland Stanford Junior Univ. v. Chinese Univ. of H.K.*,
    860 F.3d 1367 (Fed. Cir. 2017).................................................................................... 8, 9

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)................................................................... 3, 13, 14, 15

*Capon v. Eshhar*,
    418 F.3d 1349 (Fed. Cir. 2005)........................................................................................ 5

*Cisco Sys., Inc. v. K.Mizra LLC*,
    No. IPR2021-00593 (P.T.A.B. Sept. 24, 2021) .............................................................. 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1347 (Fed. Cir. 2014)........................................................................................ 3

*Cosmokey Sols. GMBH & Co. KG v. Duo Sec. LLC*,
    15 F.4th 1091 (Fed. Cir. 2021) ...................................................................................... 13

*DDR Holdings, LLC v. Hotels.com, LP*,
    773 F.3d 1245 (Fed. Cir. 2014)...................................................................................... 13

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)........................................................................... 2, 10, 11

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
    276 F. Supp. 3d 629 (E.D. Tex. 2017) .................................................................. 4

*Estate of Duncan v. Comm'r*,
    890 F.3d 192 (5th Cir. 2018) ........................................................................... 15

*Flex Frac Logistics, L.L.C. v. N.L.R.B.*,
    746 F.3d 205 (5th Cir. 2014) ........................................................................... 15

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    645 F.3d 1336 (Fed. Cir. 2011) .......................................................................... 2

*Intellectual Tech LLC v. Zebra Techs. Corp.*,
    No. 6:19-cv-00628, 2021 U.S. Dist. LEXIS 11950 (W.D. Tex. Jan. 22, 2021) ...................... 2

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) .................................................................... 11, 12

*Intirtool, Ltd. v. Texar Corp.*,
    369 F.3d 1289 (Fed. Cir. 2004) .......................................................................... 2

*LG Elecs., Inc. v. Bizcom Elecs., Inc.*,
    453 F.3d 1364 (Fed. Cir. 2006) .......................................................................... 6

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) .......................................................................... 4

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) .................................................................... 10, 11

*Novozymes A/S v. DuPont Nutrition Biosciences APS,*
    723 F.3d 1336 (Fed. Cir. 2013) ....................................................................... 4, 7

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .......................................................................... 4

*PPS Data, LLC v. Jack Henry & Assocs.*,
    404 F. Supp. 3d 1021 (E.D. Tex. Sept. 6, 2019) ................................................ 9, 14, 15

*Purdue Pharma L.P. v. Faulding Inc.*,
    230 F.3d 1320 (Fed. Cir. 2000) .......................................................................... 7

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008) ................................................................................... 6, 7

*Schering Corp. v. Amgen Inc.*,
    222 F.3d 1347 (Fed. Cir. 2000) .......................................................................... 4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016)...................................................................................... 10

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
  728 F.3d 1309 (Fed. Cir. 2013)........................................................................................ 7

*Uniloc USA, Inc. v. ADP, LLC*,
  772 Fed. App'x 890 (Fed. Cir. 2019) ............................................................................ 11

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
  957 F.3d 1303 (Fed. Cir. 2020)...................................................................................... 12

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
  No. 13-676-LPS-CJB, 2015 U.S. Dist. LEXIS 132000, at *12-13 (D. Del. Sep. 30, 2015) .... 9

*Vizio, Inc. v. ITC*,
  605 F.3d 1330 (Fed. Cir. 2010)........................................................................................ 6

## Statutes

35 U.S.C. § 101 ........................................................................................................................... 1

35 U.S.C. § 282 ........................................................................................................................... 2

## I.      <u>INTRODUCTION</u>

Defendant Cisco's Motion alleging the lack of written description for U.S. Patent 8,234,705 ("the '705 patent") should be denied because at best it raises several genuine issues of material fact as to how a person of ordinary skill in the art would have understood the claim term, "a trusted computing base associated with a [TPM]," as read in light of the patent specification with an understanding of state of the art at the time. Cisco improperly focuses its factual inquiry of whether this claim term is sufficiently disclosed based on a hyper-literal approach that amounts to a text search of the patent specification for the exact words, "trusted platform module." But each claim must be taken as an integrated whole rather than as a collection of independent limitations. Cisco incorrectly concludes that the patent specification does not sufficiently describe a "[TPM]" simply because this exact phrase is absent—which misapplies the law and critically ignores the understanding that one of ordinary skill brings to reading the specification. That is, because "trusted computing" relies on "roots of trust"—predominantly TPMs—one of ordinary skill would have understood the disclosure of the genus, "trusted computing base," to include its well-known default species, "a trusted computing base associated with a [TPM]." Thus, this later-claimed species is sufficiently described.

Cisco's Motion regarding the patent eligibility of U.S. Patent 8,965,892 ("the '892 patent") under 35 U.S.C. § 101 should also be denied because it applies the wrong legal tests and ignores specific claim language. At Step One, rather than properly focus on the actual claim language, Cisco's Motion relies on an over-simplification of the invention and its objective. At Step Two, Cisco fails to even address the challenged claims' additional elements or their ordered combination. Instead, Cisco focuses solely on the specification and the computer techniques disclosed therein. This is not the proper Section 101 test, and this dispositive error thus means Cisco fails to establish by clear and convincing evidence that the claims are patent ineligible.

II.     **LEGAL STANDARDS**

    A.     **Written Description**

Under 35 U.S.C. § 282, a patent is presumed valid. In moving for summary judgment, movant thus has the burden of establishing by clear and convincing evidence that a patent fails to comply with the written description requirement. *See Intellectual Tech LLC v. Zebra Techs. Corp.*, No. 6:19-cv-00628, 2021 U.S. Dist. LEXIS 11950, at *2 (W.D. Tex. Jan. 22, 2021) (citing *Hynix Semiconductor Inc. v. Rambus Inc.,* 645 F.3d 1336, 1351 (Fed. Cir. 2011); *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1294 (Fed. Cir. 2004)). To do so, movant must show that the disclosure of a patent does not "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *See id.* (citing *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010)). The question is one of fact. *See id.* (citing *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1365 (Fed. Cir. 2019)). And the facts must be read in the light most favorable to the nonmovant. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

    B.     **Patent Eligible Subject Matter**

The Supreme Court set forth a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). At the first step, courts "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* "The 'directed to' inquiry . . . applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (citations and quotations omitted).

If the claims are found to be "directed to" an abstract idea, the analysis proceeds to the

second step of determining whether there is an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (internal quotation marks omitted). That inquiry turns on whether the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225). "The question of whether a claim element or combination of elements is well-understood, routine, and conventional to a skilled artisan in the relevant field is a question of fact," which must be "proven by clear and convincing evidence" by the movant. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## III.   <u>ARGUMENT</u>

### A.     The '705 Patent Satisfies the Written Description Requirement

Cisco has failed to meet its high burden to establish that the '705 patent does not reasonably convey to those skilled in the art that the inventors had possession of "a trusted computing base associated with a trusted platform module"— at the time, a well-known species of the disclosed "trusted computing base." In particular, contemporaneous prior art confirms the sufficiency of the '705 patent's written description. These art-related facts must be read in the light most favorable to K.Mizra. Thus, at best, Cisco's arguments raise several genuine issues of material fact, including: (1) what understanding did one of ordinary skill have of "trusted computing" at the time; (2) whether the original provisional application provides sufficient written description, given that trusted platform modules (TPMs) formed the cornerstone of "trusted computing"; or (3) whether the subsequent utility application—with its clarifying "blaze mark"[1] reference to

---

[1] Several cases cited by Cisco are either inapposite, distinguishable, or support K.Mizra's arguments. Several of those cases in fact found sufficient written description. *See, e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1399-1400 (Fed. Cir. 2003) (holding that finding that written description was satisfied was not clearly erroneous); *Schering Corp. v. Amgen Inc.*,

industry standards—provides sufficient written description. Accordingly, Cisco's motion should be denied.

The root of the dispute stems from Cisco improperly taking the "[TPM]" limitation out of the context of the "trusted computing base"—with which it is associated in the same claim phrase. *See* ECF No. 49 at 3. While these terms are separate, courts must take each claim "as an integrated whole rather than as a collection of independent limitations." *See Novozymes A/S v. DuPont Nutrition Biosciences APS,* 723 F.3d 1336, 1466 (Fed. Cir. 2013) (cited by Cisco); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[T]he context in which a term is used in the asserted claim can be highly instructive."). Here, "a trusted computing base associated with a trusted platform module" is the default species of the genus, "trusted computing base," disclosed by the specification and consistently demonstrated by the prior art.

Specifically, because "the patent specification is written for a person of skill in the art" and "such a person comes to the patent with the knowledge of what has come before," "it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention . . . ." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 644 (E.D. Tex. 2017) (citing *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005)). The level of detail required to satisfy the written description requirement therefore varies "with the scientific and technologic knowledge already in existence." *See UroPep*, 276 F. Supp. 3d at 644-45 (citing *Capon v. Eshhar*, 418 F.3d 1349, 1357 (Fed. Cir. 2005) (cited by Cisco)). Here, the '705 provisional application discusses several examples of a "trusted computing base":

---

222 F.3d 1347, 1352, (Fed. Cir. 2000) ("This court does not discern a new matter violation . . . ."). Additional examples are discussed below. The Cisco cases that support K.Mizra's arguments will be noted parenthetically.

> 15   IP addresses in a given subnet. An addressed computer identified in a list may
>
> be queried for a cleanliness assertion (1302), for example by contacting a trusted
>
> computing base within a computer, and requesting an authenticated infestation
>
> scan by trusted software.  An example of a trusted computing base within an
>
> operating system is the Paladium security initiative under development by
>
> 20   Microsoft and supported by Intel and American Micro Devices.  Trusted code
>
> bases may for example execute antivirus scans of the remainder of the
>
> computer, including untrusted portions of the disk and operating system.  In
>
> some embodiments, trusted code bases may digitally sign assertions about the
>
> cleanliness and state of their computers.  In some embodiments, the query for

Ex. B, '705 Provisional Application at 23-24 (highlighting added). At the time, the key distinguishing feature behind "trusted computing" technology was the incorporation of "roots of trust" into computer platforms. *See* Ex. A, Declaration of Dr. Nenad Medvidovic ("Medvidovic Decl.") at ¶ 39, 51. One of the minimal roots of trust was the TPM. *See id.* at ¶ 42. That is because the TPM is physically protected to be tamper-resistant such that the internal workings cannot be tampered with by anyone—not by the platform, not by the user themselves, nor by any third party. *See id.* at ¶ 42, 56. Thus, the TPM is a component that is "trusted by everyone." *See id.* at ¶ 27. This understanding of the notion of "trust" is consistent with inventor testimony. *See id.* at ¶ 39. That is, trusted computing necessarily requires a TPM, on which to form the foundation of trust for the entire system. Accordingly, one of ordinary skill would have understood the disclosure of the genus, "trusted computing base," to include the species that was associated with a TPM. Indeed, the provisional disclosure expressly highlighted the alternative Paladium implementation precisely because the default understanding to a person of ordinary skill would be of a "trusted computing base associated with a [TPM]." *See* Medvidovic Decl. at ¶ 31. Thus, the provisional application sufficiently described the invention in the context of the state of the art at the time.

The '705 patent's applicant later clarified this established relationship by amending the specification to further reference the TCG specifications:

> authenticated infestation scan by trusted software. An
> example of a trusted computing base within a computer is the
> Paladium security initiative under development by Microsoft
> and supported by Intel and American Micro Devices. Another
> example of a trusted computing base is described in various
> TCG specifications, such as the TCG Architecture Overview,
> published by the Trusted Computing Group. Trusted code

'705 Patent at 14:1-17. This disclosure of the TCG prior art also satisfies the written description requirement for multiple reasons. *First*, prior art cited by the patentee has particular value because it not only indicates the meaning of a term to a skilled artisan, but also the patentee's intended meaning. *See LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364 (Fed. Cir. 2006), *rev'd on other grounds*, *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008) ("When prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate not only the meaning of the term to persons skilled in the art, but also that the patentee intended to adopt that meaning."). Thus, this prior art also corroborates inventor testimony that confirms this understanding. *See* Medvidovic Decl. at ¶ 38 (citing inventor testimony that "the trusted platform module may be explicitly inherent in the trusted computing base."). *Second*, this case is factually akin to *Vizio,* where the claim language had a specific limitation, "MPEG," that necessarily referred to the MPEG-2 standard. *Vizio, Inc. v. ITC,* 605 F.3d 1330, 1337 (Fed. Cir. 2010). In that case, the Federal Circuit confirmed the approach of looking to an industry standard to determine the understanding of one of ordinary skill in the art—*even when that standard is not expressly incorporated by reference. See id.* (citing *LG v. Bizcom*, 453 F.3d at 1375 ("Although we have concluded that the patentee did not expressly adopt the . . . industry standard, that standard remains relevant in determining the meaning of the claim term to one of ordinary skill in the art at the time the patent application was filed . . . .")). Here, the Court's very claim construction for the term "TPM" necessarily requires looking to the TPM Specification, which is part of the larger group of TCG Specifications

referenced in the specification. *See* ECF No. 46 at 1. The TCG standards, including the TPM Specification and the TCG Architecture Overview, further confirm that the "root of trust" for "trusted computing" was the TPM (as also confirmed above for the provisional application). *See* Medvidovic Decl. at ¶ 35-44, 48. *Third*, this disclosure satisfies the written description requirement under Cisco's cited cases.[2] In particular, the '705 patent specification does not disclose a "slew of competing possibilities," nor does identifying the invention require the reader to "pick a tree out of the forest." *See Novozymes,* 723 F.3d at 1466-67; *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326 (Fed. Cir. 2000) (cited by Cisco). By identifying the TCG standards, this specification provides the requisite "blaze marks" to guide the skilled artisan to the later-claimed species of a "trusted computing base associated with a [TPM]," as distinct from, for example, the alternative Paladium implementation. *See id.* at 1346.

The utility application originally claimed the genus, "trusted computing base," which would have encompassed the TPM and Paladium species. *See* Ex. C, 2005-09-27 Claims at Claim 3, 14. During prosecution, applicants elected to narrow the claims to the TPM species. To provide further context and to clarify the record, applicants did not argue that Claim 1 was not anticipated "precisely because of the new '[TPM]' limitation," as Cisco incorrectly contends.[3] *See* ECF No. 49 at 9. Rather, despite Cisco's selective emphasis, applicants argued that the prior art did not

---

[2] Cisco overreaches by relying on *Trading Technologies* for the proposition that "[b]ecause the newly added limitation has no support in the original specification, the claims are invalid under § 112." *See* ECF No. 49 at 12. Rather, *Trading Technologies* plainly clarified: "To be clear, we express no opinion as to whether or not the claims . . . now before us satisfy the written description requirement." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1320 (Fed. Cir. 2013).

[3] The examiner also did not identify the TPM "as a basis for avoiding anticipation," as Cisco contends. *See* ECF No. 49 at 10. Instead, the examiner noted that "the closest prior art" Liang and Yan "fail to anticipate or render serving both the specific quarantine notification page with the DNS redirection when in combination with the remaining claim limitations. Therefore the claims are allowable over the cited prior art." Ex. C, Examiner's Statement of Reasons for Allowance, 3.

disclose the genus, "trusted computing base," nor the species of a "*trusted computing base associated with* a [TPM]":

> Nothing in this, or elsewhere in Liang [the prior art], appears to teach or suggest "contacting a trusted computing base," nor "a trusted computing base associated with a trusted platform module within the first host," as recited in claims 1, 9, and 14. Applicant notes that *"trusted computing base" and "trusted platform module["] are terms of art with specific meanings that are in no way discussed in Liang.*
>
> ….
>
> *Liang does not appear to teach or suggest a trusted platform module, nor a trusted computing base associated with a trusted platform module.* Indeed, Applicant discussed the previously presented amendment to claims 1, 9, and 14 with the

*See* ECF No. 49 at 9 (emphasis original) (underlining added). Inventor testimony corroborates this point. *See* Medvidovic Decl. at ¶ 63. Cisco does not dispute that applicants' remarks and the cited TPM Specification sufficiently describe the claimed TPM. Rather, Cisco disputes only the timing of this disclosure, as at the time, applicants noted the latest version of the TPM Specification was from 2007. But the Federal Circuit has expressly held that while assessing the written description for later-added claims, post-dated publications—such as the 2007 TPM Specification—may be considered, but only to bolster art-related facts that existed at the time of filing. *See Bd. of Trs. of the Leland Stanford Junior Univ. v. Chinese Univ. of H.K.*, 860 F.3d 1367, 1378 (Fed. Cir. 2017) (noting that the written description inquiry should examine "pre-filing date art-related facts" and may include an analysis "showing that any post-filing date publications contain art-related facts . . . existing on the filing date"). Indeed, using the 2007 TPM Specification solely as a source for "later knowledge about later art-related facts" without reference to the prior art, as Cisco apparently suggests, is improper. *See id.* at 1378-79 (noting that evidence "directed solely to a later state of art" was "improperly relied upon."). And categorically precluding post-priority-date evidence is legal error. *See Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1375 (Fed. Cir. 2017).

Moreover, Cisco itself relies on the 2003 TPM Specification in connection with its

ultimately successful claim construction arguments in its parallel IPR Petition. *See* Ex. I, *Cisco Sys., Inc. v. K.Mizra LLC*, No. IPR2021-00593, at 14-16 (P.T.A.B. Sept. 24, 2021) (citing, *inter alia*, Ex. 1013, 2003 TPM Specification at 11, 19, and 11-22).[4] Because Cisco's own reliance in the IPR effectively acknowledges the coterminous disclosure of the 2003 and 2007 TPM Specifications, Cisco thus cannot now argue in this motion that the 2003 TPM Specification does not sufficiently describe the trusted platform module in the claimed invention. Accordingly, the patent specifications, including that of the provisional application, provide sufficient written description to establish the inventor was in possession of "a trusted computing base associated with a [TPM]" in light of existing knowledge at the time.

## B.   The '892 Patent Claims are Directed to Patent Eligible Subject Matter

### 1.   Alice Step One: The Claimed Invention in the '892 Patent is Directed to an Improvement to Computer-Related Technology and Not an Abstract Idea.

By applying the wrong legal tests and improperly ignoring specific claim language, Cisco fails to meet its high burden to establish by clear and convincing evidence that the '892 patent claims[5] are "directed to" an abstract idea. Rather, the plain focus of the claimed invention is a computational process, performed by a computer program product, that determines an electronic document's reputation using a determined identity reputation that is based at least in part on a

---

[4] In other words, Cisco is perfectly willing to rely on the 2003 TPM Specification to describe the TPM when it suits Cisco's purposes for IPR claim construction, but inexplicably declines to do so for written description purposes here.

[5] Cisco argues without explanation that '892 patent claim 1 is "representative." ECF No. 49 at 13. This is insufficient to carry Cisco's "burden of persuasion to identify a rationale for treating a given claim or claims as representative of other asserted claims." *PPS Data, LLC v. Jack Henry & Assocs.*, 404 F. Supp. 3d 1021, 1029-30 (E.D. Tex. Sept. 6, 2019); *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 U.S. Dist. LEXIS 132000, at *12-13 (D. Del. Sep. 30, 2015) ("[W]ith Defendants having given negligible attention to the remainder of the claims, the Court does not find it wise or appropriate to make a final determination as to the subject matter eligibility of such claims at this time.").

determined group reputation. Accordingly, a system performing the claimed invention is capable of functioning in a way that it is not capable of without the claimed invention. Specifically, the prior art used blacklists/whitelists that were simultaneously over- and under-inclusive. To overcome these limitations, the claimed operations achieve a novel level of granularity and adaptability with the implementation of three interrelated but distinct reputation scores. Thus, rather than claiming an abstract idea, the claimed invention is directed to a *specific computer-related solution* to a computer-related problem.

Cisco's Step One analysis suffers from multiple failures in arguing that K.Mizra's claims are "directed to" ineligible subject matter by: (1) failing to address the asserted claim language; and (2) failing to establish that the claimed improvement is itself an abstract idea.

First, in conducting the Step One inquiry, the challenger "must focus on the language of the Asserted Claims themselves," *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016), and avoid characterizing the claims at "a high level of abstraction" that is "untethered from the language of the claims." *Enfish*, 822 F.3d at 1337. Here, Cisco improperly confines its analysis to what it believes is the "gist" and the "objective" of the claims. *See* ECF No. 49 at 13. ("The purported 'method' disclosed for determining an electronic document's reputation comprises *nothing more* than checking for information about persons or groups who created or are associated with a document. The *objective*, as the specification explains, is to look for 'unwanted content' such as obscenity and pornography.") (emphasis added). This broad description of the claims is exactly the over-generalization that the Federal Circuit has repeatedly warned against as improper. *See, e.g.*, *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("We have previously cautioned that courts 'must be careful to avoid oversimplifying claims' by looking at them generally and failing to account for the specific

requirements of the claims.") (citing prior warnings).

Second, Step One requires the challenger to make a substantive showing that "the focus of the claimed advance over the prior art" is "directed to excluded subject matter." *Uniloc USA, Inc. v. ADP, LLC*, 772 Fed. App'x 890, 896 (Fed. Cir. 2019). Here, Cisco falls short of carrying its burden in that Cisco utterly neglects to address why the *claimed advancement* over traditional whitelist/blacklist-based filtering is itself an abstract idea. That is, Cisco has provided no evidence that the previously used process is the same as the specific *claimed* process—implemented with three interrelated but distinct reputation scores. *See McRO*, 837 F.3d 1299 at 1314.

Instead, Cisco relies on *Intellectual Ventures,* which is inapposite. *See* ECF No. 49 at 13-18 (citing *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016)). In that case, the Court found "it was long-prevalent practice for people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail." *See Intellectual Ventures*, 838 F.3d at 1314. Unsurprisingly, the *Intellectual Venture* claims were found to be abstract, as those claims called for little more than a simple determination that a "received content identifier matches a characteristic of other identifiers." *See id.* at 1357. The claims at issue here stand in stark contrast. Specifically, Dr. Medvidovic explains that the prior practice filtered unwanted or objectionable emails by a simple matching of a domain name against whitelists/blacklists. Medvidovic Decl. at ¶ 70. Moreover, such lists necessarily typically require manual maintenance—further rendering such approaches an "abstract idea" that merely invokes the computer as a tool. *Cf. Enfish*, 822 F.3d at 1336. In contrast, the '892 patent's claims here provide for a specific improved process in determining a document reputation by improving the granularity and adaptability of that determination. Based on the implementation of three distinct reputation scores with a specific

11

interrelationship, the claimed process is materially different from "long-prevalent practices." For example, the '892 patent teaches that the claimed reputation scores may consist of an "integer or floating point value"—which allows for a higher level of granularity in scoring reputations versus, for example, simply checking to see if a domain exists in a list. '892 patent at 7:11-15; Medvidovic Decl. at ¶ 73. The reputation scores may further be provided by a local database or a remote service. *See* '892 patent at 7:1-11; Medvidovic Decl. at ¶ 74. Such services improve the adaptability of reputation scoring by allowing for remote incremental updates versus the manual maintenance required with blacklists/whitelists. *See* '892 patent at 7:1-11; Medvidovic Decl. at ¶ 74. Moreover, reputation services can consider multiple factors, such as the historical trends of "undesirable content creation or presentment"—therefore further allowing users to improve their reputation over time without requiring manual intervention. *See* '892 patent at 8:11-15; Medvidovic Decl. at ¶ 75. Thus, the claims here provide for a specific asserted improvement in computer capabilities as opposed to an abstract idea for which computers are merely invoked as tools. Accordingly, Cisco's remaining string-cites to cases are equally unavailing as none of them establish that the claim limitation of determining a document reputation using a determined identity reputation that is based at least in part on a determined group reputation is a "long-prevalent practice."

In sum, Cisco's legally deficient Step One analysis cannot sustain its clear and convincing burden of proof. Cisco fails to engage with the claim language and discuss why the claimed advance over blacklisting/whitelisting was directed to an abstract idea rather than a specific technical solution. *See Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020). Instead, Cisco improperly over-simplifies the claims to a "gist" or "objective." Moreover, Cisco incorrectly analogizes the claims to those in *Intellectual Ventures* and a string of inapposite case cites ignoring factual differences. Cisco's motion should thus be denied at Step One alone.

2.      *Alice* Step Two: The claimed invention in the '892 patent recites an inventive concept that is significantly more than the alleged abstract idea.

Under Federal Circuit precedent, inventive concepts are found either when the *claims* recite an "ordered combination of elements"[6] or "additional elements"[7] that are not routine, conventional, or well-understood. Cisco cannot meet its clear and convincing burden to prove invalidity because instead of analyzing claim elements and their ordered combination for routineness and conventionality, Cisco inexplicably focuses on the specification and the computer techniques there disclosed. *See, e.g.*, ECF No. 49 at 15-16 (pointing out the specification's disclosure of keyword matching, Bayesian filtering, Support Vector Machine analysis, database queries, HTTP, etc. were "well known computer applications."). This is not the Step Two test. The proper test is whether additional claim elements or their ordered combination are well-understood, routine, or conventional. *See Berkheimer*, 881 F.3d at 1368. Thus, by failing to address the claims, Cisco fails to carry its burden and its motion should be denied at Step Two. Moreover, only "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, [and] conventional to a skilled artisan in the relevant

---

[6] *See, e.g., DDR Holdings, LLC v. Hotels.com, LP*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) ("When the limitations of the . . . claims are taken together as an ordered combination, the claims recite an invention that is not merely the routine or conventional use of the Internet."); *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

[7] *See, e.g., Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1301, 2016 (Fed. Cir. 2016) ("Claim 1 includes the enhancing limitation which is individually sufficient for eligibility. But this enhancing limitation necessarily involves the arguably generic gatherers, network devices, and other components working in an unconventional distributed fashion to solve a particular technological problem."); *Cosmokey Sols. GMBH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1098 (Fed. Cir. 2021) ("Contrary to the district court's conclusion, the '903 patent discloses a technical solution to a security problem in networks and computers . . . nothing in the specification or anywhere else in the record supports the district court's suggestion that the last four claim steps are conventional.").

field" can eligibility "be decided on summary judgment as a matter of law." *Id.* at 1368. "[A]t the summary judgment stage, this requires the movant defendant to completely foreclose any factual disputes about either the 'abiding' or 'highly probable' nature of its conventionality allegations." *PPS Data*, 404 F. Supp. 3d at 1040 (citations omitted). "If the court finds that there is evidence which creates some uncertainty about whether the claims are 'well-understood, routine, and conventional,' the Court must deny summary judgment." *Id.* Here, as Dr. Medvidovic's opinions demonstrate, there is a genuine issue of triable fact as to whether additional elements or their ordered combination reflects more than "well-understood, routine and conventional" activity. *Berkheimer*, 881 F.3d at 1368.

Cisco's flawed "well-understood, routine and conventional" analysis critically ignores all claim elements except for "electronic document," which it concludes is generic. *See* ECF No. 49 at 16. Cisco fails to address the additional elements of determining a document reputation using an identity reputation, which itself is based at least in part on a group reputation. Cisco nonetheless concludes that the ordered combination of claim elements somehow "fail[s] to add the 'something more' necessary to transform the abstract idea into a 'patent-eligible application.'" *Id.* (citing *Alice*, 573 U.S. at 217). Again, Cisco fails to explain why the claimed ordered combination (of determining an identity relating a to a person, where the identity is associated with an electronic document; determining that the person is a member of a group, where the group is associated with its own group reputation; determining an identity reputation based at least in part on the group reputation; and determining a document reputation using the identity reputation) was "well-understood, routine, and conventional." Cisco's conclusory allegations in the *Berkheimer* context cannot "completely foreclose any factual disputes about either the 'abiding' or 'highly probable' nature of its conventionality allegations." *PPS Data*, 404 F. Supp. 3d at 1040. Thus, Cisco's motion

should be denied for not properly applying Step Two. There is no reason for Cisco's lack of analysis concerning the ordered combination of claim elements. Accordingly, any attempt to apply the correct test for the first time in reply is therefore waived. *See Estate of Duncan v. Comm'r*, 890 F.3d 192, 202 (5th Cir. 2018) (quoting *Flex Frac Logistics, L.L.C. v. N.L.R.B.*, 746 F.3d 205 (5th Cir. 2014)) ("'[A]rguments raised for the first time in a reply brief are waived.'").

Even if Cisco were to analyze the claim elements, there is a genuine issue of material fact regarding the conventionality of the claimed processes. As previously discussed, prior email security systems in 2007 determined reputation by simply comparing the domain name associated with the sender's email address to a blacklist/whitelist. *See* Medvidovic Decl. at ¶ 71. Such systems simply did not look at the claimed interrelated document reputation, identity reputation, and group reputation when filtering emails. *See id.* Thus, this specific combination and order of operations was not well-understood, routine, or conventional. *See* Medvidovic Decl. at ¶ 77-78. At the very least, this evidence creates "some uncertainty about whether the claims are 'well-understood, routine, and conventional,'" and "reduce[s] the likelihood that the claims are 'well-understood, routine, and conventional' from 'highly probable' to any lesser level of probability." *PPS Data*, 404 F. Supp. 3d at 1040. Cisco submits no contrary evidence, let alone clear and convincing evidence, to establish that the additional elements and their ordered combination were routine and conventional at the time of invention. Critically, Cisco submits no expert declaration about the additional elements or their ordered combination being well-understood, routine, or conventional, which alone should preclude summary judgment. *See Berkheimer*, 881 F.3d at 1368.

## IV.   **CONCLUSION**

Cisco has failed to establish by clear and convincing evidence that the '705 patent's inventors did not have full possession of the invention and the asserted claims of the '892 patent are invalid for lack of patent eligible subject matter. The Court should deny Cisco's motion.

Date: December 9, 2021                    Respectfully submitted,


                                          FOLIO LAW GROUP PLLC

                                          */s/Cliff Win, Jr.*
                                          Cliff Win, Jr., CA SBN: 35020
                                          Cristofer Leffler, WA SBN: 35020
                                          Folio Law Group PLLC
                                          1200 Westlake Ave N., Ste. 809
                                          Seattle, WA 98109
                                          Tel:     (206) 880-1802
                                          Email: cliff.win@foliolaw.com
                                                  cris.leffler@foliolaw.com

                                          Joseph M. Abraham, TX SB No. 24088879
                                          Law Office of Joseph M. Abraham
                                          13492 Research Blvd., Suite 120, No. 177
                                          Austin, TX 78750
                                          Tel:     (737) 234-0201
                                          Email: joe@joeabrahamlaw.com

                                          *Attorneys for K.Mizra LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2021, I caused the foregoing document to be served on all counsel of record via ECF.

/s/Cliff Win, Jr.
Cliff Win, Jr.