# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| K. MIZRA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **C.A. NO. 6:20-CV-01031-ADA** |
| | ) | |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>DEFENDANT CISCO SYSTEMS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY ['705 PATENT]</u>**

**INTRODUCTION**

The written description requirement focuses "on whether the specification notifies the public about the boundaries and scope of the claimed invention *and* shows that the inventor possessed all aspects of the claimed invention." *Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1382 (Fed. Cir. 2019) (cleaned up). For the '705 Patent, the key question is whether the provisional application filed in 2004, alone or together with the nearly identical utility application filed in 2005 (together the "original specification"), disclosed an invention that required a "trusted platform module," or "TPM." The disclosure must be found within the "four corners of the specification," *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc), and it is not. *See* ECF Nos. 49-2 (utility), 49-3 (provisional).

K.Mizra implicitly concedes that the original specification does not mention or give any examples of a TPM. Instead, K.Mizra relies upon the disclosure of a different claim limitation: "trusted computing base." But disclosing a "trusted computing base" does not disclose that the invention included a TPM associated with it. This is unquestionably true: the specification discloses, as one of only two examples of a trusted computing base, one called Paladium that K.Mizra concedes is *not* associated with a trusted platform module. *See* ECF No. 53, at 5-6 (conceding that Paladium is an "alternative" to implementation with trusted platform module); *see also* ECF No. 53-1, at 22 ¶ 50 (contrasting Paladium "as opposed to" implementation with TPM). K.Mizra further concedes that the invention originally described only the Paladium trusted computing base. ECF No. 53, at 7. These concessions are fatal.

K.Mizra tries to avoid the inevitable by bulking up the record with irrelevant testimony and publications. It doesn't matter what *other prior art* might have said. What matters is what the original specification disclosed and described as the invention. "The specification must teach the invention by describing it." *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 926 (Fed. Cir.

2004). "[A]ll the limitations must appear in the specification." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). Here, they do not: the TPM is absent. Given the intrinsic record, nothing K.Mizra proffers can manufacture a triable issue of fact. Summary judgment is warranted.

**I.      The intrinsic record indisputably shows that the original specification did not describe a TPM in any way, much less disclose it as a feature of the invention.**

The undisputed intrinsic record reveals that the '705 Patent is invalid for lack of an adequate written description. Every asserted claim contains the TPM limitation, which this Court construed as a "secure cryptoprocessor that can store cryptographic keys and that implements the Trusted Platform Module specification from the Trusted Computing Group." ECF No. 46, at 1; '705 Patent, ECF No. 49-1, 19:57- 22:49. But as Cisco has shown, the 2004 and 2005 applications do not mention a TPM—in words or substance—or describe any "secure cryptoprocessor." ECF No. 49, at 7-12. Rather, the applicant added the TPM limitation years later to overcome prior art. The original specification thus does not provide the "precise definition" that "show[s] possession of the invention by describing it with all of its limitations." *Biogen Int'l GMBH v. Mylan Pharms. Inc.*, 18 F.4th 1333, 1342 (Fed. Cir. 2021), *cert. denied*, 2022 WL 4652058 (U.S. Oct. 3, 2022).

The undisputed facts are dispositive. K.Mizra does not dispute: that the original specification (1) neither references a TPM (2) nor includes any discussion of a secure cryptoprocessor, in name or substance; and (3) the first mention of a TPM came nearly *five years* later, in an amendment to avoid anticipation. *See* ECF No. 49, at 2-3; ECF No. 49-4, '705 Patent File History Excerpts, Amendments, April 14, 2009, 23-27. Because the specification "must fully set forth the claimed invention," with "all its claimed limitations"—not merely disclose "that which makes [the invention] obvious"—K.Mizra cannot avoid summary judgment. *Lockwood*, 107 F.3d at 1572.

Its attempts are unavailing. K.Mizra first seeks to divert attention to the wrong question. It

incorrectly conflates written description with claim construction by asking how a POSITA "would have understood the *claim term*, 'a trusted computing base associated with a [TPM],' as read in light of the patent specification." ECF No. 53, at 1 (emphasis added). That claim term did not exist until the applicant added "associated with a trusted platform module" in 2009. *See* ECF No. 49, at 3-4. The relevant question is whether the original specification disclosed the TPM limitation, not how a POSITA would construe the 2009 claims (which the Court has already done).

In any case, the Court's constructions foreclose K.Mizra's argument. K.Mizra attempts to elide two different limitations: trusted computing base and trusted platform module. Although K.Mizra proposed construing these terms separately and giving them distinct meanings, it now contends, in effect, that "trusted computing base" and "trusted computing base associated with a trusted platform module" should be treated as synonyms. But all terms in a claim must be given effect and different terms are presumed to have different meanings. *See* ECF No. 49, at 17. Accordingly, as both parties urged, this Court construed the terms to have different meanings. *Compare* ECF No. 46, at 1 (TPM) *with* ECF No. 35, at 1. The parties' agreed definition of trusted computing base does not mention, and obviously does not require, a TPM. ECF No. 35, at 1 ("[h]ardware or software that has been designed to be a part of the mechanism that provides security to a computer system").

K.Mizra tries to support its about-face with case law, but its claim construction cases, *see id.* at 4, 6, do not help its cause. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005), recites the standard, including looking to context and prosecution history. Here, the prosecution history shows that the patentee introduced and defined the previously undisclosed concept of a TPM years too late. *See* ECF No. 49, at 3-4. *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1374 (Fed. Cir. 2006) was reversed, *see* 553 U.S. 617, and regardless, in stark contrast to this case,

3

addressed a claim limitation and an industry standard that were both disclosed in the specification. *See* 453 F. 3d at 1374. *Vizio, Inc. v. Int'l Trade Com'n*, 605 F.3d 1330, 1337 (Fed. Cir. 2010), is irrelevant for the same reason. There, the Federal Circuit held that "MPEG" meant "MPEG–2 standard" because that standard was "specifically referenced in numerous places in the specification, and the specification makes no reference to any other MPEG standard." *Id.*

K.Mizra also offers a misguided and unsupported "genus/species" argument. It says that "trusted platform module" was disclosed because "a trusted computing base associated with a trusted platform module" is supposedly the "default species" of the trusted computing base "genus." ECF No. 53, at 1. This "default species" theory contravenes the intrinsic record and has no legal support—indeed, K.Mizra does not cite a single supporting case and a Westlaw search for "default species" returns *zero* Federal Circuit cases. Moreover, K.Mizra makes no effort to show that the standard for disclosing a genus is met: it does not show that the original specification discloses a "representative number of species" or "structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Ariad*, 598 F.3d at 1350 (cleaned up). It cites *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326 (Fed. Cir. 2000), but the written description there was inadequate where the patentees had "pick[ed] a characteristic possessed by two of their formulations . . . not discussed even in passing in the disclosure, and then ma[de] it the basis of claims." *Id.* at 1327. *Purdue* rejected precisely what K.Mizra seeks, holding that "one cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention." *Id.* at 1326. As *Purdue* demonstrates, a passing reference to an undated, unspecified set of "various" technical specifications, which K.Mizra's expert admits include numerous components and features and multiple subspecifications, falls far short of being a sufficient "blaze mark" to disclose a claim

limitation that the specification omits. *See Purdue,* 230 F.3d at 1326-27; ECF No. 53-1, ¶¶ 52-61.

What K.Mizra is really arguing is inherent disclosure—and it has coined the term "default species" to hide its failure to meet the requisite standard. In "a narrow set of circumstances, the written description requirement may be satisfied without an explicit disclosure if the claimed features are *necessarily inherent* in what is expressly described." *Nuvo,* 923 F.3d at 1382-83. The specification and K.Mizra's concession that the Paladium trusted computing base did not use or require a TPM, refute any suggestion that "trusted computing necessarily requires a TPM," ECF No. 53, at 5. And that is the standard K.Mizra would have to meet: inherency, not obviousness.

The intrinsic record negates inherency for two reasons. First, as K.Mizra concedes, the original specification discloses an example of a trusted computing base (the Paladium security initiative) that is *not* associated with a trusted platform module. *See* '705 Patent, 14:1-4; 2004 Provisional App., ECF No. 49-3, at 22; ECF No. 53, at 5-6 (conceding disclosure of the "alternative" Paladium security initiative). Second, the applicant amended the claims to add a TPM *after* the examiner rejected them expressly because an anticipatory reference disclosed a "trusted computing base." ECF No. 49-4, Non-final Rejection at 6 ("Liang discloses 'a method as recited in claim 1, wherein detecting an insecure condition includes querying the first host for a cleanliness assertion, including by: contacting a trusted computing base within the first host….'"). That also refutes any argument that disclosing a trusted computing base necessarily discloses a TPM.

K.Mizra's assertions about "trusted computing" and what a POSITA may have understood ignore the central "objective inquiry": "whether the description clearly allows persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Inphi Corp. v. Netlist, Inc.,* 805 F.3d 1350, 1355 (Fed. Cir. 2015) (cleaned up). Its contention that "one of ordinary skill would have understood the disclosure of the genus, 'trusted computing base,' to include the species that

was associated with a TPM," ECF No. 53, at 5, proves at most that its claimed invention would have been obvious to a POSITA. But "a description which renders obvious a claimed invention is not sufficient to satisfy the written description requirement." *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1567 (Fed. Cir. 1997). Whether a skilled artisan could identify or envision the invention is irrelevant; the question is "whether the application *necessarily discloses* that particular device." *Lockwood,* 107 F.3d at 1572 (emphasis added); *Small v. Nobel Biocare USE, LLC*, No. 05-CIV-3225, 2013 WL 3972459, at *8 (S.D.N.Y. Aug. 1, 2013) (same). Since a trusted computing base need not be associated with a TPM, the disclosure of a trusted computing base does not and cannot "necessarily disclose" that the invention included a TPM.

K.Mizra cannot paper over what is missing by arguing that a POSITA could have figured out to use a TPM. *See Rivera v. ITC*, 857 F.3d 1315, 1322 (Fed. Cir. 2017) ("The knowledge of ordinary artisans may be used to inform what is actually in the specification, but not to teach limitations that are not in the specification, even if those limitations would be rendered obvious by the disclosure in the specification." (cleaned up)). Because the original specification makes no mention whatsoever of a TPM , it does not show that the applicant "actually invented the invention claimed." *Ariad*, 598 F.3d at 1351. That is the bottom line: the intrinsic record, including the Court's claim construction, shows that a TPM was not "necessarily inherent" in the disclosure.

**II.    K.Mizra's proffered extrinsic evidence changes nothing.**

As the Federal Circuit explained in *Ariad*, expert testimony does not defeat summary judgment if the specification is inadequate. 598 F.3d at 1357-58 & n.8. Although adequacy is a question of fact, "summary judgment of lack of written description may be granted 'based solely on the language of the patent specification' since '[a]fter all, it is in the patent specification where the written description requirement must be met.'" *Zoho Corp. v. Sentius Int'l, LLC*, 494 F. Supp.

6

3d 693, 705 (N.D. Cal. 2020) (quoting *U. of Rochester*, 358 F.3d at 927). The testimony K.Mizra proffers does not create any triable issue.

*First*, the expert's opinions flatly conflict with the intrinsic record. Where an expert's testimony is "so fundamentally unsupported that it can offer no assistance to the jury," it is inadmissible. *Maytag Corp. v. Electrolux Home Prod., Inc.,* 448 F. Supp. 2d 1034, 1076 (N.D. Iowa 2006) (cleaned up), *aff'd*, 224 F. App'x 972 (Fed. Cir. 2007); *see also Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1018 (Fed. Cir. 2022) ("expert testimony that is inconsistent with unambiguous intrinsic evidence should be accorded no weight" (cleaned up)), *petition for cert. filed,* 2023 WL 361733 (U.S. Jan. 18, 2023). It is undisputed that: (1) the original specification discloses "several examples" of trusted computing bases, including the "Paladium security initiative under development by Microsoft," ECF No. 53-1, ¶¶ 35, 49; (2) the "Paladium security initiative" is not associated with a TPM, *id.* ¶¶ 36, 50 (describing Paladium as the "'non-default' implementation," "as opposed to" a "trusted computing base associated with a" TPM); (3) neither application mentions the TPM, ECF No. 49, at 1, 3; and (4) the original claims said nothing about a secure cryptoprocessor but instead described *software* associated with the trusted computing base. ECF No. 49-2, at 34 (claiming "contacting a trusted computing base within the first host; and requesting . . . scan by trusted software").

On this record, the expert's assertions are not even comprehensible. The expert claims that by identifying two examples of a TCB—Paladium security initiative and Trusted Computing Group—the applicants somehow indicated that the former was a "non-default" implementation and the latter a "default" implementation associated with a TPM. ECF No. 53-1, ¶¶ 36, 50, 61. '705 Patent, 13:64-67-14:1-10. Nothing in the specification remotely suggests this. Paladium is mentioned first and in no way discounted: it is "an example," and TCG is "another example." '705

Patent, 13:64-67-14:1-10; *see* ECF No. 49, at 8. The 2004 provisional is even less helpful to K.Mizra: it names Paladium only and never mentions TCG. ECF No. 49-3, at 22. K.Mizra's expert opinion that this is consistent with a POSITA's "default understanding that 'trusted computing' is generally implemented with a TPM," ECF No. 53-1, ¶ 36, is pure fiction.

K.Mizra's expert cannot rewrite the specification to say something that isn't there. *See Novartis*, 38 F.4th at 1019. He may believe that a POSITA in 2004-05 would have viewed a "trusted computing base associated with a trusted platform module" as a common or popular implementation. But the publications and prior art discussed by the expert can do no more than suggest what might have been obvious. The sufficiency of the disclosure is measured by what the specification actually says. *See, e.g., TurboCare Div. of Demag Delaval Turbo. Corp. v. Gen. Elec. Co.,* 264 F.3d 1111, 1119-20 (Fed. Cir. 2001) (expert statements insufficient where disclosure was "completely lacking" in description of claimed spring location; such an embodiment might have been "obvious," but no "reasonable juror could find" the "original disclosure was sufficiently detailed to enable one of skill in the art to recognize that [applicant] invented what is claimed").

Further, the TPM specification itself refutes the expert's assertions. As the current version makes explicit: "[t]he TPM is not the trusted computing base of a system. Rather, a TPM is a component that allows an independent entity to determine if the TCB has been compromised." *See* Ex. 1, TPM spec., Part 1, Level 00 Rev. 01.59 (Nov. 8, 2019), at 21 (§ 9.2.2).

***Second***, as in *Ariad*, the expert's opinions are irrelevant and inadmissible because they are addressed to the wrong standard and thus lack "any factual content upon which [a] jury could . . . rel[y] when considering the specification." 598 F.3d at 1358 n.8; *see also AMS Sensors USA Inc. v. Renesas Elecs. Am. Inc.*, No. 4:08-CV-00451, 2021 WL 765228, at *8 (E.D. Tex. Feb. 26, 2021) (excluding expert testimony directed to wrong legal standard, which was "misleading" and

"irrelevant"). To be relevant, the expert would have to show that the TPM was expressly disclosed or *necessarily inherent* in the original specification. He says neither of those things. He says only that a POSITA would have understood that "trusted computing base" "encompassed a 'trusted computing base associated with a TPM,'" and that publications show that "the concepts behind 'trusted computing' included a 'trusted computing base' associated with a [TPM]." ECF No. 53-1, ¶¶ 2, 36, 37. And he frames his opinions in terms of K.Mizra's unsupported "default species" theory. *See id.* at ¶¶ 33, 36, 40, 41, 61, 67. But given their respective constructions, a TPM is simply not a species of TCB, default or otherwise, and "default" is not the same as only. In fact, "default" concedes the existence of other implementations, which defeats any argument that the reference to a "trusted computing base" disclosed that the invention required a TPM.

The expert also cites vague, inconclusive inventor testimony speculating that a "trusted platform module" "might be . . . inferable" or "may potentially be explicitly inherent" in a "trusted computing base." *Id.* at 15-16. K.Mizra bolsters this speculative testimony by misquoting it to omit "potentially." ECF No. 49, at 6. But saying "may potentially be" is the same as saying nothing at all. In any case, "inventor testimony cannot establish written description support where none exists in the four corners of the specification." *See Nuvo*, 923 F.3d at 1381; *see also Bell & Howell Document Mgmt. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) (inventor testimony "often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application" and is "entitled to little or no consideration" in claim construction).

In short, the expert never demonstrates or even asserts that a TPM was necessarily inherent in a trusted computing base. ECF No. 53-1, ¶¶ 33, 41, 61, 67. He cannot say that because the applications expressly disclose a trusted computing base that is *not* associated with a TPM. *See supra* at 1, 5. His opinion that the "default" implementation of a trusted computing base was a

trusted computing base with a TPM is thus legally irrelevant. *See In re Jones*, 10 F. App'x 822, 827-28 (Fed. Cir. 2001) (unpub.) (for "missing limitations to be inherent in the disclosure, the missing descriptive matter must be *necessarily* present in the structure described"; "inherency may not be established by probabilities or possibilities" (cleaned up)). The Federal Circuit rejected similar expert testimony in *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1310 (Fed. Cir. 2008), where the specification disclosed user interfaces *on* a vending machine, but no remote interface. An expert testified that providing the remote interface functionality was "well known." *Id.* The Federal Circuit held that the expert's testimony did not show that the specification *disclosed* using a customer's laptop for the interface but only, at best, that use of the laptop would have been obvious. *Id.* And "[o]bviousness simply is not enough." *Id.*

A related further problem is that the expert testimony conflicts with the Court's claim construction. *See supra* at 3 (TCB construction differs, and obviously does not include TPM). Courts routinely exclude such testimony. *See Mission Pharmacal Co. v. Virtus Pharms., L.L.C.*, No. SA-13-CV-176-PM, 2014 WL 12480016, at *3 (W.D. Tex. Sept. 12, 2014) (collecting cases).

Because the expert's opinions are inadmissible, they cannot create a genuine fact dispute. *See, e.g., PowerOasis*, 522 F.3d at 1310; *Maytag*, 448 F. Supp. 2d 1034 at 1076 ("expert opinions that are conclusory and contrary to the written description" do not "generate genuine issues of material fact" that preclude summary judgment), *aff'd,* 224 F. App'x 972; Fed. R. Civ. P. 56. His assertion that those of skill "would have understood the specification to provide a sufficient written description of the '705 Patent claims," ECF No. 53-1, at 3, is an inadmissible legal conclusion. *Ariad*, 587 F.3d at 1358 n.8. The undisputed intrinsic record warrants summary judgment.

## CONCLUSION

Cisco respectfully asks the Court to hold the '705 Patent invalid as a matter of law.

Dated: February 3, 2023							Respectfully submitted,

By: */s Melissa R. Smith*
  Melissa R. Smith (State Bar No. 24001351)
  melissa@gillamsmithlaw.com
  **GILLAM & SMITH LLP**
  303 South Washington Avenue
  Marshall, TX 75670
  Telephone: 903.934.8450
  Facsimile: 903.934.9257

  Elizabeth R. Brannen (*Pro Hac Vice*)
  ebrannen@stris.com
  Kenneth J. Halpern (*Pro Hac Vice*)
  khalpern@stris.com
  **STRIS & MAHER LLP**
  777 S. Figueroa St, Ste 3850
  Los Angeles, CA 90017
  Telephone: (213) 995-6800
  Fascimile: (213) 216-0299

*Attorneys for Defendant
Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. All counsel of record are participants in CM/ECF and have consented to electronic service.

        */s/ Melissa R. Smith*
        Melissa R. Smith