—1—

<pre>
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                        WACO DIVISION

 3   K.MIZRA LLC               *
                               *      March 24, 2023
 4   VS.                       *
                               * CIVIL ACTION NO. 6:20-CV-1031
 5   CISCO SYSTEMS, INC.       *

 6           BEFORE THE HONORABLE ALAN D ALBRIGHT
                 MOTIONS HEARING (via Zoom)
 7
     APPEARANCES:
 8
     For the Plaintiff:   Robert R. Brunelli, Esq.
 9                        Paul Sung Cha, Esq.
                          Angela J. Bubis, Esq.
10                        Bart A. Starr, Esq.
                          Sheridan Ross P C.
11                        1560 Broadway, Suite 1200
                          Denver, CO 80202
12
                          Cliff Win, Jr., Esq.
13                        Folio Law Group PLLC
                          1200 Westlake Ave. N, Ste. 809
14                        Seattle, WA 98109

15                        Joseph M. Abraham, Esq.
                          Folio Law Group PLLC
16                        13492 Research Blvd, Ste. 120, #177
                          Austin, TX 78750
17
                          Michael Charles Smith, Esq.
18                        Siebman, Forrest, Burg & Smith, LLP
                          113 E. Austin Street
19                        Marshall, TX 75670

20   For the Defendant:   Elizabeth Rogers Brannen, Esq.
                          Sarah Rahimi, Esq.
21                        Stris & Maher LLP
                          777 South Figueroa Street, Ste 3850
22                        Los Angeles, CA 90017

23                        Andrew Thompson Gorham, Esq.
                          Gillam & Smith LLP
24                        102 N. College, Suite 800
                          Tyler, TX 75702
25
</pre>

1

2      Court Reporter:      Kristie M. Davis, CRR, RMR
                            PO Box 20994
                            Waco, Texas 76702-0994
3                           (254) 340-6114

4        Proceedings recorded by mechanical stenography,

5      transcript produced by computer-aided transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

03:02  1                    (Hearing begins.)

03:02  2                    DEPUTY CLERK:  Court calls Case

03:02  3    6:20-CV-1031, K.Mizra LLC versus Cisco Systems,

03:02  4    Incorporated.  Case called for a motions hearing.

03:02  5                    THE COURT:  Announcements from counsel?

03:02  6                    MR. SMITH:  Yes, Your Honor.  For the

03:02  7    plaintiff, Michael Smith, Rob Brunelli, Barr Starr,

03:02  8    Angela Bubis and Paul Cha, and Mr. Brunelli will be

03:02  9    presenting for us and we're ready to proceed.

03:02  10                   THE COURT:  And for defendant?

03:02  11                   MS. BRANNEN:  Good afternoon, Your Honor.

03:02  12   My name is Elizabeth Brannen from Stris & Maher.  I

03:02  13   believe Melissa Smith, our Texas counsel, and her

03:03  14   partner, Tom Gorham, I believe they are present and

03:03  15   if -- with the Court's permission, I will be arguing.

03:03  16   Several of my clients are also here to observe and some

03:03  17   of my colleagues.

03:03  18                   THE COURT:  Is there any way I can stop

03:03  19   you from arguing?

03:03  20                   (Laughter.)

03:03  21                   THE COURT:  I'm kidding.

03:03  22                   MS. BRANNEN:  Are you going to grant our

03:03  23   motion without an argument?

03:03  24                   THE COURT:  Well, let me just say I spent

03:03  25   a week in Del Rio, sentenced about 130 people, and

03:03  1    quite often I -- I said -- before their lawyers spoke,

03:03  2    I said, I'm about to give your client time served.  Is

03:03  3    there anything you'd like to say?  And fortunately they

03:03  4    all said no.

03:03  5                    Have I had you in my court before?

03:03  6                    MS. BRANNEN:  Yes, Your Honor.  Only

03:03  7    briefly, but it's been a privilege.

03:03  8                    THE COURT:  Well, welcome back.  I'm glad

03:03  9    your clients have taken the time to attend.  And this

03:03  10   is your motion so I will allow you to -- you're arguing

03:03  11   the motion?  Okay.

03:03  12                   MS. BRANNEN:  Yes, Your Honor.

03:03  13                   THE COURT:  I'm happy -- happy for you to

03:03  14   begin.

03:03  15                   MS. BRANNEN:  Thank you.

03:04  16                   Your Honor, there's one patent left in

03:04  17   this case, the '705 patent, and every asserted claim of

03:04  18   that patent requires a specific limitation called the

03:04  19   trusted platform module or TPM.  The key question

03:04  20   presented in Cisco's motion is whether the original

03:04  21   provisional application, and that was filed in 2004, or

03:04  22   the original utility application filed in 2005

03:04  23   disclosed that limitation.  And we believe we've shown

03:04  24   through our papers that on -- on a clear and convincing

03:04  25   basis that no reasonable jury could find that the

| 03:04 | 1 | original disclosure actually disclosed the TPM |

original disclosure actually disclosed the TPM
limitation.  The applicant added that limitation in
2009 to overcome an anticipation rejection and to
distinguish --

THE COURT:  So let me ask you
essentially -- and I look forward to this hearing.
Again, you know, when you -- occasionally I'm in the
press, and it's always clear why I like these cases and
it's because I actually find the lawyers to be
exceptional all the time, and also -- so when you say
that a jury wouldn't find, is it up to me to determine
that it's not in the application -- I get it.  The
provision.  I'm with you there, but is it up to me to
determine this or -- you mentioned the jury, and I
don't know why the jury would have a role in what
you're arguing, but if I -- but I ask you because, you
know, I'm learning this patent stuff as I go.  So, you
know, if I don't understand something, I'm happy for
you to explain it.

MS. BRANNEN:  Well, you certainly
understand it better than me, Your Honor, but that's
right.  We're here to argue that as a matter of law
there's no question of triable fact for a jury, and so
I suppose --

THE COURT:  I got it.  That -- I'm good.

6

| | | |
|---|---|---|
| 03:05 | 1 | I understand that. |
| 03:05 | 2 | MS. BRANNEN:  If we conclude they would |
| 03:06 | 3 | find it or could find it, then the motion -- then we |
| 03:06 | 4 | have to make our argument down the road, but we hope to |
| 03:06 | 5 | persuade you that the specification is clear under the |
| 03:06 | 6 | proper legal standard here.  The TPM limitation is just |
| 03:06 | 7 | not there.  It has to be there either expressly or |
| 03:06 | 8 | inherently.  It's concededly not there expressly, and |
| 03:06 | 9 | although they've introduced an expert declaration, the |
| 03:06 | 10 | argument and the evidence that K.Mizra is proffering |
| 03:06 | 11 | haven't tried to meet the standard they would actually |
| 03:06 | 12 | have to meet to create a triable issue of fact here |
| 03:06 | 13 | because they haven't even tried to show that the |
| 03:06 | 14 | limitation is necessarily present in the disclosure |
| 03:06 | 15 | that exists. |
| 03:06 | 16 | And so we submit that if you look at the |
| 03:06 | 17 | intrinsic evidence under the proper legal standard, |
| 03:06 | 18 | this is an open-and-shut case.  It's cut and dry.  And |
| 03:07 | 19 | here, just as in Power Oasis and Turbo Care and the |
| 03:07 | 20 | other cases we cite, the extrinsic evidence that |
| 03:07 | 21 | K.Mizra is offering through its expert simply cannot |
| 03:07 | 22 | overcome the fundamental deficiencies in the original |
| 03:07 | 23 | written description. |
| 03:07 | 24 | Their expert in K.Mizra addressed the |
| 03:07 | 25 | wrong question, and they contradict the Court's claim |

03:07  1    construction.  And that means their facts are legally

03:07  2    irrelevant and they can't create a triable issue.

03:07  3              So if -- if time permits, I guess I would

03:07  4    do four things today.  I would briefly recap the

03:07  5    relevant facts to make sure we're all on the same page

03:07  6    about the things that are conceded and the things that

03:07  7    are in question.  I would briefly speak to the legal

03:07  8    standard that applies because K.Mizra's entire

03:07  9    opposition is predicated on asking the Court to apply

03:07  10   the wrong one.

03:08  11             And then I would touch on why the right

03:08  12   legal standard, the intrinsic evidence, is clear the

03:08  13   TPM limitation is missing and why the extrinsic

03:08  14   evidence misses -- just misses the mark and can't

03:08  15   actually create a triable issue of fact.

03:08  16             So for the facts, we have two

03:08  17   applications that they're pointing to and the

03:08  18   disclosures are very similar.  Except for one example,

03:08  19   I think they're nearly identical.  There's a

03:08  20   provisional application in 2004.  Everybody agrees it

03:08  21   doesn't mention a TPM.  What it does mention is a

03:08  22   different limitation called a trusted computing base,

03:08  23   and it gives one example of the trusted computing base,

03:08  24   and that example is called Palladium, an example from

03:08  25   the Palladium security initiative.

03:08  1          Then in 2005 we have the original utility
03:09  2  application.  It's not disputed that that one too
03:09  3  doesn't mention the TPM limitation.  The 2005
03:09  4  disclosure similarly mentions trusted computing base
03:09  5  which is the different limitation that K.Mizra is
03:09  6  trying to use to now support adequate disclosure for
03:09  7  the TPM.
03:09  8          In the 2005 application, the applicant
03:09  9  gives two different examples of what might be a trusted
03:09  10  computing base.  The Palladium example's still there
03:09  11  and they add another -- which refers to various TCG
03:09  12  specifications such as the TCG Architecture Overview
03:09  13  published by the Trusted Computing Group.
03:09  14          And it's also conceded that the original
03:10  15  invention -- the claims in the original invention
03:10  16  claimed the trusted computing base.  The original
03:10  17  claims did not include the TPM limitation.  Nothing in
03:10  18  the 2004 or 2005 applications said anything about a
03:10  19  TPM.
03:10  20          Then in 2009, the examiner rejected the
03:10  21  pending claims over a reference called Lang, which
03:10  22  disclosed the trusted computing base the examiner
03:10  23  found, and the applicant amended the claims at that
03:10  24  time to specify that they required not just a trusted
03:10  25  computing base but a TPM associated with the trusted

03:10  1    computing base.

03:10  2                And so there's really no question of

03:10  3    explicit disclosure of the TPM limitation, and that's

03:11  4    of course the first way you can meet -- you can satisfy

03:11  5    written description.  K.Mizra is hanging its hat not on

03:11  6    the -- not on disclosure of the TPM limitation but on

03:11  7    disclosure of the different limitation trusted

03:11  8    computing base.  That doesn't work because they are

03:11  9    trying to elide two different claim limitations with

03:11  10   two different meanings.

03:11  11               So the -- the disclosure of a trusted

03:11  12   computing base, we say, absolutely can't suffice as a

03:11  13   matter of law to disclose the TPM.

03:11  14               Let me pause here and just note that the

03:11  15   Court has construed the term "TPM" to be a secure

03:11  16   cryptoprocessor that can store cryptographic keys and

03:11  17   that implements the trusted platform module

03:12  18   specification from the Trusted Computing Group.  And

03:12  19   that's a -- that construction is available at ECF

03:12  20   No. 46 at Page 1, and that specification, the TPM

03:12  21   specification, is a different specification of the

03:12  22   Trusted Computing Group than the Architecture Overview

03:12  23   specification that the 2005 utility application

03:12  24   mentioned as an example of a trusted computing base.

03:12  25               The parties had agreed to -- K.Mizra

| | | |
|---|---|---|
| 03:12 | 1 | proposed and the parties agreed to a very broad |
| 03:12 | 2 | definition of the trusted computing base.  That's any |
| 03:12 | 3 | hardware or software that has been designed to be part |
| 03:12 | 4 | of the mechanism that provides security to a computer |
| 03:12 | 5 | system.  And it's also conceded that the Palladium |
| 03:12 | 6 | trusted computing base doesn't have anything to do with |
| 03:12 | 7 | a TPM.  The -- so those are basically some of the facts |
| 03:13 | 8 | that I believe my colleague who will argue for K.Mizra |
| 03:13 | 9 | will not dispute. |
| 03:13 | 10 | Now, turning to the law.  There is no |
| 03:13 | 11 | Federal Circuit case law that says that you can be |
| 03:13 | 12 | anything other than an express or an inherent |
| 03:13 | 13 | disclosure and satisfy the written description |
| 03:13 | 14 | requirement of 112.  K.Mizra has its expert speak to a |
| 03:13 | 15 | theory called the default species theory, and that's |
| 03:13 | 16 | just not -- that's just not the right question. |
| 03:13 | 17 | And so I'm turning now to the second |
| 03:13 | 18 | topic I wanted to cover about, well, what really is the |
| 03:13 | 19 | law that applies here?  Your Honor knows it well, so |
| 03:13 | 20 | I'm not going to try to give you a patent law treatise, |
| 03:13 | 21 | but I will try to focus on where I think the parties |
| 03:13 | 22 | disagree. |
| 03:13 | 23 | In -- in our reply brief on the first -- |
| 03:14 | 24 | first page, we cite the Nuvo -- |
| 03:14 | 25 | THE COURT:  Can you give me just one |

| 03:14 | 1 | second?  I'll be right back. |
| 03:14 | 2 | MS. BRANNEN:  Oh, absolutely. |
| 03:14 | 3 | (Pause in proceedings.) |
| 03:15 | 4 | THE COURT:  Okay.  Thank you, ma'am. |
| 03:15 | 5 | You may continue. |
| 03:15 | 6 | MS. BRANNEN:  Thank you, Your Honor. |
| 03:15 | 7 | So here's where I think the parties |
| 03:15 | 8 | fundamentally differ on the law.  K.Mizra points to |
| 03:15 | 9 | the -- the famous and well-known part of the written |
| 03:15 | 10 | description test that says, well, it's very important |
| 03:15 | 11 | to reasonably convey to those skilled in the art that |
| 03:15 | 12 | the inventor had possession of the claimed subject |
| 03:15 | 13 | matter, but what they do is they overlook what that |
| 03:15 | 14 | really means in the governing case law.  You know, the |
| 03:15 | 15 | case they cite is the Vasudevan, but it's quoting the |
| 03:15 | 16 | Federal Circuit's en banc decision in Ariad.  Here's |
| 03:15 | 17 | what Ariad had to say about the possession test:  The |
| 03:16 | 18 | term "possession," however, has never been very |
| 03:16 | 19 | enlightening.  It implies that as long as one can |
| 03:16 | 20 | produce records documenting a written description of |
| 03:16 | 21 | the claimed invention, you could show possession, but |
| 03:16 | 22 | the hallmark of written description is disclosure. |
| 03:16 | 23 | So it's really not just did you possess |
| 03:16 | 24 | it?  It's possession as shown in the disclosure, and |
| 03:16 | 25 | it's very clear that every limitation has to be present |

03:16  1    in the original specification within its four corners

03:16  2    either expressly or inherently.  It's not just about

03:16  3    possession.  It's about did you tell the world what you

03:16  4    regarded as your invention?  What the invention was?

03:16  5              The Nuvo Pharmaceuticals case that we

03:16  6    cite, Novozymes, the Lockwood case, they all make this

03:16  7    clear.  And it's also the law that in a narrow set of

03:17  8    circumstances -- this is now Nuvo Pharms versus

03:17  9    Dr. Reddy -- in a narrow set of circumstances, you can

03:17  10   satisfy the written description requirement without an

03:17  11   explicit disclosure but only if the claimed features

03:17  12   are necessarily inherent in what is described.

03:17  13             And the Blazemark cases that K.Mizra has

03:17  14   pointed to are really no different.  They don't use the

03:17  15   standard and they don't apply here.  In the Blazemark

03:17  16   cases the Court is usually addressing a broad chemical

03:17  17   disclosure and -- kind of like a broad map.  If you

03:17  18   say, well, the map of what I disclosed is Yosemite

03:17  19   park.  You have to have indicated which path to take at

03:17  20   various forks.  You can't just have stated all of the

03:18  21   chemical compounds and not told -- pointed anyone to

03:18  22   which ones you actually regarded in which combinations

03:18  23   as your invention, but that doesn't change the basic

03:18  24   law that every limitation has to be there.

03:18  25             And so what that means is under the right

| 03:18 | 1 | legal standard, someone reading the 2004 provisional or |

03:18   1   legal standard, someone reading the 2004 provisional or

03:18   2   the 2005 original utility application would have to

03:18   3   have been able to read it and think, no.  That the

03:18   4   applicant regarded -- had invented something that

03:18   5   required a TPM, that had the TPM as a limitation.  And

03:18   6   that isn't a standard that K.Mizra has even tried to

03:18   7   meet.

03:18   8        And because the original disclosure that

03:18   9   they're resting on is a disclosure of a trusted

03:18   10   computing base with an example, namely Palladium, that

03:18   11   everyone agrees didn't require a TPM, the original

03:18   12   disclosure actually conveyed to those of skill in the

03:18   13   art the opposite of what they would have had to convey.

03:19   14        So I'll use an example here.  It's one

03:19   15   that I think is actually a little bit more favorable to

03:19   16   K.Mizra than what the evidence describes.  But imagine

03:19   17   that you had an original specification that said I have

03:19   18   a very tasty recipe.  It's an innovative recipe.  One

03:19   19   of the things you need is an aioli.  And as an example

03:19   20   of what I mean by aioli, you could use Vegenaise.

03:19   21   Something vegan, all animal products.

03:19   22        Now, everybody reading that who is

03:19   23   skilled in the art of cooking would know, okay, aioli

03:19   24   is usually garlic and oil.  One example is Vegenaise.

03:19   25   I got it.  If there were then an original utility

03:19  1    application that gave two examples of aioli.  Oh, one

03:19  2    could be Vegenaise and the other could be Kraft mayo.

03:20  3    Okay?  That disclosure would not support amending the

03:20  4    claims years later to say actually you have to use

03:20  5    cage-free eggs.  Yes, Kraft mayo says it uses cage-free

03:20  6    eggs.  Certified -- certified cage-free eggs that match

03:20  7    a certain industry certification, but that's really

03:20  8    what we have here at best for K.Mizra.  We have an

03:20  9    original disclosure of aioli here, original disclosure

03:20  10   of trusted computing base, an example that doesn't

03:20  11   include the feature they added years later, then an

03:20  12   amendment in the original utility to add something that

03:20  13   they now say had that feature and to try to make it

03:20  14   very specific and comport with an industry requirement.

03:20  15          The reason that does not work is because

03:20  16   you have to tell -- if it -- if your invention requires

03:20  17   cage-free eggs, the original disclosure has to say

03:21  18   that, and it doesn't matter if someone would have

03:21  19   looked at the original disclosure and concluded that

03:21  20   adding that feature would have been obvious.  Obvious

03:21  21   is not enough.  But that's really the only thing that

03:21  22   the expert has at best established here.

03:21  23          Now, in the surreply, K.Mizra asks the

03:21  24   Court to treat this case similarly to the Dropbox case,

03:21  25   and so I'll just say a word about why I think the

03:21 1   expert disclosure here is very different.  We almost

03:21 2   actually have the opposite situation here.

03:21 3            In that case there was a method -- there

03:21 4   was an apparatus claim that -- where the apparatus for

03:21 5   messaging had to do with three steps.  There was no

03:21 6   dispute that all three steps were done, but the

03:21 7   question was whether the original disclosure had

03:21 8   support for the limitation that the steps had to be

03:22 9   done on an external messaging node.  The party opposing

03:22 10  the motion had submitted an expert declaration

03:22 11  addressing a figure in the patent and some language in

03:22 12  the patent and explained why a person of skill in the

03:22 13  art would read them and find that external node

03:22 14  present.  And the moving party didn't address that, not

03:22 15  with argument, not with an opposing expert declaration,

03:22 16  just didn't address it at all.

03:22 17            Here we kind of had the opposite

03:22 18  situation where the expert has said a lot of things,

03:22 19  but we have addressed them and K.Mizra has not.  So the

03:22 20  problem with what the expert has said is that, first of

03:22 21  all, it speaks to the wrong legal standard.  It doesn't

03:22 22  try to explain that someone reading the original

03:22 23  specification would have known that the invention

03:23 24  required or had anything to do with a TPM.  Instead, it

03:23 25  addresses a legally irrelevant standard that cannot

| 03:23 | 1 | suffice to create a question of fact. |

03:23  1    suffice to create a question of fact.

03:23  2              And perhaps more importantly, it

03:23  3    contradicts the Court's claim construction.  The claim

03:23  4    construction in this case makes clear that trusted

03:23  5    computing base is much broader than TPM, and so they

03:23  6    can't meet the standard they would need to meet there.

03:23  7              K.Mizra just says nothing about the fact

03:23  8    that the expert declaration that they've submitted is

03:23  9    contradicting the Court's claim construction, but it

03:23 10    would not be admissible for a jury, and for that reason

03:23 11    it can't create a triable issue.

03:23 12              I will conclude by just noting that they

03:23 13    also criticize us for quoting -- pointing out in our --

03:23 14    in our reply brief that there's a 2019 version of the

03:24 15    TPM specification that makes crystal clear that the

03:24 16    trusted platform module, the TPM, is not the same thing

03:24 17    as the trusted computing base, but that's -- that's

03:24 18    fine.  The Court doesn't need to look at the 2019

03:24 19    version because we were just citing that to make clear

03:24 20    what the Court's claim construction already makes clear

03:24 21    and what the original specifications already made

03:24 22    clear, which is that a trusted computing base is much

03:24 23    broader, can be hardware or software, and it doesn't

03:24 24    have to comply with a particular specification of any

03:24 25    kind whereas the TPM is something different.

03:24  1          So in their surreply at Page 4, when they

03:24  2   say that, well, even if you consider that 2019

03:24  3   specification, the only thing that that proves is that

03:24  4   the expert declaration contradicts that specification.

03:24  5   That's really a concession that their expert

03:25  6   declaration is also at odds with the Court's claim

03:25  7   construction.  Because the only reason that we pointed

03:25  8   out that statement from the 2019 TPM specification is

03:25  9   because it's so clear that the TPM and trusted

03:25  10  computing base are different things.

03:25  11         And so, Your Honor, with that, I will

03:25  12  also just point out that the Turbo Care case, the Power

03:25  13  Oasis case, all these cases that we cite make clear

03:25  14  that you can't introduce an expert -- you can't use an

03:25  15  expert to contradict or fill the gaps of what is not

03:25  16  present in an original specification, and here the TPM

03:25  17  just isn't there.  It's not there expressly.  It's not

03:25  18  there inherently and, therefore, we would ask you to

03:25  19  find that as a matter of law it lacks adequate written

03:25  20  description support.

03:25  21         THE COURT:  Okay.  A response?  And let

03:25  22  me -- I have a couple things for -- in response I'd

03:25  23  like to hear first.  With what counsel just said, I

03:26  24  assume the defendant -- I'm sorry.  I assume the

03:26  25  plaintiff doesn't disagree with what counsel just said

```
03:26   1   which is that the expert can't fill in for what's
03:26   2   missing and that that's not part of your argument; is
03:26   3   that correct?
03:26   4              MR. BRUNELLI:  Correct.
03:26   5              THE COURT:  Okay.  Now, number two, and
03:26   6   I'm going to let you say whatever you care to say, but
03:26   7   as I was getting ready for the hearing -- give me one
03:26   8   second.
03:26   9              It seemed to me that from your
03:26  10   perspective, if there is a factual dispute of, quote:
03:26  11   Whether the disclosure of the application relied upon
03:26  12   reasonably conveyed -- whether it reasonably conveys to
03:26  13   those skilled in the art that the inventor had
03:26  14   possession of the claimed subject matter as of the
03:26  15   filing date -- it's not so easy for me to say -- as
03:26  16   needed under the written description requirement.
03:27  17              What is the question I would be asking
03:27  18   the jury?  How would you frame the jury question and
03:27  19   if -- if I think -- I'm not going to decide that that's
03:27  20   it today.  I'd just -- I'd like to hear how you'd do
03:27  21   it, and then hear what evidence you would plan on
03:27  22   putting on to -- that would get you to the jury for
03:27  23   them to rule on that issue.
03:27  24              MR. BRUNELLI:  Sure.  Focusing first on
03:27  25   the visual application that includes the phrase
```

03:27  1    "trusted computing base," and then the -- so if we look

03:27  2    at trusted computing base as a genus and then there are

03:27  3    a number of species below it, a particular species

03:27  4    that's identified in that provisional application is

03:27  5    the Palladium specification.  You then move to the

03:28  6    non-provisional application.  You have both -- you

03:28  7    continue to have the trusted computing base

03:28  8    phraseologies literally, textually disclosed.  You have

03:28  9    Palladium disclosed, and now you also have ECG

03:28  10   specification disclosed.

03:28  11           If we're constructing jury instructions

03:28  12   and -- the jury's going to have to be asked:  What is

03:28  13   the appropriate priority date for this application?

03:28  14   The provisional date or the non-provisional date or is

03:28  15   it something else?

03:28  16           For the provisional date we'd be pressing

03:28  17   to the jury the language from the actual application,

03:28  18   the file history of the application, and what do I mean

03:29  19   there?  File history makes clear that the inclusion of

03:29  20   the trusted platform module was -- species of the genus

03:29  21   of the trusted computing base was specifically

03:29  22   discussed with the examiner, and the examiner went back

03:29  23   and forth --

03:29  24           THE COURT:  So let me ask you this

03:29  25   because I pretend I know what I'm -- we're doing with

03:29  1   patent law, but it -- when you say it specifically

03:29  2   discussed, is there something in the notes, in the

03:29  3   exchange, between the examiner and the counsel that was

03:29  4   dealing it, and assuming there was, I think that

03:29  5   counts, but -- you can correct me if I'm wrong and

03:29  6   opposing counsel can correct me if I'm wrong because I

03:29  7   was not a patent examiner or I didn't do patent

03:29  8   prosecution, but it seems to me looking at things from

03:29  9   your perspective that that would be intrinsic evidence

03:29  10  that the expert could testify about at trial with

03:29  11  respect to supporting your position.

03:30  12          Do I -- am I following your point?

03:30  13          MR. BRUNELLI:  You are, Your Honor.  And

03:30  14  an additional point to that is the examiner didn't

03:30  15  raise this written description issue, and if the

03:30  16  examiner thought there was a written description

03:30  17  problem, since the examiner is a person skilled in the

03:30  18  art, one would have expected they would have brought it

03:30  19  up at that point in time.  The fact that it wasn't

03:30  20  brought up then seems to be independent evidence that

03:30  21  there is no issue there.

03:30  22          Then the third piece that we would

03:30  23  present to the jury would be the expert testimony, and

03:30  24  the expert specifically does talk about all these

03:30  25  issues.  So typically the expert in their declaration

| | |
|---|---|
| 03:30 | 1 |
| 03:30 | 2 |
| 03:30 | 3 |
| 03:30 | 4 |
| 03:30 | 5 |
| 03:31 | 6 |
| 03:31 | 7 |
| 03:31 | 8 |
| 03:31 | 9 |
| 03:31 | 10 |
| 03:31 | 11 |
| 03:31 | 12 |
| 03:31 | 13 |
| 03:31 | 14 |
| 03:31 | 15 |
| 03:31 | 16 |
| 03:31 | 17 |
| 03:31 | 18 |
| 03:31 | 19 |
| 03:32 | 20 |
| 03:32 | 21 |
| 03:32 | 22 |
| 03:32 | 23 |
| 03:32 | 24 |
| 03:32 | 25 |

includes in Paragraph 29 of your declaration the actual constructions of this Court, and then goes on to discuss it and apply them.

The expert also takes quite a bit of time to describe what's in the prior art.  Prior art being prior to 2004.  And what do the people working in this field prior to 2004 understand a trusted computing base is?  How do they use it?  Why do they use it?

And he explains how that prior art teaches to the skilled artisan what the various species of a trusted computing base could be.

One of them --

THE COURT:  And is -- and is the point there that if -- let's assume -- I know you don't, but let's assume for a second the defendant's correct with their position about what's lacking that it would be something that was well enough known in that time -- at that time in the art such that it straps back to your -- maybe a point you were making earlier where both the patent examiner who's deciding whether or not to allow it, it can raise the issue or the person who's prosecuting the patent they may believe that it's something that is well enough known at the time of the art -- one skilled in the art, that they wouldn't need to include what the defendant argues they needed to

1   include.

03:32   2                   Am I following that correctly?

03:32   3                   MR. BRUNELLI:  Yes, Your Honor.

4                   THE COURT:  Okay.  Thank you.

03:32   5                   MR. BRUNELLI:  Necessarily present.

03:32   6                   THE COURT:  Okay.

03:32   7                   MR. BRUNELLI:  At the time trusted

03:32   8   computing base -- what was being used was TPMs, and

03:32   9   that was the -- the generally used way -- the generally

03:32   10  used system to establish the trusted computing base.

03:32   11  Palladium was the new -- was the new kid on the block,

03:32   12  and as described in the expert's declaration and in the

03:32   13  response papers, that was the reason that was

03:32   14  specifically called out in the provisional application.

03:33   15  The inventors who were deposed also testified to that.

03:33   16                  So that would be yet another, a third or

03:33   17  a fourth piece of evidence that would be presented to

03:33   18  the jury on these issues.

03:33   19                  When you move up then to the

03:33   20  non-provisional application, we have all that same

03:33   21  evidence but then we would have the additional evidence

03:33   22  of the TCG specification.  And if we were to look at

03:33   23  the declaration of the expert -- and by the way, the

03:33   24  only expert that has submitted a declaration on these

03:33   25  issues at this point, Your Honor.

03:33 1             If we look at Paragraph 53 through 57 of

03:33 2    that declaration, we see a number of things, one of

03:33 3    which Paragraph 53 is the Architecture Overview for

03:33 4    what the TCG Architecture Group was doing in the 2004

03:34 5    time period, and it specifically identifies the trusted

03:34 6    module right there.  So that would be additional

03:34 7    evidence.

03:34 8             The final evidence would be the prior art

03:34 9    that the expert has described in his declaration that

03:34 10   we would have that expert explain to the jury.  So

03:34 11   those are the six different types of evidence that we

03:34 12   expect would be placed before the jury to rebut the

03:34 13   argument of the defendant's being presented here.

03:34 14            THE COURT:  And I think you were done,

03:34 15   but I'm not sure.

03:34 16            MR. BRUNELLI:  The only other point is

03:34 17   that I would emphasize is written description is in

03:34 18   fact a question of fact.  It goes to the jury.  In this

03:34 19   particular matter there was a new piece of case law

03:35 20   submitted by Cisco just in advance of this hearing.

03:35 21   And in that case -- that's the Regents of the

03:35 22   University of Minnesota.  This is Gilead Sciences case.

03:35 23   That was a decision from the Patent Trial and Appeal

03:35 24   Board, but it was after trial.  So that wasn't a case

03:35 25   where it was decided on summary judgment.  Those issues

03:35  1    were allowed to go through the hearing process, and the

03:35  2    factfinder, they are the board, ultimately made a

03:35  3    decision.  That's what should happen here.

03:35  4              It's -- this is a question for the jury.

03:35  5    There is substantial material evidence presented.  I

03:35  6    guess that wasn't my final point.  My final point is,

03:35  7    I'm not aware of a single case --

03:35  8              THE COURT:  I also learned not to ask it

03:35  9    that way anymore.

03:35  10             I'm kidding.

03:35  11             (Laughter.)

03:35  12             MR. BRUNELLI:  My final point, I'm not

03:35  13    aware of a single case that is elevating form over

03:36  14    substance on magic words where it's -- the expert has

03:36  15    to say in his declaration it's inherently disclosed or

03:36  16    it's necessarily present.  What the expert has to do is

03:36  17    provide analysis and context for why a jury would find

03:36  18    it is necessarily present or inherently disclosed.  And

03:36  19    the expert in this case, again, the only expert being

03:36  20    the one presented by K.Mizra, has done that and more.

03:36  21             Now I believe I'm done.

03:36  22             THE COURT:  Okay.  Rebuttal?

03:36  23             MS. BRANNEN:  Thank you, Your Honor.

03:36  24             I will briefly address the prosecution

03:36  25    history point and then the expert analysis point under

```
03:36    1    the law.  So it's not the case -- it is the case that
03:36    2    whether the written description is adequate is a
03:37    3    question of fact, but Power Oasis and the other cases
03:37    4    we cite make clear that it's a question that is still
03:37    5    amenable to summary judgment when there's no disputed
03:37    6    issue of fact.  And that wouldn't be the case if you
03:37    7    could always overcome summary judgment by saying, well,
03:37    8    the examiner let this issue so the examiner didn't
03:37    9    think there was a written description problem.
03:37   10             So that argument can't actually be one
03:37   11    piece of evidence especially not here, not when they're
03:37   12    relying on the original applications disclosure of one
03:37   13    limitation, trusted computing base, yet they had to add
03:37   14    the limitation in question, the TPM, to overcome an
03:37   15    anticipation rejection because the examiner said, well,
03:37   16    I'm looking at art that has a trusted computer base --
03:37   17    trusted computing base.  The prosecution history here
03:37   18    is actually an express disavowal, an express rejection,
03:38   19    of the argument that they -- the about-face they now
03:38   20    have to do to say that those two things are the same
03:38   21    thing or close enough.
03:38   22             And the -- the next point I'd like to
03:38   23    make is a reference to the cases Your Honor mentioned
03:38   24    where you said, well, is this a situation where some --
03:38   25    you know, something was obvious enough, well-known
```

03:38  1    enough, that the written description didn't need to say

03:38  2    it?  Those I think are enablement cases.  Those are not

03:38  3    written description cases.  The most that K.Mizra's

03:38  4    evidence establishes here is that somebody of skill in

03:38  5    the art reading the 2004 provisional or the 2005

03:38  6    original utility application that they would have

03:38  7    known, well, one way we could do a trusted computing

03:39  8    base would be to add a TPM along with it, but the law

03:39  9    on written description is very clear.  And I'd ask the

03:39  10   Court to look at Lockwood, for example, which we cite

03:39  11   in our reply, which is ECF No. 82 at Page 2.

03:39  12            All the limitations must appear in the

03:39  13   specification, and similarly Power Oasis and other

03:39  14   cases make clear obvious is not enough.  It's not

03:39  15   enough to look at a disclosure and say, well, I would

03:39  16   have known that one way I could have done it would be

03:39  17   to add an additional element if that element is

03:39  18   actually something your invention required.  If you had

03:39  19   to have that element, then the original specification

03:39  20   has to make clear that that element is part of the

03:39  21   invention either by mentioning it expressly or by

03:40  22   disclosing it in such a way that you would know not

03:40  23   just that you could use it that way but that it's

03:40  24   necessarily present.  So we are not saying that the

03:40  25   expert should be rejected because he didn't use the

03:40   1   exact words "necessarily present."  If he had said, I

03:40   2   read this and I can tell you had to have it, if he had

03:40   3   used had to have it, must have had it, definitely would

03:40   4   have been there, then that might have created a triable

03:40   5   issue of fact under the actual legal standard here

03:40   6   which is that the limitation has to be explicitly

03:40   7   mentioned or inherent, meaning you read it and you know

03:40   8   it's part of the invention.  You know it's necessarily

03:40   9   there.

03:40   10           What we are saying is that the intrinsic

03:40   11  evidence here is crystal clear that the original

03:40   12  specification, not the provisional in 2004, not the

03:40   13  utility in 2005, those did not describe a TPM in any

03:41   14  way, and they certainly didn't tell anybody of skill in

03:41   15  the art or anyone that a TPM was a required feature,

03:41   16  was a limitation of the invention.  And that's the

03:41   17  standard they'd have to meet and it's hopeless.

03:41   18           And so we would ask that instead of

03:41   19  presenting this -- letting this go forward for a jury

03:41   20  to just be confused by an expert who's addressing the

03:41   21  wrong legal standard and who's contradicting the

03:41   22  Court's claim construction, a point I might add that

03:41   23  they've now had a third chance to address and haven't

03:41   24  denied or clarified.

03:41   25           You know, this is not a case for the

| | | |
|---|---|---|
| 03:41 | 1 | jury.  This is a case where it's just as clear-cut as |
| 03:41 | 2 | if they were saying, oh, I know you construed TPM to |
| 03:41 | 3 | require a secure cryptoprocessor, but I want my expert |
| 03:41 | 4 | to speak to why this other thing is close enough.  No. |
| 03:41 | 5 | They should not be allowed to contradict the Court's |
| 03:41 | 6 | claim construction.  There is no TPM here, not |
| 03:42 | 7 | expressly, not inherently.  They have not even tried to |
| 03:42 | 8 | meet the standard they would need to meet to get this |
| 03:42 | 9 | question to a jury, and so we would respectfully ask |
| 03:42 | 10 | that the Court find the disclosure inadequate, not in |
| 03:42 | 11 | 2004, not in 2005, inadequate as a matter of law. |
| 03:42 | 12 | MR. BRUNELLI:  Quick rebuttal, |
| 03:42 | 13 | Your Honor? |
| 03:42 | 14 | THE COURT:  Of course. |
| 03:42 | 15 | MR. BRUNELLI:  The expert's not |
| 03:42 | 16 | misconstruing the claim construction.  He's applying |
| 03:42 | 17 | the claim construction.  If I didn't make that clear in |
| 03:42 | 18 | my opening remarks, I'm making it clear now. |
| 03:42 | 19 | Second, Paragraph 33 of the expert's |
| 03:42 | 20 | declaration reads, and I quote:  For the reasons |
| 03:42 | 21 | described below, a POSITA at the time of filing would |
| 03:42 | 22 | have understood that a TPM would form a, "root of |
| 03:42 | 23 | trust," in the area of, "trusted computing," generally. |
| 03:43 | 24 | Thus, a POSITA would have understood that a, "trusted |
| 03:43 | 25 | computing base," would by default be associated with a |

```
03:43   1    TPM in an open-ended way in order to provide security
03:43   2    for computing systems.
03:43   3                If they're looking for that type of
03:43   4    language, it is in there.  I'm not sure what more is
03:43   5    needed.
03:43   6                And then finally, Power Oasis came up
03:43   7    several times.  An easily distinguishable case,
03:43   8    Your Honor.  In that case, the District of
03:43   9    New Hampshire was construing a couple of patents.  What
03:43   10   you had going on here was you had a standalone system
03:43   11   and then you had personal laptops.  And the question
03:43   12   was:  Did the personal -- was some of the information
03:43   13   that was disclosed in the original patent application
03:44   14   in connection with a standalone vending machine
03:44   15   properly applicable?  In that case you had the original
03:44   16   non-provisional -- or provisional non-provisional, but
03:44   17   then you had a continuation in part application.  And
03:44   18   in the continuation in part application, the applicant
03:44   19   actually added specific language about computers to the
03:44   20   customer's laptop, and it was that actual language that
03:44   21   was then used by the District Court in their claim
03:44   22   construction.  So it's the new language that's added.
03:44   23                And it was based on that new language
03:44   24   that the Court ultimately said, well, the applicant has
03:44   25   basically admitted by having to add that language to
```

03:44  1    the CIP application that it wasn't there in the

03:45  2    original applications.  And that was a case where they

03:45  3    were fighting over priority date, much of like what's

03:45  4    going on here.  We don't have a CIP application here.

03:45  5    Very distinguishable.  That's why the Power Oasis case

03:45  6    could have been decided the way it was.  Here we don't

03:45  7    have any of that going.

03:45  8              And with that, thank you, Your Honor.

03:45  9              THE COURT:  Anything else on behalf of

03:45  10   Cisco?

03:45  11             MS. BRANNEN:  Thank you, Your Honor.

03:45  12   Yes, just briefly.

03:45  13             The continuation in part posture is not

03:45  14   what matters in Power Oasis.  What matters is in

03:45  15   Power Oasis the disclosure in question was about an

03:45  16   interface on a vending machine, and there was no

03:45  17   question that the specification disclosed user

03:45  18   interfaces on a vending machine.  And the patentee was

03:45  19   trying to make the argument that Your Honor alluded to

03:46  20   earlier while -- they said everybody would have

03:46  21   known -- those of skill in the art would have known

03:46  22   that you could have had the interface be remote, and

03:46  23   the Federal Circuit said not enough.

03:46  24             The disclosure of interfaces on the

03:46  25   vending machine was not enough to support a later added

03:46  1    claim that tried to claim having a remote interface

03:46  2    even though that functionality was well-known.  That is

03:46  3    the point.  At best all they are trying to prove is

03:46  4    that a default way of doing it might have been to

03:46  5    include a TPM, but that's not what they have to prove

03:46  6    to you.  And, in fact, saying that something is a

03:46  7    default way of doing things is an acknowledgement that

03:46  8    it's not the only way of doing things.  That it's not

03:46  9    an element or a required limitation of what you

03:46  10   invented.

03:46  11            And so there's no Federal Circuit case

03:46  12   out there, no Western District of Texas case, no case

03:46  13   that I can find anywhere that finds adequate written

03:47  14   description on the basis of what their expert is saying

03:47  15   which is just, hey, those of skill in the art who read

03:47  16   about a trusted computing base would have known that a

03:47  17   default way to do that would be to add an associated

03:47  18   TPM.  It was newly added in 2009, and nothing in 2004

03:47  19   or 2005 told those of skill in the art that you had to

03:47  20   have one, and that's the fatal problem here.

03:47  21            THE COURT:  Anything else from plaintiff?

03:47  22            MR. BRUNELLI:  No, sir.

03:47  23            THE COURT:  Okay.  I'll be back in a few

03:47  24   seconds.

03:47  25            (Pause in proceedings.)

| | | |
|---|---|---|
| 03:49 | 1 | THE COURT:  Let me start by saying a |
| 03:49 | 2 | couple of things.  One, as usual, I thought the lawyers |
| 03:49 | 3 | did a great job.  Beth tells me that she thought the |
| 03:49 | 4 | briefs were very good.  Sometimes they are, sometimes |
| 03:49 | 5 | they're not, but apparently in this case they were very |
| 03:49 | 6 | good.  And also I thought the arguments today were very |
| 03:49 | 7 | helpful and very informative. |
| 03:49 | 8 | And also I'll tell you that when Beth and |
| 03:49 | 9 | I were talking about this, she was going through it, I |
| 03:49 | 10 | think we both went back and forth a little bit and |
| 03:49 | 11 | thought it was a close call, but I'm going to deny the |
| 03:49 | 12 | motion.  I will -- if we go to trial, and I assume we |
| 03:49 | 13 | will, I'll be listening carefully to the evidence as |
| 03:49 | 14 | put on and the motion -- the denial of the motion for |
| 03:49 | 15 | summary judgment won't in any way prohibit the |
| 03:50 | 16 | defendant from arguing at the end of the plaintiff's |
| 03:50 | 17 | case.  If they want to renew this motion and I have a |
| 03:50 | 18 | better context of what actually has been introduced to |
| 03:50 | 19 | the jury, I'll be happy to do it then. |
| 03:50 | 20 | Also, now that you have given me a |
| 03:50 | 21 | heads-up on this, when we have the pretrial conference, |
| 03:50 | 22 | if there are issues we need to go through with this |
| 03:50 | 23 | with respect to either Daubert or -- gosh, I guess |
| 03:50 | 24 | just, you know, what might or might not be admissible |
| 03:50 | 25 | during trial, I've got -- hopefully I'll remember |

| 03:50 | 1 | enough of this that if you bring it up with me, I can |
| 03:50 | 2 | deal with it relatively -- with some relative awareness |
| 03:50 | 3 | of the issues involved. |
| 03:50 | 4 | I think that's the only thing we had |
| 03:50 | 5 | today, but I'll start with whoever -- I won't start |
| 03:50 | 6 | with anyone.  Whoever wants to jump in and tell me |
| 03:50 | 7 | if -- if for plaintiff. |
| 03:50 | 8 | Is there anything else for defendant? |
| 03:51 | 9 | MR. BRUNELLI:  Nothing for plaintiff |
| 03:51 | 10 | unless the Court wants to talk about something further. |
| 03:51 | 11 | THE COURT:  You know, I worked harder |
| 03:51 | 12 | this week in Del Rio than I've worked in |
| 03:51 | 13 | four-and-a-half years.  130 sentencings and a criminal |
| 03:51 | 14 | trial, you know.  And what's amazing to me is that our |
| 03:51 | 15 | chief judge who is in Del Rio has been doing that every |
| 03:51 | 16 | week for 20 years.  So I don't know how that's |
| 03:51 | 17 | possible, but one week was enough for me and -- but I |
| 03:51 | 18 | got to have some great hearings this morning, and I'm |
| 03:51 | 19 | glad I'm getting to finish the week with good lawyers |
| 03:51 | 20 | and these arguments.  So I don't need to hear anything |
| 03:51 | 21 | else. |
| 03:51 | 22 | Y'all have a good weekend, and I look |
| 03:51 | 23 | forward to seeing you in trial down the road.  Take |
| 03:51 | 24 | care. |
| 03:51 | 25 | (Hearing adjourned.) |

1   UNITED STATES DISTRICT COURT  )

2   WESTERN DISTRICT OF TEXAS     )

3

4

5           I, Kristie M. Davis, Official Court

6   Reporter for the United States District Court, Western

7   District of Texas, do certify that the foregoing is a

8   correct transcript from the record of proceedings in

9   the above-entitled matter.

10          I certify that the transcript fees and

11  format comply with those prescribed by the Court and

12  Judicial Conference of the United States.

13          Certified to by me this 2nd day of April

14  2023.

15

16                       */s/ Kristie M. Davis*
                         KRISTIE M. DAVIS

17                       Official Court Reporter
                         800 Franklin Avenue

18                       Waco, Texas 76701
                         (254) 340-6114

19                       kmdaviscsr@yahoo.com

20

21

22

23

24

25

03:51