# PUBLIC VERSION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| K.MIZRA LLC, | Civil Action No.: 6:20-cv-01031-ADA |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| CISCO SYSTEMS, INC., | ███████████████████ |
| Defendant. | |

## PLAINTIFF K.MIZRA LLC'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT CISCO SYSTEMS, INC.'S DEFENSES BASED ON PRIOR ART AND PATENT ELIGIBILITY

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS .................................................................................... 2

    A.     Cisco's Prior Art Defenses.......................................................................... 2

        1.     Cisco's Asserted Prior Art and Documentation............................... 2

        2.     The NAC White Paper and INAC|POCD are Printed Publications........... 4

        3.     NAC is Coextensive with Gleichauf.................................................... 5

        4.     Cisco's Unsuccessful IPR ................................................................... 6

        5.     Summary of Cisco's Prior Art Defenses.............................................. 9

    B.     Cisco's Section 101 Defense .................................................................... 10

III.    LEGAL STANDARD FOR SUMMARY JUDGMENT..................................... 11

IV.     ARGUMENT ....................................................................................................... 12

    A.     Cisco Cannot Prove Invalidity Based on Prior Art................................... 12

        1.     Cisco is Estopped from Relying on its Prior Art Combinations
             Because it Could Have Raised Its NAC Arguments at the PTAB........... 12

            a.     IPR estoppel applies to patents, printed publications,
               and products described in printed publications............................ 12

            b.     All relevant aspects of NAC are disclosed in Cisco's
               own printed publications.............................................................. 15

            c.     All relevant aspects of NAC were previously presented
               to the PTAB via Gleichauf.......................................................... 18

        2.     Cisco Cannot Prove Invalidity by Clear and Convincing Evidence ......... 18

    B.     Cisco Cannot Prove Patent Ineligibility.................................................. 19

V.      CONCLUSION.................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acceleration Bay, LLC v. Activision Blizzard Inc.*,
    908 F.3d 765 (Fed. Cir. 2018).................................................. 16

*Actifio, Inc. v. Delphix Corp.*,
    No. IPR2015-00052,
    2016 WL 1393513 (P.T.A.B. Mar. 31, 2016)................................. 17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)................................................ 19, 20, 21, 22

*Altamont Software, Inc. v. Sorna Corp.*,
    No. IPR2019-00218,
    2020 WL 2486722 (P.T.A.B. May 13, 2020) ................................ 16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................. 11

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
    216 F.3d 1042 (Fed. Cir. 2000)..................................... 22

*BASCOM Glob. Internet Servs., Inc. v. AT & T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)..................................... 21

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)..................................... 20

*Biscotti Inc. v. Microsoft Corp.*,
    No. 2:13-CV-01015-JRG-RSP,
    2017 WL 2526231 (E.D. Tex. May 11, 2017)........................... 13

*Boston Scientific Corp. v. Cook Group Inc.*,
    No. 1:17-cv-03448-JRS-MJD,
    2023 WL 1452172 (S.D. Ill. Jan. 31, 2023)....................... 16, 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................. 11

*Cisco Sys., Inc. v. K.Mizra LLC*,
    No. IPR2021-00593,
    2022 WL 4346104 (P.T.A.B. Sept. 19, 2022) ......................... 7

*CliniComp Int'l, Inc. v. Athenahealth, Inc.*,
    No. A-18-CV-00425-LY,
    2020 WL 7011768 (W.D. Tex. Oct. 28, 2020) .................. 14, 15, 17

*Duffy v. Leading Edge Prods.*,
    44 F.3d 308 (5th Cir. 1995) ....................................... 12

*DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*,
    No. CV H-20-2123,
    2022 WL 4350264 (S.D. Tex. Sept. 19, 2022) ....................... 19

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
   365 F.3d 1054 (Fed. Cir. 2004) .......................................................................... 19

*GREE, Inc. v. Supercell Oy*,
   No. 2:19-CV-00071-JRG-RSP,
   2019 WL 5677511 (E.D. Tex. Oct. 30, 2019) ...................................................... 13

*Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*,
   669 F.2d 1026 (5th Cir. 1982) ............................................................................ 12

*In re Klopfenstein*,
   380 F.3d 1345 (Fed. Cir. 2004) .......................................................................... 16

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.*,
   No. 2:17-CV-0661-JRG-RSP,
   2019 WL 7580245 (E.D. Tex. May 2, 2019) ........................................................ 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................................... 11, 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ............................................................................................... 20

*Mobile Equity Corp. v. Walmart Inc.*,
   No. 2:21-cv-00126-JRG-RSP,
   2022 WL 4587492 (E.D. Tex. Sept. 27, 2022) ..................................................... 20

*Mobile Equity Corp. v. Walmart Inc.*,
   No. 2:21-cv-00126-JRG-RSP,
   2022 WL 4587565 (E.D. Tex. Sept. 8, 2022) ....................................................... 20

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
   404 F. Supp. 3d 1021 (E.D. Tex. 2019) ............................................................... 21

*Procter & Gamble Co. v. Team Techs., Inc.*,
   Case No. 1:12-cv-552,
   2014 WL 12656554 (S.D. Ohio July 3, 2014) ...................................................... 19

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
   929 F.3d 1363 (Fed. Cir. 2019) .......................................................................... 16

*Sciele Pharma Inc. v. Lupin Ltd.*,
   684 F.3d 1253 (Fed. Cir. 2012) .......................................................................... 19

*Scott v. Harris*,
   550 U.S. 372 (2007) ............................................................................................ 12

*Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*,
   No. W-19-CV-00257-ADA,
   2020 WL 278481 (W.D. Tex. Jan. 10, 2020) ....................................................... 20

*Tolan v. Cotton*,
   572 U.S. 650 (2014) ............................................................................................ 11

*Wasica Finance GmbH v. Schrader Int'l, Inc.*,
   432 F. Supp. 3d 448 (D. Del. 2020) .......................................................... 14, 15, 17

**Statutes**

35 U.S.C. § 311................................................................................................................ 13

35 U.S.C. § 315...................................................................................................... 12, 14, 17

**Rules**

Fed. R. Civ. P. 56...................................................................................................... 11, 12

## I.  <u>INTRODUCTION</u>

Pursuant to Fed. R. Civ. P. 56, Plaintiff K.Mizra LLC ("K.Mizra") moves for summary judgment on Defendant Cisco Systems, Inc.'s ("Cisco") defenses of anticipation and obviousness ("prior art defenses") of asserted claims in U.S. Patent No. 8,234,705 ("the '705 Patent"). Cisco's prior art defenses rely entirely on prior art that either was presented or reasonably could have been presented to the U.S. Patent & Trademark Office Patent Trial & Appeals Board ("PTAB") in Cisco's unsuccessful *inter partes* review ("IPR") proceeding against the '705 Patent. Under binding statutory law, Cisco is estopped from relying on any such art in any district court proceeding to challenge validity of the '705 Patent. Because all the prior art defenses raised in Cisco's expert report are barred by estoppel, Cisco cannot prove anticipation or obvious as a matter of law. Summary judgement on Cisco's prior art defenses is thus warranted.

Separately, the Court should grant summary judgment on Cisco's prior art defenses because they are no more substantive than the theories the PTAB rejected in the IPR under a lower burden of proof. The only difference between Cisco's prior art defenses in this case and the grounds for its failed IPR is the addition of a prior art system that was not formally raised in the IPR. However, that prior art system is fully disclosed in a Cisco patent that the PTAB did consider and rejected in holding that all challenged claims of the '705 Patent are valid. Cisco cannot prove by clear and convincing evidence a defense they could not prove by a preponderance of the evidence, again meaning summary judgement is appropriate.

The Court should also enter summary judgment on Cisco's defense of patent ineligibility under 35 U.S.C. § 101 ("Section 101"). The entirety of Cisco's evidence on this point consists of a few paragraphs of cursory statements by its expert, and such evidence fails as a matter of law to prove by clear and convincing evidence invalidity under Section 101.

## II.   STATEMENT OF FACTS

### A.   Cisco's Prior Art Defenses

#### 1.   Cisco's Asserted Prior Art and Documentation

K.Mizra asserts that Cisco infringes and has infringed claims 1, 9, 12, 16 and 19 of the '705 Patent. Cisco served "Preliminary Invalidity Contentions" on April 2, 2021 identifying "Cisco's Network Admission Control product, released June 21, 2004 and/or (alone or together) Cisco Network Admission Control White Paper © 1992-2004 ("NAC"), alone or in combination with Gleichauf and Ovadia" as a prior art basis for invalidity. (Ex. A at 4.) Cisco's Preliminary Invalidity Contentions included a claim chart purporting to set forth "specific examples of features of the Cisco Network Admission Control product, released June 21, 2004 ("NAC"), that anticipate the elements of asserted Claims 1-3, 5-7, 9-13, and 15-19" of the '705 Patent. (Ex. B at 2.) No assertion of invalidity based on obviousness was there presented, and the only documentation Cisco cited for NAC in that claim chart was the NAC White Paper. (*Id.*) Twenty days later, Cisco served a "Revised" Exhibit A-4 adding citations to INAC|POCD. (Ex. C.) Cisco's email stated that INAC|POCD was "published no later than August 9, 2004," thus admitting it too was a printed publication. (Ex. D at 1.) Cisco did not during the fact discovery period serve invalidity contentions citing source code to support its theory that NAC anticipates any claim of the '705 Patent or that the claims were rendered obvious by some combination of these references.

Cisco then served the Opening Expert Report of Paul Clark, setting forth Cisco's invalidity theories to be presented at trial. (Ex. E.) Dr. Clark's report alleges that the asserted claims of the '705 Patent are invalid on the following prior-art-based grounds:

- Cisco's Network Admission Control product ("NAC");

- NAC alone or in combination with U.S. Patent No. 9,436,820 ("Gleichauf")[1]; and

- NAC alone or in combination with Gleichauf and/or U.S. Patent 7,533,407 ("Lewis") and/or U.S. Patent No. 7,747,862 ("Ovadia").

(*Id.* at 6.)

The documentation for NAC relied upon in Dr. Clark's report consists solely of "references to source code . . ., product literature titled 'Cisco Network Admission Control White Paper © 1992-2004' ('NAC [White Paper]'), . . . and 'Implementing Network Admission Control | Phase One Configuration and Deployment,' ('INAC|POCD')." (Ex. I at 3.) Dr. Clark cites Cisco's source code only for two claim elements (element 1[d] and element 1[e]). (*Id.* at 17, 21.) For each of these elements, Cisco's source code citations consist entirely of eight lines of text setting forth not any actual source code, but rather identifications of specific source code files. Dr. Clark provides no narrative description of the referenced source code/files or any explanation as to how the referenced source code/files is relevant to the corresponding claim elements. In deposition, Dr. Clark admitted that the source code citations ███████████████████████████ ██████ (Ex. J. at 85:8-12.[2]) When asked why he included the source code citations, Dr. Clark said that "it provided additional evidence of ████████████████████ specifically ████ ████████████████████████ (*Id.* at 86:3-10.) Critically, Dr. Clark admitted that this specific information is also described in Cisco's written publications (*Id.* at 86:11-17), such as the

---

[1] Following service of expert reports and after Dr. Clark's deposition, Cisco informed K.Mizra that it was withdrawing the Gleichauf reference. But whether Gleichauf is asserted in this action has no bearing on the relief requested herein.

[2] Citations to the Rough Transcript of Dr. Clark's deposition reference internal pagination.

NAC White Paper and INAC|POCD that Dr. Clark relies upon to also show these elements. (*Id.* at 14-18.)

### 2.    The NAC White Paper and INAC|POCD are Printed Publications

Cisco identified the NAC White Paper on a list of "Prior Art Patents and Printed Publications" in its Preliminary Invalidity Contentions. (Ex. A at 9.) The NAC White Paper is thus a "printed publication" by Cisco's own admission.

Cisco provided no information concerning INAC|POCD in discovery, nor does Dr. Clark provide any context for what the INAC|POCD is or purports to be. However, Cisco produced INAC|POCD as a public document (*i.e.*, without a confidentiality designation), and described it as having been "published" as noted above. The "Purpose" of the document is described as follows:

> This document provides guidance for implementing Network Admission Control (NAC), an industry-wide collaboration sponsored by Cisco Systems. It describes deployment considerations and configuration procedures for Cisco IOS software devices acting as Network Access Devices (NADs). It provides installation guidelines for the Cisco Trust Agent (CTA) on Microsoft Windows client machines. It also provides configuration instructions for Cisco Secure ACS, including configuration with anti-virus software products.

(Ex. K at iii.) The "Intended Audience" of the document is described as follows:

> The audience for this document consists of system engineers and network administrators responsible for the implementation of NAC. This document assumes you are familiar with Microsoft Windows operating systems and client machines and with the configuration and operation of Cisco Secure Cisco Secure ACS. It also assumes you know how to configure Cisco IOS devices, and are familiar with certificate authorities and the trust models provided by digital certificates.

(*Id.*) In other words, INAC|POCD is a manual for the installation and use of NAC, and its intended audience is system engineers and network administrators at companies using NAC.

### 3.      NAC is Coextensive with Gleichauf

According to Cisco, "Gleichauf is a Cisco patent that issued from the work that led to the NAC product." (Ex. B at 3.) Dany Rochefort (Cisco's representative, employee, and witness) testified that ███████████████████████████████████████████ ███ For example, Mr. Rochefort referred to Gleichauf as ████████████ (Ex. L at 66:4-67:14.) The relationship and correlation between Gleichauf and NAC is confirmed in the specification of Gleichauf itself, which states:

> The features of the invention [of Gleichauf] may be employed in data communications devices and other computerized devices and software systems for such devices as those manufactured by Cisco Systems, Inc. of San Jose, Calif.

(Ex. M at 7:14-18.)

Indeed, Dr. Clark asserted in his report that ████████████████████████ ███████ (Ex. E ¶ 123 (emphasis added).) Unsurprisingly, then, Dr. Clark's claim chart for NAC (Exhibit D-4 to his report) is largely redundant of his claim chart for Gleichauf (Exhibit D-1 to his report). For element 1[a], Dr. Clark identifies "posture credentials" in Gleichauf and ███ ████████████████████ in NAC. (Ex. F at 5-6; Ex. I at 6.) For the "trusted computing base" of element 1[b], Dr. Clark identifies a "Posture Agent" that communicates with a "posture plug-in API" in Gleichauf. (Ex. F at 8.) In NAC, Dr. Clark identifies a █████████ ████████████████████████████████ (Ex. I at 9.) As to the claimed "response" in element 1[c], Dr. Clark identifies the "posture response" and "posture credentials" in Gleichauf and ████████████████████ in NAC. (Ex. F at 10; Ex. I at 12.) Next, Dr. Clark relies on "protocols such as the Extensible Authentication Protocol (EAP), Protected Extensible Authentication Protocol (PEAP) and Flexible EAP Authentication using Secure Tunnel Protocol (EAP-FAST)" for element 1[d] in Gleichauf, and likewise cites ████ in

NAC for this element. (Ex. F at 13; Ex. I at 15-16.) For the "digitally signed attestation of cleanliness" of element 1[e], Dr. Clark relies on information provided in the "posture credentials" in Gleichauf and again cites the corresponding ███████████████████████ in NAC. (Ex. F at 13-14; Ex. I at 20.)

For the "quarantining" limitation of element 1[f], Dr. Clark again discusses responses to "posture" information for Gleichauf, including placing devices on "an isolated, or 'quarantine' network segment." (Ex. F at 15.) In his NAC chart, Dr. Clark likewise cites ████████ ███████████████████████ (Ex. I at 21-24.) Dr. Clark then asserts that the "service request" of element 1[g] corresponds to an "access request" in Gleichauf and a ███████ ███████████ in NAC. (Ex. F at 16; Ex. I at 25.) For the "quarantine notification page" and "quarantine server" of elements 1[h]-[i], Dr. Clark cites a URL redirect to a "remediation server" in Gleichauf and ███████████████████ in NAC. (Ex. F at 17-20; Ex. I at 26, 29.) Finally, for element 1[j], Dr. Clark cites similar disclosures of ███████████████ in both Gleichauf and NAC. (Ex. F at 21; Ex. I at 30-33.) Dr. Clark's charts for the remaining asserted claims also have close correspondence between the alleged disclosures of Gleichauf and NAC.

In short, the Gleichauf "NAC patent" uses slightly different terminology from the NAC printed publications Dr. Clark cites for NAC itself, but the scope of disclosure is the same. Gleichauf discloses no less concerning NAC than the NAC White paper, INAC|POCD or Cisco's source code.

### 4.    Cisco's Unsuccessful IPR

Cisco filed a petition for IPR of claims 1-3, 5-13 and 15-19 of the '705 Patent (*i.e.*, all claims originally asserted in this action) based on Gleichauf in view of Lewis and Ovadia. *Cisco Sys., Inc. v. K.Mizra LLC*, No. IPR2021-00593, 2022 WL 4346104, at *1 (P.T.A.B. Sept. 19,

2022). On September 19, 2022, the PTAB issued a Final Written Decision ("FWD") holding Cisco had failed to show by a preponderance of the evidence that any of the challenged claims were unpatentable. *Id.* at *16.

Regarding independent claims 1, 12 and 19, Cisco in its IPR relied on the combination of Gleichauf, Lewis and Ovadia to argue that those claims are invalid as obvious. *Id.* at *9, *16. Cisco did not assert that Gleichauf disclosed the limitations reciting "trusted platform module," instead relying on Ovadia, and the limitations relating to the operation of the recited "quarantine server," instead relying on Lewis. *Id.* at *9. The PTAB held, however, that "Gleichauf alone provides all of the alleged benefits or advantages of the proposed combination of Gleichauf and Lewis," and that Cisco had failed to "explain[] adequately why a person of ordinary skill in the art [POSITA] would have been motivated to look to Lewis to introduce such significant changes to the architecture or design of Gleichauf's network when Gleichauf alone already provides all of the alleged benefits or advantages of the proposed combination identified by" Cisco. *Id.* at *14-*15. The PTAB thus found that Cisco had not shown, "by a preponderance of the evidence, that the subject matter of claim 1 would have been obvious over the combination of Gleichauf, Ovadia, and Lewis." *Id.* at *15. The PTAB reached the same conclusion for independent claims 12 and 19, for which Cisco relied on the same combinations. *Id.* at *16.

Dr. Clark in his report acknowledged the PTAB's decision but summarily dismissed the PTAB's reasoning in a single paragraph:





(Ex. E at 24.) Elsewhere, Dr. Clark provided similarly conclusory discussions of an alleged

motivation to combine Gleichauf, Ovadia, Lewis and NAC:



(*Id.* at 36.)

Dr. Clark's perfunctory arguments fail to refute the PTAB's conclusion that a POSITA

would not have combined Gleichauf, Ovadia and Lewis. Nowhere in Dr. Clark's report is any

explanation of where or how the prior art or the '705 Patent suggests or motivates a POSITA to

combine the references to achieve the asserted claims of the '705 Patent. K.Mizra's expert, Dr. Nenad Medvidovic, has opined that such a combination would be technically ███████

In particular, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ (Ex. N ¶ 209.)

### 5.    Summary of Cisco's Prior Art Defenses

To summarize, Cisco filed an IPR petition based on Gleichauf, Lewis and Ovadia that resulted in a FWD from the PTAB affirming the validity of all claims asserted in this action. Cisco served invalidity contentions referencing NAC as a prior art system but documented NAC exclusively with reference to the NAC White Paper (that Cisco itself identified as a printed publication) and INAC|POCD (a published manual for NAC users). After the FWD in the IPR, Cisco served an expert report that broadened the analysis of NAC to include unexplained, isolated

source code citations for only two claim elements, both of which are shown in the NAC White Paper and INAC|POCD manual. Cisco's expert report fails to overcome the deficits identified by the PTAB.

### B.   Cisco's Section 101 Defense

In addition to invalidity based on prior art, Dr. Clark asserts that the claims of the '705 Patent are drawn to ineligible subject matter under 35 U.S.C. § 101 ("Section 101"). (Ex. E ¶ 131.) The entirety of Dr. Clark's Section 101 analysis is set forth in four paragraphs of his report spanning slightly over one page of text. (*Id.* ¶¶ 131-134.) Dr. Clark's first two paragraphs are as follows:



(*Id.* ¶¶ 131-132.)

The next paragraph consists solely of a description of Dr. Clark's alleged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(*Id.* ¶ 133.)

Next, Dr. Clark notes that "the claims of the '705 Patent were rejected by the examiner over the prior art until the applicant agreed to amend to add the limitations of redirecting to a quarantine server using DNS and HTTP redirection and serving a quarantine notification page," and states that based on the NAC system, "these were entirely routine and conventional steps well known in the field of access control." (*Id.* ¶ 134.) Dr. Clark then asserts, ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ (*Id.*) In deposition, Dr. Clark admitted that ██████████ ██████████████████ (Ex. J at 84:12-15.) In particular, Dr. Clark agreed that ██████████ ████████████████████████████████████████████ (*Id.* at 84:20-24.)

## III.   **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (internal quotations omitted). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating a lack of a genuine dispute of material fact lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elec. Techniques, Inc.*

*v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). However, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B). "[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

## IV.   ARGUMENT

### A.   Cisco Cannot Prove Invalidity Based on Prior Art

#### 1.   Cisco is Estopped from Relying on its Prior Art Combinations Because it Could Have Raised Its NAC Arguments at the PTAB

##### a.   IPR estoppel applies to patents, printed publications, and products described in printed publications

The statutory IPR scheme prevents the tactic that Cisco seeks to pursue here, namely, losing at the PTAB and pressing identical arguments in district court. Under 35 U.S.C. § 315(e)(2) ("Section 315(e)(2)"):

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision . . . may not assert . . . in a civil action . . . the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

The first two requirements for estoppel are easily met here. Cisco was the Petitioner in IPR2021-00593 and that proceeding resulted in a FWD. The question, then, is whether Cisco's grounds for prior art invalidity in this case were "raised or reasonably could have been raised" in the prior IPR proceeding. As Cisco *did* raise Gleichauf, Lewis and Ovadia in its IPR, the specific question here is whether Cisco *could have raised* its arguments concerning NAC in the IPR as well. The answer—it could have and is now estopped from presenting the defense at trial.

Cisco *did* rely on Gleichauf, Lewis and Ovadia and there is no dispute that Cisco was aware of *its own* NAC product public documentation and thus could have relied on that NAC documentation as well during the IPR. *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00071-JRG-RSP, 2019 WL 5677511, at *4 (E.D. Tex. Oct. 30, 2019) (holding that "reasonably could have raised" is meant to include prior art that a petitioner actually knew about or that "a skilled searcher conducting a diligent search reasonably could have been expected to discover") (internal quotations omitted).

Cisco will no doubt argue that none of the grounds raised here could have been raised in the IPR because Cisco relies on NAC as a prior art *product* and IPR petitions can be based only on patents or printed publications. 35 U.S.C. § 311(b) (limiting *inter partes* review to invalidity grounds "that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications"). But courts have rejected precisely this effort to circumvent the estoppel provision of Section 315(b)(e)(2) with "system prior art as printed subject matter in disguise." *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017). If a defendant's "purported system prior art relies on or is based on patents or printed publications that [the defendant] would otherwise be estopped from pursuing at

trial, . . . then [the defendant] should be estopped from presenting those patents and printed publications at trial." *Id.*

For example, in *Wasica Finance GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 453 (D. Del. 2020), the defendant, like Cisco here, raised three prior art invalidity grounds in the district court that relied in part on physical sensors as system prior art. *Id.* at 452. All the cited patents and printed publication had been raised by the defendant in a previous IPR, with defendant arguing that estoppel under Section 315(e)(2) did not apply because the sensors could not have been raised as prior art in the IPR. *Id.* at 453. There was no dispute that a prior printed publication "disclose[d] all of the relevant features" of the sensors and thus the system prior art. *Id.* The court thus considered

> whether an obviousness combination – whose only relevant difference from a prior IPR combination is the inclusion of a physical product as one component, where all the relevant features of that physical product had been disclosed in a patent or printed publication that reasonably could have been raised during the IPR – is estopped as a "ground" that "reasonably could have been raised" during the IPR.

*Id.* The court held that "IPR estoppel applies in the circumstances presented here." *Id.* at 454.

The court in *Wasica* acknowledged that not all district courts to consider this issue adopted the same conclusion, finding the plaintiff's argument more persuasive and noted that the majority of district courts to have considered the question had held that estoppel applied where a prior art system was adequately disclosed by a patent or printed publication. *Id.* at 454 n.6. Further, this Court recently applied the holding of *Wasica* in *Hafeman v. LG Elecs., Inc.*, No. 6:21-cv-00696-ADA, Omnibus Pretrial Conference Order at No. 3 (W.D. Tex.) (Ex. O.) This Court had also previously approved the holding of *Wasica* in *CliniComp Int'l, Inc. v. Athenahealth, Inc.*, No. A-18-CV-00425-LY, 2020 WL 7011768, at *2 (W.D. Tex. Oct. 28, 2020). There, the Court acknowledged the holding in *Wasica* that Section 315(e)(2) "prevented the defendant from relying

on a physical sensor that was 'materially identical' to a *patent* the defendant could have raised during the IPR proceeding." *Id.* But the Court held that *Wasica* was distinguishable in that case because the defendant in *CliniComp* relied on "non-public documents and other information that are not 'printed publications.'" *Id.* As discussed below, that is not the situation here, meaning estoppel should apply.

> **b.      All relevant aspects of NAC are disclosed in Cisco's own printed publications**

No doubt aware of the holding in *CliniComp*, Cisco apparently sought to inoculate its obviousness case against an estoppel challenge by tossing in isolated citations to confidential source code for two claim limitations in Dr. Clark's claim chart. But Cisco's invalidity case here is much closer to the circumstances of *Wasica* than *CliniComp*. In *CliniComp*, the defendant "relie[d] *extensively* on non-public documents or information that [it] necessarily could not have used in the IPR proceedings." *Id.* (emphasis added). Here, Cisco's reliance on confidential source code is *de minimis*, cited for only two claim limitations and with no substantive discussion or analysis. Critically, Dr. Clark's claim charts otherwise cite exclusively to the NAC White Paper and INAC|POCD, the two printed publications Cisco relied on in documenting NAC for its invalidity contentions. And Dr. Clark himself admitted that the subject matter for which he cited source code – ███████████████████████████ – is also disclosed in Cisco's public documents. (Ex. J at 86:3-17.)

Dr. Clark's meager source code citations thus fail to "provide a substantive difference to the challenger's invalidity argument that would not have been available by solely relying on the patents and publications describing the device," meaning estoppel applies to NAC. *Boston Scientific Corp. v. Cook Group Inc.*, No. 1:17-cv-03448-JRS-MJD, 2023 WL 1452172, at *33

(S.D. Ill. Jan. 31, 2023).[3] Once Dr. Clark's source code citations are properly disregarded under this principle, Cisco seeks to rely entirely on arguments related to NAC that arise from printed publications that were in Cisco's possession prior to the filing of the IPR petition. The NAC White Paper is a "patent or printed publication" by Cisco's own admission and unquestionably could have been cited in the IPR. Further, Cisco implicitly represented that all relevant information concerning NAC is disclosed in the NAC White Paper by relying solely on the NAC White Paper in its Preliminary Invalidity Contentions.

Likewise, INAC|POCD is a printed publication from Cisco's own files and could have been cited in the IPR. "Printed publication" has been interpreted to mean that the reference must have been "sufficiently accessible to the public interested in the art" before the critical date. *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004). "A reference is considered publicly accessible if 'persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it.'" *Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1369 (Fed. Cir. 2019) (quoting *Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 772 (Fed. Cir. 2018)). INAC|POCD meets these criteria because Cisco admits the document was published in 2004.

As explained above, INAC|POCD is a manual for the installation and use of NAC, and its intended audience is system engineers and network administrators at companies using NAC. Such manuals are routinely treated as "printed publications" for IPR purposes. For example, in *Altamont Software, Inc. v. Sorna Corp.*, No. IPR2019-00218, 2020 WL 2486722, at *6-7 (P.T.A.B. May 13, 2020), the PTAB held that a reference that "explains the general features of DICOMView software and provides a guide for its use" was a printed publication. The PTAB held that the reference "was

---

[3] This Court adopted this holding in the *Hafeman* Omnibus Pretrial Conference Order.  (Ex. O.)

available to purchasers of DICOMView Review Station, who would have reasonably included 'the public interested in the art'" as of the relevant date. *Id.* at *7. Likewise, in *Actifio, Inc. v. Delphix Corp.*, No. IPR2015-00052, 2016 WL 1393513, at *5 (P.T.A.B. Mar. 31, 2016) the PTAB held that "an installation and administration guide for commercially available software" qualified as a printed publication.

INAC|POCD, like the references discussed above, is a user implementation document for commercially available software, was admittedly published in 2004 and thus a printed publication. Indeed, "moving from a printed publication (*such as a manual describing a device*) in an IPR proceeding to a physical product (such as the device described in the manual) in litigation" is exactly the shell game that triggered IPR estoppel in *Wasica*. 432 F.Supp.3d at 453-54 (emphasis added). The same result as in *Wasica* is likewise warranted here.

Cisco's invalidity contentions initially relied exclusively on the NAC White Paper and subsequently relied on the NAC White Paper and INAC|POCD **with no citations to source code** that was in Cisco's possession all along. This conduct effectively admits that all relevant features of NAC are described in those printed publications. Not surprisingly, then, Dr. Clark's report relies almost entirely on the NAC White Paper and INAC|POCD. Dr. Clark's sixteen non-substantive citations to source code files for two claim elements, without description or explanation, do not constitute "extensive" reliance on non-public material, *CliniComp*, 2020 WL 7011768 at *2, or "provide a substantive difference" from Cisco's printed publications, *Boston Scientific*, 2023 WL 1452172, at *33, that would defeat a showing of estoppel. Section 315(e)(2) estops Cisco from relying on the NAC product in this proceeding.

### c.   All relevant aspects of NAC were previously presented to the PTAB via Gleichauf

As a separate basis for estoppel, the Court should find that Gleichauf – ██████████ – according to Cisco (Ex. L at 66:4-67:14) – discloses all relevant aspects of NAC. Estoppel thus arises because NAC *was* presented to the PTAB in Cisco's IPR. As discussed above, Cisco's witness and Gleichauf itself inextricably tie NAC and Gleichauf together such that Gleichauf discloses all relevant aspects of NAC. The PTAB considered Gleichauf, and thus considered NAC. Under Section 315(e)(2), Cisco cannot take arguments that were considered and rejected by the PTAB and present them to the jury in this Court.

### 2.   Cisco Cannot Prove Invalidity by Clear and Convincing Evidence

As a separate, independent, basis for summary judgment, Cisco cannot prove anticipation or obviousness by clear and convincing evidence because Dr. Clark's prior art combinations provide no more information than the theories rejected by the PTAB under a lower standard of proof (preponderance of the evidence). In particular, all relevant aspects of NAC are described not only in the NAC White Paper and in INAC|POCD, but in Gleichauf, which was presented to and considered by the PTAB in affirming the validity of all relevant claims of the '705 Patent.

First, neither NAC nor Gleichauf anticipates any claim of the '705 Patent because Cisco acknowledged Gleichauf's shortcomings in the IPR. NAC discloses no more than Gleichauf. Summary judgment as to anticipation is thus warranted. Second, and relatedly, because NAC discloses no more than Gleichauf, the combination of NAC with any of Gleichauf, Lewis and Ovadia fails to render obvious any claim of the '705 Patent for the reasons found by the PTAB.

The PTAB's FWD, while not formally binding on this Court, nonetheless lays bare the paucity of evidence supporting Cisco's prior art defenses. In this Court, Cisco must prove anticipation or obviousness by clear and convincing evidence. *Golden Blount, Inc. v. Robert H.*

*Peterson Co.*, 365 F.3d 1054, 1058 (Fed. Cir. 2004). In the PTAB, however, unpatentability need only be shown by a preponderance of the evidence for the claims to be held invalid. 35 U.S.C. § 316(e). If Cisco could not prove its prior art defenses under the PTAB's lower burden of proof, Cisco *a fortiori* cannot prove its defenses here. *See Procter & Gamble Co. v. Team Techs., Inc.*, Case No. 1:12-cv-552, 2014 WL 12656554, at *10 (S.D. Ohio July 3, 2014) (granting summary judgment of no invalidity where under the "'reasonable likelihood' standard, which is significantly lower than the 'clear and convincing' burden in this litigation, the PTAB found that Clio's and Dr. Gaffar's inherency arguments were insufficient."); *see also Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) ("[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered."); *cf. DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, No. CV H-20-2123, 2022 WL 4350264, at *11 (S.D. Tex. Sept. 19, 2022) (noting that PTAB decisions can provide "corroboration for the courts' decisions" regarding the sufficiency of prior art).

The PTAB's decision was correct on the merits, and Dr. Clark has offered no rationale for this Court, or the jury, to find a motivation to combine Cisco's references. As discussed above, Dr. Clark's three conclusory paragraphs purporting to challenge the PTAB's conclusion that a POSITA would be unmotivated to combine Cisco's references fail to offer any substantive rationale for Cisco's proffered combination. (*See* Ex. J at 65:8—69:10 (admitting that the three referenced paragraphs are the entirety of his analysis).) And K.Mizra's expert has made clear that such a combination would be ▮▮▮▮▮▮ as a technical matter. (Ex. N ¶ 159.)

### B.     <u>Cisco Cannot Prove Patent Ineligibility</u>

Courts apply a two-part test to determine whether a patent is directed to eligible subject-matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). First, a court must determine whether the claims at issue are "directed to a patent-ineligible concept" such as an

abstract idea. *Id.* at 218. If the claims are directed to a patent-ineligible concept, a court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). Step two of the analysis is "a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 72–73) (brackets omitted). Step two is satisfied "when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (internal quotations omitted) (alteration in original).

"[T]he presumption of validity extends to patent eligible subject-matter." *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2020 WL 278481, at *4 (W.D. Tex. Jan. 10, 2020). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368.

Dr. Clark's testimony cannot show patent ineligibility. Regarding *Alice* Step One, "the Court may consider expert testimony as long as the testimony addresses the claim language, statements in the written description, or the prosecution history." *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 WL 4587565, at *3 (E.D. Tex. Sept. 8, 2022), *report and recommendation adopted*, No. 2:21-cv-00126-JRG-RSP, 2022 WL 4587492 (E.D. Tex. Sept. 27, 2022). Here, Dr. Clark ***does not*** address any of these matters, instead summarily declaring that the

claims of the '705 Patent are directed to ████████████████████ (Ex. E ¶ 132.) Having failed to explain his testimony with reference to any intrinsic evidence whatsoever, Dr. Clark cannot competently testify that the '705 Patent fails *Alice* Step One. And even if Dr. Clark could address this issue, he admitted that ████████████████████████████ ████████████████████████ (Ex. J at 84:12-24.) Because Cisco's own expert admits that the claims of the '705 Patent pass *Alice* Step One, Cisco cannot now argue that the claims are ineligible under Section 101.

Dr. Clark fares no better regarding *Alice* Step Two. Here, Dr. Clark's discussion is concerned exclusively with a single alleged prior art system—the NAC system at the center of Cisco's invalidity defenses. (Ex. E ¶¶ 132-134.) According to Dr. Clark, the mere assertion that ████████████████████████████████████████████████████████████ ████ is sufficient to render the entire patent "routine and conventional." (*Id.*)[4] But this assertion is incorrect as a matter of law, as it is well-settled that "inventions that are comprised of elements that are individually well-known in the prior art can still satisfy *Alice* Step 2 if the 'ordered combination' of those elements embodies an inventive concept." *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1039–40 (E.D. Tex. 2019) (citing *BASCOM Glob. Internet Servs., Inc. v. AT & T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). Dr. Clark does not explain how the '705 Patent (or the NAC system for that matter) fails to embody an inventive concept, instead simply declaring that the '705 Patent is "routine and conventional" because ████████████████████████████████████████████████████████ That position fails as a matter of law. *Id.* at 140.

---

[4] As discussed in Section A *supra*, neither Cisco nor Dr. Clark in fact believe that the NAC system is an anticipatory Section 102 reference, and the NAC system does not render any claim of the '705 Patent obvious in combination with any prior art reference.

Separately, the excessively flimsy nature of Dr. Clark's putative Section 101 analysis provides an independent basis for summary judgment, as "[c]onclusory expert declarations devoid of facts upon which the conclusions were reached do not raise a genuine issue of material fact." *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-0661-JRG-RSP, 2019 WL 7580245, at \*6 (E.D. Tex. May 2, 2019) (quoting *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000)). As discussed above, Dr. Clark's *Alice* Step One conclusion is entirely unsupported by any references to the intrinsic evidence, and his *Alice* Step Two analysis consists of a few paragraphs of text describing a single prior art system. These meager allegations cannot support a finding of patent eligibility. Summary judgment in K.Mizra's favor on Cisco's Section 101 defense is appropriate.

## V.    <u>CONCLUSION</u>

K.Mizra respectfully requests that the Court grant summary judgment in K.Mizra's favor as to Cisco's prior art and Section 101 defenses.

Dated: June 9, 2023

Respectfully submitted,

By: /s/ *Matthew C. Holohan*
Michael C. Smith
Texas Bar No. 18650410
michael.smith@solidcounsel.com
Scheef & Stone, LLP
113 E. Austin Street
Marshall, TX 75670
(903) 938-8900

Anna Rebecca Skupin
Texas Bar No. 24084272
becca.skupin@solidcounsel.com
Scheef & Stone, LLP
200 North Travis Street
Suite 402
Sherman, TX 75090
(430) 262-5660

Robert R. Brunelli*
CO State Bar No. 20070
    rbrunelli@sheridanross.com
Paul Sung Cha*
CO State Bar No. 34811
    pscha@sheridanross.com
Patricia Y. Ho*
CO State Bar No. 38013
    pho@sheridanross.com
Matthew C. Holohan*
CO State Bar No. 40996
    mholohan@sheridanross.com
Bart A. Starr*
CO State Bar No. 50446
    bstarr@sheridanross.com
Angela J. Bubis*
CO State Bar No. 58144
    abubis@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223
litigation@sheridanross.com

*Admitted pro hac vice*
*Attorneys for Plaintiff K.Mizra LLC*

23

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on June 9, 2023, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned case were subsequently served on all counsel of record by electronic mail.

By: <u>*/s/ Matthew C. Holohan*</u>
Matthew C. Holohan*
CO State Bar No. 40996
mholohan@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223
litigation@sheridanross.com

*Admitted pro hac vice*
*Attorney for Plaintiff K.Mizra LLC*