**PUBLIC VERSION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| K.MIZRA LLC, | Civil Action No.: 6:20-cv-01031-ADA |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| CISCO SYSTEMS, INC., | ███████████████ |
| Defendant. | |

**MOTION TO EXCLUDE OPINIONS OF**
**AMBREEN SALTERS ON BEHALF OF PLAINTIFF K.MIZRA LLC**

<u>PUBLIC VERSION</u>

## TABLE OF CONTENTS

TABE OF AUTHORITIES ..................................................................................................... ii

I.    BACKGROUND ........................................................................................................ 1

II.   LEGAL STANDARD ................................................................................................ 1

III.  ARGUMENT ............................................................................................................. 2

       A.    Ms. Salters' Lump Sum Calculation Has No Basis And Is Legally Wrong. ... 2

       B.    Ms. Salters' Reasonable Royalty Opinion Is Also
             Legally And Factually Wrong .......................................................................... 3

             1.    Ms. Salters' Reliance on the 928/929 Workbooks
                   to Calculate a Reasonable Royalty Was Fatal Error ................................. 4

             2.    Ms. Salters' Running Royalty ██████████████
                   ████████████████ . ............................................................................. 8

             3.    Ms. Salters' Opinion that ████████████████████
                   ████████████████████████
                   to the Royalty Calculation Are Unsupported. .......................................... 9

             4.    Ms. Salters' ████████████████ Opinions are Fatally Flawed.............. 14

             5.    Certain Rebuttal Opinions Should Also Be Excluded. ........................... 17

IV.   CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
　735 F.3d 1352 (Fed. Cir. 2013) ................................................................................ 16

*Daubert v. Merrell Dow Pharms., Inc.*,
　509 U.S. 579 (1993) ................................................................................................... 1

*Finjan, Inc. v. Secure Computing Corp.*,
　626 F.3d 1197 (Fed. Cir. 2010) ................................................................................ 12

*Georgia-Pacific v. U.S. Plywood Corp.*,
　318 F. Supp 1116 (S.D.N.Y. 1970) ............................................................................ 1

*Graham v. San Antonio Zoological Soc'y*,
　261 F. Supp. 3d 711 (W.D. Tex. 2017) ...................................................................... 2

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
　694 F.3d 51 (Fed. Cir. 2012) .................................................................................... 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
　580 F.3d 1301 (Fed. Cir. 2009) ...................................................................... 3, 11, 12

*Luhn v. Scott*,
　No. A-04-CA-521-LY,
　2007 WL 9700685 (W.D. Tex. Sept. 28, 2007),
　*aff'd*, 283 F. App'x 813 (Fed. Cir. 2008) ................................................................. 11

*Micro Chem., Inc. v. Lextron, Inc.*,
　317 F.3d 1387 (Fed. Cir. 2003) .................................................................................. 1

*Moore v. Ashland Chem. Inc.*,
　151 F.3d 269 (5th Cir. 1998) ...................................................................................... 2

*Paz v. Brush Engineered Materials, Inc.*,
　555 F.3d 383 (5th Cir. 2010) ...................................................................................... 2

*ResQNet.com, Inc. v. Lansa, Inc.*,
　594 F.3d 860 (Fed. Cir. 2010) .................................................................................. 12

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
　883 F.2d 1573 (Fed. Cir. 1989) ................................................................................ 11

*Unilo**c**, USA, Inc. v. Microsoft Corp.*,
　632 F.3d 1292 (Fed. Cir. 2011) ................................................................................ 11

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
　No. 2:18-CV-00366-JRG-RSP,
　2019 U.S. Dist. LEXIS 219186 (E.D. Tex. Dec. 19, 2019) ..................................... 12

*VirnetX, Inc. v. Cisco Sys., Inc.*,
　767 F.3d 1308 (Fed. Cir. 2014) ................................................................................ 12

*Wordtech Sys. v. Integrated Networks Sols., Inc.*,
 609 F.3d 1308 (Fed. Cir. 2010) ................................................................................................ 3

**Rules**

Fed. R. Evid. 702 ......................................................................................................................... 1

**PUBLIC VERSION**

Plaintiff K.Mizra LLC ("K.Mizra") hereby moves to exclude opinions of Ambreen Salters (Damages Expert Report of Ambreen Salters ("Salters Report"), Ex. 1), a damages expert endorsed by Defendant Cisco Systems, Inc. ("Cisco"). The challenged opinions concern Cisco's infringement of asserted method and system claims of U.S. Patent No. 8,234,705 ("the '705 Patent") under *Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp 1116 (S.D.N.Y. 1970) (also referred to as "*Georgia-Pacific* Factors"). These opinions are not sufficiently tied to or supported by evidence, such as prior license agreements and incomplete Cisco documents. As a result, Ms. Salters' ultimate opinion that K.Mizra is only entitled to a ███████████████████████ or alternatively, ██████████████████████, and any testimony related thereto should not be allowed into evidence at trial.

## I.      BACKGROUND

K.Mizra accuses certain Cisco ISE and AnyConnect products ("Accused Products") running on ██████████████ of infringing independent Claims 1, 10, and 12 and dependent Claims 9 and 16 of the '705 Patent. (*See* Joint Status Report (ECF No. 111).) The Parties agree that a reasonable royalty type of damage analysis and a hypothetical negotiation date of ███, which is when ██████████████████, are appropriate. Both parties have calculated damages both from the date of the Complaint in November 2020 and from an alternative date of ██████ ████████████████████████████████████████████████.

## II.     LEGAL STANDARD

Trial courts must act as gatekeepers for all expert testimony in order to evaluate whether an expert has met the criteria set forth in Fed. R. Evid. 702. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003) (citing Fed. R. Evid. 702(a) and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–92 (1993)). An expert with scientific, technical, or other

specialized knowledge may provide expert testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702(a); *see also Micro Chem.*, 317 F.3d at 1391. The party offering the expert testimony has the burden of satisfying this standard. *Graham v. San Antonio Zoological Soc'y*, 261 F. Supp. 3d 711, 727–28 (W.D. Tex. 2017) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)); *see also Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 387 (5th Cir. 2010).

## III.   ARGUMENT

### A.   Ms. Salters' Lump Sum Calculation Has No Basis And Is Legally Wrong.

Ms. Salters' calculation of a ███████████████████████████ of the Salters Report should be excluded. Ms. Salters' Report does not ███████████████ ███████████████ and her deposition testimony confirmed that the ███████████ ████████████████████████████████████████████████ ███████████████████████████████████████████ ███████████████. (Ex. 1, ¶¶ 98 (citing Ex. 1 at 57 (StoneTurn Exhibit 2 (which merely states "(a) See report narrative for detail"))), 32, 47, 49, 67; Deposition of Ambreen Salters ("Salters Dep."), Ex. 2, 36:15–41:4.) Ms. Salters simply copied the identical ███████████ ███████████████, with no other considerations. Accordingly, her lump sum calculation set forth in **Paragraphs 32 and 98** should be excluded and no testimony allowed as to any lump sum calculations.

Ms. Salters also opines that ████████████████████████████████ ███████████████████████████ (Ex. 1, ¶ 98, p. 57.) Ms. Salters does not explain why in her affirmative opinions, but later states █████████████████████ ███████████████████████████████

2

████████████████████████████████ (*Id.*, ¶¶ 111–114.) However, that reasoning is contrary to the purpose of a lump sum license and Cisco's ████████████████████████ *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009). In *Lucent*, the Federal Circuit describes that the lump-sum analysis involves different considerations than a running royalty analysis, including that it is usually the remainder of the patent term because it removes any risk of underreporting by the infringer and avoids the administrative burdens of monitoring usage. *Id.* These are exactly the benefits testified to by Cisco and that Ms. Salters ignores. For these reasons as well, the opinions expressed by Ms. Salters in **Paragraphs 32 and 98** of her Report are factually and legally incorrect and any testimony relating thereto should not be allowed at trial.

### B.     Ms. Salters' Reasonable Royalty Opinion Is Also Legally And Factually Wrong.

Ms. Salters' ████████ running royalty calculation should also be excluded for several separate reasons. (Ex. 1, ¶¶ 32, 84, 98 (citing StoneTurn Exhibit 1).) First, Cisco's licensing representative, Mr. Hamilton, testified that ████████████████████████████████ (Hamilton Deposition ("Hamilton Dep."), Ex. 3). (Ex. 1, ¶¶ 32, 98; Ex. 2, 8:20–9:2; Ex. 3, 16:20–23; 85:2–5.) No evidence reflects that a running reasonable royalty is justified here, and Ms. Salters really does not point to any. These simple facts establish that Ms. Salters' offering of a reasonable royalty opinion is untethered from the facts of this case and she should not be allowed to testify about that opinion at trial. *See, e.g. Wordtech Sys. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (lump-sum agreements are not indicative of a running royalty). However, there is much more requiring that this opinion as set forth in ████████████████ ██ is not presented at trial.

### 1.    Ms. Salters' Reliance on the 928/929 Workbooks to Calculate a Reasonable Royalty Was Fatal Error.

Ms. Salters' next error was calculating the revenue for Accused Products using ███████ ██████████████████, from two Cisco-produced Excel workbooks reflecting ███████████ for AnyConnect, the 928 Workbook, and ISE, the 929 Workbook. However, the Rule 30(b)(6) representative who was produced to testify for Cisco on financial data produced, outside consultant Steven Boyles, testified that ████████████████████████████████████████████ ██████. (Boyles Depositions ("Boyles Dep."), March 23, 2023 and April 7, 2023, Ex. 4, 35:3–13, 41:2–8, 43:7–25, 134:19–135:3). In other words, the Workbooks contain ███████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

███████████████████████████████████████████



(*Id.*, 104:25–105:6, 107:13–22, 134:19–135:3.) Further, Mr. Boyles testified that ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*, 221:11–222:15.) Given that Accused Products are

licensed software products, not hardware that is typically sold, revenues derived from licensing of

the Accused Products would be earned over a number of years, ▮▮▮▮▮▮▮▮▮ (Ex. 1,

¶ 18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At Cisco, ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See, e.g.,* Ex.

4, 194:9–195:5, 189:13–16.)

The ▮▮▮▮▮▮▮▮▮▮▮ revenue that could be used to calculate Cisco's profits

attributable to the Accused Products was not produced until well after the end of fact discovery,

through the 956 Workbook. K.Mizra found it odd that it took so long for Cisco to produce this

highly relevant information or that it was not used by Ms. Salters, especially given that Cisco

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████████████████

████████ (*Id.*, 201:25–202:4.) In any case, Cisco provided no justification for the late production,

but  unsurprisingly  the  956  Workbook  reflected  ████████████  for  the  Accused  Products,

███████████████████████████████████████████████████████████████

███████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

An exemplary screenshot of ████████████████████████████████████████

███████████████████████

███████████████████████████████████████████



(*Id.*, 193:4–11, 198:18–24.) Ms. Salters did not ███████████████ in reaching her opinions.

Instead, she ████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ (Ex. 1, ¶ 84 (citing Ex. 1

at 67 (StoneTurn Workpaper 3)); Ex. 2, 164:12–165:3; Ex. 4, 18:17–20, 17:24–18:16, 37:11–23.)

In short, Ms. Salters simply did what Cisco instructed her to do without any independent review.

Accordingly, Ms. Salters' use of the 928 and 929 Workbooks to calculate a reasonable

royalty is contrary to how the Accused Products are sold and the data produced by Cisco in this

case. *Georgia-Pacific* Factor 8 is directed to the established profitability of the accused profits and

while the Court has broad discretion for the appropriate method of calculating profits, the relevant

evidence shows that ████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████ is not reliable as applied to calculate Accused Products revenues, meaning Ms. Salters' calculation on a running reasonable royalty in **Paragraphs 32, 84 and 98** should be excluded and no testimony concerning those opinions should be allowed at trial.

### 2.    Ms. Salters' Running Royalty Incorrectly ████████████████████

In calculating the sales of Accused Products in **Paragraph 84**, Ms. Salters also ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ (Ex. 1, ¶ 84 n.161; *cf.* Ex. 4, 181:3–14, 188:23–189:16, 197:5–10, 214:10–215:11.) In any case, it makes no logical sense that Cisco deliberately produced ████████████████████████████████████████████████ ████████



(Emphasis added.)

██████████████████████████████████████

Ms. Salters excluded ██████████████████ produced in the 956 Workbook only because ████████████████████████████████████████. (Ex. 2, 143:5–144:2, 149:12–150:1.) Mr. Boyles' contrary testimony that █████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████ (Ex. 1, ¶¶ 84 n.161, 103; Ex. 4, 238:2–239:5; Ex. 2, 171:3–7.) For these reasons, Ms. Salters' running royalty calculation in **Paragraphs 32, 84, and 98** are flawed, underinclusive, contrary to the evidence, and should be excluded for this reason as well.

> 3. **Ms. Salters' Opinion that █████████████████** **████████████████████████ Are Relevant** **to the Royalty Calculation Are Unsupported.**

Next, Ms. Salters opines that three agreements are relevant under the *Georgia-Pacific* hypothetical negotiation to support both her royalty calculations. (Ex. 1, ¶¶ 49, 51–54, 64, 67.) Radix Holdings owned the '705 Patent in 2015 and would accordingly be ████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████

Out of all the agreements produced during discovery, Ms. Salters deemed the ████████████████████████████████████████████████████████ stating:

> ██████████████████████████████████████████████████████████
> ██████████████████████████████████████████████████████████

> ████████████████████████████████████████████████



(Emphasis added.)

When deposed, Ms. Salters explained that ████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████ (Ex. 2, 14:9–
15:4, 19:20–20:1.) However, Ms. Salters could not ████████████████████████
████████████████████████████████████████████████████████ In particular,
Ms. Salters failed to ████████████████████████████████████████████████████
████████████████████████████ (*Id.*, 19:7–20:1, 23:9–24:21,
26:19–28:5, 35:22–42:6.) Nor could Ms. Salters identify any methodology for ██████████
████████████████████████████████████████████████████████████████████████
████████████████████ (*Id.*, 35:22-42:6.) While Ms. Salters can testify to reviewing the

████████████████████████████████████████████

██████████████████████ she should not be allowed to testify and opine that ████████████

████████████████████████████████████████

Ms. Salters also failed in her "comparability" determination in relying almost exclusively on the ████████████████ to assess a lump sum royalty. (Ex. 1, ¶¶ 49, 64, 67.) As this Court is aware, an expert may rely on prior licenses to assess damages, however, the licenses relied on "must be sufficiently comparable to the hypothetical license at issue in suit . . ." to be considered relevant. *Uniloc, USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011) (quoting *Lucent*, 580 F.3d at 1325) (quotations omitted). Specifically, "a reasonable royalty is often determined on the basis of a hypothetical negotiation, occurring between the parties *at the time* that infringement began." *Id.* at 1312 (emphasis added); *see also Luhn v. Scott*, No. A-04-CA-521-LY, 2007 WL 9700685, at *9 (W.D. Tex. Sept. 28, 2007), *aff'd*, 283 F. App'x 813 (Fed. Cir. 2008) ("A court bases its determination of a reasonable royalty on what a willing licensor and licensee would have bargained for during hypothetical negotiations *on the date the infringement started*.") (emphasis added) (citing *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989).)

Demonstrating sufficient economic and technological comparability include considering factors like the bargaining positions of and relationship between the parties, whether there was a settlement of litigation, the date of the prior agreement, the inclusion of other patents, technology, products or services in the prior agreement, the license structure (e.g., lump sum versus running royalty), the patentee's licensing policies, the royalty base and rate, the geographic and/or temporal scope of the license, exclusivity versus non-exclusivity of the license, the importance of the licensed technology in driving sales and usage of the licensed products, the profitability of the licensed products, etc. *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-

JRG-RSP, 2019 U.S. Dist. LEXIS 219186, at *3 (E.D. Tex. Dec. 19, 2019) (showing of technological and economical comparability required to support theory surrounding hypothetical negotiation); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) (must account for differences in the technologies and economic circumstances of the contracting parties); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012) (abuse of discretion to admit testimony and evidence regarding licenses that are not comparable to the hypothetical negotiation). *Lucent*, 580 F.3d at 1326–39.

Here, while ███████████████████████████████, Cisco makes commercial embodiments of the '705 Patent, *i.e.*, the Accused Products. They are not ████ ████████████████████████████████████████████████ (Ex. 1, ¶ 49.) In contrast, ████████████████████████████████████ ████████████████████████  ██████████████████ ████████████████████████████████████████ ████████████████████████████████ (*See* Ex. 2, 33:14–15, 34:11–23.) In short, the circumstances in the ███████████ are not comparable at all to the hypothetical negotiation. Ms. Salters ignores the factual differences between the hypothetical parties and the ████████████ Any opinions as to its relevancy in **Paragraphs 49, 64, and 67** should be excluded.

Next, Ms. Salters found the ██████████ licenses to ███████████████████ ████████████████████████████████████████████ ███████████████████████████████████ here relevant. That finding was based on:

████████████████████████████████████



Ms. Salters here similarly ignores or does not appear to consider data that would be relevant to a comparability analysis. (Ex. 1, ¶¶ 51–54, 67.) ███████████████████████████

███████████████ ███████████████████████████████

███████████████ (Ex. 2, 53:24–60:14.) There were no considerations as to ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

(*Id.*, 53:24–62:25.) Instead, Ms. Salters only considers that ███████████████████

███████████████████████████████████████████

████████████████████████ [1] **Paragraphs 51-54 and 67** fail to provide sufficient evidence

to conclude that the ███████████████████████████ were technological and economically

comparable, requiring that any related testimony not be allowed at trial.

---

[1] Moreover, Ms. Salters testified that any prior agreements should be within ███████████████

███████████████████████ (*Id.*, 20:2–22:10.)

███████████████████████████████

In summary, Ms. Salters' opinions as to the ███████████████████████████ ████████████████████████████████████████ are not shown by the evidence and comparability factors, and she should not be allowed to testify as such. (Ex. 1, ¶¶ 49, 51–54, 64, 67.)

### 4.    Ms. Salters' ████████████████ Opinions are Fatally Flawed.

Ms. Salters relies on her own opinion that K.Mizra has been ██████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████



However, Ms. Salters went on to testify that ██████████████████████████████ ██████████████████████████████████████████████████████████████████. (Ex. 2, 101:24–102:24.)

Next, Ms. Salters finds under at least *Georgia-Pacific* Factor 8, that Cisco's ████████ ███████████████████████████████████████ (Ex. 1, ¶¶ 80–81.) Specifically, Ms. Salters states:



(Emphasis added.) Paragraph 80 relies solely on a ████████████████████ ████████████████████████████████████████ (Ex. 5, CISCO00000263.) Importantly, the document fails to show that as of ███████████ ████████████████████████████████ (*Id.*) Indeed, Ms. Salters did not do any ████████████████████████████████████████ ████████████████████████████████████████ ████████ (Ex. 2, 117:8–16.) Upon further questioning, Ms. Salters stated she further based her opinion on ████████████████████████████████ (*Id.*, 121:22–124:4.)

Similarly, Ms. Salters' opinion in Paragraph 81 of her Report, that ISE and AnyConnect products have ████████████████████████████████ was not tied to any data or measure. (Ex. 1, ¶ 81.) Ms. Salters could not even ████████████ ████████████████████████████████████████ ████████████████████████████ (Ex. 2, 126:3–15.) Moreover, Ms. Salters admitted that she based Paragraph 81 in part on ████████████ ████████████████████████████████████████ ████████████████████████ (*Id.*, 133:25–134:9.) In that conversation, Ms. Salters claimed these ████████████████████████████████ ████████████████████ (*Id.*, 134:10–136:8.) This information was never disclosed in any of Cisco's 30(b)(6) depositions, nor documents.

████████████████████████████████████

Ms. Salters' findings as to ████████████ (Ex. 1, ¶ 70), K.Mizra's ████████████

████ (*id.*, ¶ 78), and Cisco's ██████████████████ (*id.*, ¶¶ 80–81) are void of

almost any cited factual basis. Instead, she relies upon one conclusory Cisco deposition statement

from a licensing representative and one self-serving Cisco 2021 document that does not tie

anything about the NAC market and its competitors to the hypothetical negotiation date. While

she may have conducted additional research, ██████████████, and Ms. Salters maintains

██████████████████████. .

Moreover, K.Mizra's alleged ████████████████████ is not relevant to

the *Georgia-Pacific* analysis and unsupported by the data. (Ex. 1, ¶ 78). *Georgia-Pacific* Factors

6, 8, 11, and 13 focus on the commercialization of the infringer and profitability of products made

under the patent. K.Mizra's licensing efforts are irrelevant, since Ms. Salters does not know

████████████████████████████████████████████

██████████████████████████ . *Apple Inc. v. Samsung Elecs. Co.*,

735 F.3d 1352, 1369–70 (Fed. Cir. 2013) ("While the fact that a patentee has previously chosen to

license the patent may indicate that a reasonable royalty does compensate for an infringement, that

is but one factor for the district court to consider. The fact of the grant of previous licenses, the

identity of the past licensees, the experience in the market since the licenses were granted, and the

identity of the new infringer all may affect the district court's discretionary decision concerning

whether a reasonable royalty from an infringer constitutes damages adequate to compensate for

the infringement.").

Any opinions that rely on statements set forth in **Paragraphs 70, 78, 80, and 81** of the

Salters Report should be excluded for insufficient factual basis and all related testimony should be

precluded from presentation at trial.

### 5.     Certain Rebuttal Opinions Should Also Be Excluded.

Paragraphs 100-102 of Ms. Salters' Report rebut K.Mizra's damages expert's ███

████████████████████████ **Paragraphs 103-104** rebut the ██████████████████

████ **Paragraphs 111-114** criticize K.Mizra's damages report for ████████████████

███████ **Paragraphs 117-119** state that K.Mizra's damages expert ignored ██████████

█████████████████████████████████████████████████████████ Finally,

**Paragraphs 120-123** discuss K.Mizra's ████████████████ and K.Mizra's criticism of

███████████████████████████████████ These rebuttal opinions should be

excluded for the same reasons as their affirmative counterparts.

## IV.     CONCLUSION

For the reasons stated above, K.Mizra's Motion should be granted.

Dated: June 14, 2023                    Respectfully submitted,

By: /s/ Patricia Y. Ho
    Michael C. Smith
    Texas Bar No. 18650410
    michael.smith@solidcounsel.com
    Scheef & Stone, LLP
    113 E. Austin Street
    Marshall, TX 75670
    (903) 938-8900

    Anna Rebecca Skupin
    State Bar No. 24084272
    becca.skupin@solidcounsel.com
    Scheef & Stone, LLP
    200 North Travis Street, Suite 402
    Sherman, Texas 75090
    (430) 262-5660

    Robert R. Brunelli*
    CO State Bar No. 20070
        rbrunelli@sheridanross.com
    Paul Sung Cha*
    CO State Bar No. 34811

pscha@sheridanross.com
Patricia Y. Ho*
CO State Bar No. 38013
    pho@sheridanross.com
Matthew C. Holohan*
CO State Bar No. 40996
    mholohan@sheridanross.com
Bart A. Starr*
CO State Bar No. 50446
    bstarr@sheridanross.com
Angela J. Bubis*
CO State Bar No. 58144
    abubis@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223
litigation@sheridanross.com

*Admitted pro hac vice
Attorneys for Plaintiff K.Mizra LLC

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I certify that on June 14, 2023, the documents filed with the Clerk of Court via the Court's

CM/ECF system under seal in the above-captioned case were subsequently served on all counsel

of record by electronic mail.

> By: /s/ Patricia Y. Ho
> Patricia Y. Ho
> Sheridan Ross P.C.
> 1560 Broadway, Suite 1200
> Denver, CO 80202
> 303-863-9700
> litigation@sheridanross.com

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Plaintiff met and conferred with counsel

for Defendant. Counsel for Defendant opposes this motion.

> By: /s/ Patricia Y. Ho
> Patricia Y. Ho
> Sheridan Ross P.C.
> 1560 Broadway, Suite 1200
> Denver, CO 80202
> 303-863-9700
> litigation@sheridanross.com