**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| K.MIZRA LLC, | Civil Action No.: 6:20-cv-01031-ADA |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| CISCO SYSTEMS, INC., | ▮▮▮▮▮▮▮▮▮▮ |
| Defendant. | |

### PLAINTIFF K.MIZRA LLC'S OPPOSITION TO DEFENDANT CISCO SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT BASED ON LICENSE

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 2

III.    ARGUMENT ........................................................................................................... 6

        A.      Cisco Has Not Established Standing to Enforce
                the Microsoft Agreement ........................................................................... 6

        B.      Cisco Has Not Shown that K.Mizra's Infringement
                Allegations Implicate the Microsoft Agreement........................................ 6

        C.      Cisco Has Not Proven that the '705 Patent is a
                "███████████" ...................................................................... 8

        D.      If the Court Determines that The '705 Patent is
                a "███████████," the Microsoft Agreement
                Should Be Reformed Based on Mutual Mistake........................................ 12

        E.      Cisco's Alternative Theory of Relief Should Be Rejected ...................... 13

IV.     CONCLUSION...................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................................................... 9

*C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*,
453 F. App'x 439 (5th Cir. 2011) ..................................................................... 11

*Campos v. Steves & Sons, Inc.*,
10 F.4th 515 (5th Cir. 2021) ............................................................................. 10

*City of Tacoma v. Northshore Inv'rs., LLC*,
158 Wash. App. 1041 (2010) ............................................................................. 6

*Dadfar v. Liberty Mut. Ins. Co.*,
No. A-20-CV-071 AWA,
2021 WL 272216 (W.D. Tex. Jan. 27, 2021) .................................................... 10

*Dig. Reg of Tex., LLC v. Adobe Sys. Inc.*,
Case No. C 12-1971 CW,
2013 WL 5402094 (N.D. Cal. Sept. 26, 2013) ................................................ 6, 7

*GLEPCO, LLC v. Reinstra*,
307 P.3d 744 (Wash. Ct. App. 2013) ................................................................ 12

*Heartbrand Holdings, Inc. v. Whitmer*,
No. SA-19-CV-358-HJB,
2021 WL 1947875 (W.D. Tex. May 14, 2021) ................................................... 9

*Ocean Gold Seafoods Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*,
No. C18-5425JLR,
2020 WL 6561611 (W.D. Wash. Nov. 9, 2020) ................................................ 12

*Richardson v. Tex. Sec'y of State*,
28 F.4th 649 (5th Cir. 2022) ............................................................................. 11

*Richardson v. Tex. Sec'y of State*,
485 F. Supp. 3d 744 (W.D. Tex. 2020) ............................................................. 11

*Samsung Elecs. Co., Ltd. v. Imperium IP Holdings (Cayman) Ltd.*,
No. CV 15-1059-CFC-CJB,
2021 WL 2004425 (D. Del. May 19, 2021) ..................................................... 7, 8

*Zinter v. Salvaggio*,
610 F. Supp. 3d 919 (W.D. Tex. 2022) ............................................................. 10

*Zinter v. Salvaggio*,
No. 22-50800,
2022 WL 18587913 (5th Cir. Nov. 17, 2022) ................................................... 10

**Rules**

Fed. R. Civ. P. 56 ............................................................................................ 10, 11

## I.    **INTRODUCTION**

Defendant Cisco Systems, Inc. ("Cisco") filed a six-page motion for summary judgment seeking to dispose of this entire case. The motion, which is based upon a license to which neither Cisco nor Plaintiff K.Mizra LLC ("K.Mizra") are a party and in which asserted U.S. Patent No. 8,234,705 ("the '705 Patent") is not mentioned, is meritless.

Cisco purports to raise a dispositive license defense without even bothering to articulate, let alone attempt to prove, all of the elements of the defense. As a non-party to the agreement between Microsoft and the Q Parties ("Microsoft Agreement"),[1] Cisco has no standing to enforce the Microsoft Agreement unless it can prove that it is an intended third-party beneficiary to that agreement. The phrase "third-party beneficiary" does not appear anywhere in Cisco's motion, and thus Cisco has not shown that it even has standing to invoke the Microsoft Agreement. On that basis alone, Cisco's motion should be denied.

Separately, Cisco offers no substantive argument that K.Mizra's infringement theories implicate any license, release or covenant bargained for in the Microsoft Agreement. Instead, Cisco first declares that ████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████ (ECF No. 113 at 1 (footnote omitted).) Then Cisco argues that "K.Mizra argues in this case[] that Cisco infringes because some Cisco customers use Cisco products together with Microsoft's Windows 10 or Windows 11 operating systems." (*Id.*) While these facts are facially true, they do not lead to the conclusion that a license here saves Cisco from its infringing conduct. Rather, Cisco's presentation of these facts mischaracterizes both the convoluted structure of the

---

[1] The relevant contents and history surrounding the Microsoft Agreement are set forth in K.Mizra's Motion for Summary Judgment on Cisco's Contract-Based Affirmative Defenses and Counterclaims (ECF No. 123). For the Court's convenience they are not repeated in detail here.

Microsoft Agreement and K.Mizra's detailed infringement contentions. In short, Cisco fails to properly link K.Mizra's infringement theories to the Microsoft Agreement, meaning it cannot prove that it is entitled to summary judgment.

As for the one fact that Cisco does seek to prove is undisputed—that the '705 Patent is a ████████████████ under the Microsoft Agreement—the record evidence proves otherwise. (*See generally* ECF No. 123.) Cisco's theory of license is limited to the fact that the '705 Patent was listed on certain (unauthenticated) email attachments labelled ████████ that were sent to Microsoft long after the effective date of the Microsoft Agreement. A cursory reading of the Microsoft Agreement shows that it does not grant any licenses or covenants based on a patent being listed in an email attachment. Rather, ████████████████████████████████████ ████████████████████████████████████████████████████. Cisco does not even attempt to prove that this fact is true, even declaring it "irrelevant." (ECF No. 113 at 5 n.3.) Because Cisco misconstrues the Microsoft Agreement and cannot prove that the '705 Patent was licensed or covenanted under that agreement, Cisco's motion should be denied on this basis as well.[2]

## II.    STATEMENT OF FACTS

The record is clear regarding the status of the '705 Patent under the Microsoft License. (ECF No. 123 at 2-8.) Briefly, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[2] Cisco's alternative theory of relief—that the '705 Patent is an ████████████ under the Microsoft Agreement and thus ████████████████ (*Id.* at 1)—is unsupported at least because Cisco has failed to prove its status as a third-party beneficiary and to link K.Mizra's infringement theories to the actual covenants in the Microsoft Agreement.

████████████████████████████████████

███████████████████████████████ (*Id.*) These indisputable facts dispose of Cisco's motion.

Cisco's sole piece of evidence in support of its contention that the '705 Patent is a ████████████ is the fact that ███████████████████████████████ ███████████████████████████████████ (ECF No. 113 at 3.)[3] Cisco does not explain how these emails and attachments would be admitted into evidence at trial, and offers no testimony— competent or otherwise—authenticating these documents or explaining their contents. In any case, as explained in K.Mizra's motion, ████████████████████ ███████████████████████████████████████ (ECF No. 123 at 6-8.) This dispositive fact *is* confirmed by competent testimonial evidence in the form of declarations presented by K.Mizra, but it is also clear from the documents themselves. (*Id.*)

Rasheed McWilliams, the author of the emails and attachments on which Cisco relies, explained that ███████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████ (ECF No. 123, Ex. G ¶ 8.) Mr. McWilliams further explained that ████████ ███████████████████████████████████████ ███████████████████████████ (*Id.*) ██████████████████████ ████, as shown in the excerpt in Cisco's motion. (ECF No. 113 at 4.)

---

[3] In a footnote, Cisco notes that the '705 Patent was apparently being shopped around by a patent broker prior to November 11, 2016. (*Id.* at 3 n.2.) This is irrelevant, as Cisco does not even allege that any ████████ received any communications from this alleged patent broker regarding the '705 Patent.

In fact, the updated exhibits show Cisco's theory that ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Cisco's motion

offers no explanation for how this unlikely set of facts allegedly transpired.

But there is another critical flaw in Cisco's factual theory. As Cisco notes, ████████

████████████████████████████████████████████████████████████████

███████████████████████████████████ (ECF No. 113 at 3.) Cisco would have

us  believe  that  ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ Rather, according to Cisco, ██████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ No reasonable jury could adopt this factual conclusion.

Indeed, the fact that the updated disclosures appear to have ceased in 2021 is further

confirmation that Mr. McWilliams was only providing updated lists of ██████████ ██

██████████████████████████████████████████ That fact

explains why there was no update in January 2022 or thereafter. (*Id.*) Cisco is just making up an

unsupported narrative to fit a hoped-for but unavailable license defense.

Finally, Cisco itself implicitly acknowledges that ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████ In any case,

5

████████████████████████████████████

Mr. McWilliams has provided sworn testimony that explains exactly what he did and why and that ends the inquiry.

In short, Cisco cannot rely on the updated versions of ███████ alone to prove that the '705 Patent is a ████████████ because the fact that the '705 Patent was listed in email attachments labelled ███████ is not determinative of whether it was ████████████ ██████████ But this is the only argument Cisco can muster in support of its license defense. (*See* ECF No. 113 at 5 n.3 ("████████████████████████████ ████████████████████████████████ End of story.").) Cisco's motion should be denied.

## III.   <u>ARGUMENT</u>

### A.   <u>Cisco Has Not Established Standing to Enforce the Microsoft Agreement</u>

The Microsoft Agreement is governed by Washington state law. (ECF No. 113, Ex. 1 ¶ 5.8.) Under Washington law, a non-party to a contract, such as Cisco, does not have "standing to enforce the contract unless the party is an intended third-party beneficiary." *City of Tacoma v. Northshore Inv'rs., LLC*, 158 Wash. App. 1041, at *3 (2010). Cisco's motion does not even raise this issue, and thus Cisco has not established that it has standing to enforce the Microsoft Agreement. Cisco's motion should be denied on this basis alone.

### B.   <u>Cisco Has Not Shown that K.Mizra's Infringement Allegations Implicate the Microsoft Agreement</u>

Cisco is not the first patent defendant to attempt to use a convoluted Microsoft settlement agreement to shield its infringement. In *Dig. Reg of Tex., LLC v. Adobe Sys. Inc.*, Case No. C 12-1971 CW, 2013 WL 5402094, at *2-3 (N.D. Cal. Sept. 26, 2013), the defendant invoked a similar Microsoft license agreement to the one at issue here, asserted third-party beneficiary rights, and sought to enforce a license right to summarily end a patent infringement claim. The court held that

████████████████████████

there were genuine issues of fact as to whether the reliance on Microsoft technology in that case triggered the license provision and denied summary judgment. *Id.* at *3.

Similarly, in *Samsung Elecs. Co., Ltd. v. Imperium IP Holdings (Cayman) Ltd.*, No. CV 15-1059-CFC-CJB, 2021 WL 2004425, at *1 (D. Del. May 19, 2021), Samsung filed a separate action for breach of contract after being sued for patent infringement in Texas by Imperium. The underlying contract was between Imperium and Sony, and that contract included a similar structure to the Microsoft Agreement at issue here. In that case, Samsung invoked third-party beneficiary rights to assert that Imperium's infringement suit breached the Sony license. *Id.* The court held that there was a factual dispute as to whether the license grant extended to all infringement claims that implicate Sony products or only to claims where a Sony product meets a specific claim limitation. *Id.* The court therefore denied Samsung's motion for summary judgment on the basis that triable issues of fact existed. *Id.* at *2.

Cisco's motion does not explain the covenant on which it relies, or offer any substantive discussion of how K.Mizra's infringement allegations purportedly implicate Microsoft products covered by the Microsoft Agreement.[4] In fact, K.Mizra's infringement theories do not rely on Microsoft products as claim elements, but rather use Microsoft technology ***to confirm*** the presence of infringing functionality. This is clear from Cisco's own characterization of K.Mizra's infringement theory, explaining that "K.Mizra alleges that the accused Cisco products when running on top of the Microsoft Product are necessarily 'associated with a trusted platform module' because they ███████████████████████████████████████

---

[4] Cisco's reliance on Microsoft's objections to the subpoena issued by K.Mizra to show that the license is implicated is unavailing. (ECF No. 113 at 4-5, Exs. 13 & 14.) There is no evidence in the record that Microsoft was provided with a copy of K.Mizra's infringement contentions such that Microsoft could have evaluated whether they implicated the Microsoft Agreement. Microsoft's attorney's efforts to avoid a subpoena have no bearing on the facts of this case.

██████████████████." (ECF No. 113 at 2.) The "trusted platform module" is not itself a

Microsoft product, but Cisco's use of the Microsoft operating system confirms that Cisco **also** uses

a "trusted platform module." Thus, as in *Samsung*, Cisco cannot show as a matter of law K.Mizra's

infringement theory implicates the Microsoft Agreement, because K.Mizra does not directly

accuse any Microsoft technology of infringement. For this separate reason, Cisco's motion should

be denied. *Samsung*, 2021 WL 2004425, at *2. At a minimum, there is on this issue a disputed

question of fact and that too precludes the grant of summary judgement.

**C.     Cisco Has Not Proven that the '705 Patent is a ████████████**

Cisco cannot show that the '705 Patent is a ███████████████ That is not surprising, as

the '705 Patent cannot properly be considered a ██████████████ (*See generally* ECF

No. 123.) Cisco's motion does not seek to prove that ████████████████████

████████████████████████████. Instead, Cisco relies exclusively on

the fact that the '705 Patent was listed on subsequent email attachments purportedly related to the

Microsoft Agreement. (*See, e.g.*, ECF No. 113 at 5 ("████████████████████

████████████████████████████████████████

█████████") (footnote omitted).) But listing the '705 Patent on a subsequent version of

█████████ does not in and of itself bring the '705 Patent within the Microsoft Agreement's

definition of ████████████ Rather, the Microsoft Agreement states that ███████

████████████████████████████████████████

█████████ (*Id.*, Ex. 1 at MIZCIS00006246 (emphasis added).) The '705 Patent was not

listed on ████████ that was part of the original Microsoft Agreement and thus does not fall within

that definition.

Instead, Cisco must look to a separate provision in the Microsoft Agreement providing that

████████████████████████████████████████

████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████." (*Id.*, Ex. 1 at MIZCIS00006252.) But this provision is of no use

to Cisco, as the provision does not provide that ***only*** ███████████████ would be listed on

updated versions of ██████████ Said differently, there is nothing in the Microsoft Agreement that

precludes the listing of ████████████ on subsequently-produced versions of ██████████ Cisco's

argument also ignores the additional requirement for ████████████████████████████████

████████████████████████████████████████████████████████████ (*Id.*, Ex. 1 at

MIZCIS00006250.) Taken together, a reasonable jury could clearly conclude that ████████████

██████████████████████████████████████████████████████████████████████████

████████. On that basis too, then, Cisco's motion should be denied. *Heartbrand Holdings, Inc.*

*v. Whitmer*, No. SA-19-CV-358-HJB, 2021 WL 1947875, at *2 (W.D. Tex. May 14, 2021) ("A

dispute concerning a material fact is 'genuine,' and therefore sufficient to overcome a summary

judgment motion, 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

    In short, Cisco's only factual basis for asserting that the '705 Patent is a ████████████

████████ is the fact that ████████████████████████████████████████████████████

████████████████████████████████ But the Microsoft Agreement does not confer a license

or covenant based on whether a particular patent was listed on an email attachment having a

particular title. Instead, Cisco must prove that ███████████████████████████████████████

████████████████████████ Cisco's motion makes no attempt to do so, and the undisputed

record confirms that ████████████████████████████████████████████████████████████

██████████████ (ECF No. 123 at 8-9.)

██████████████████████████████████████████████

Cisco's license theory thus collapses under its own weight, as a reasonable jury could at least conclude that the interpretation of the updated versions of ████████ described above is reasonable (indeed, a clear-eyed evaluation of these documents shows that Cisco's interpretation strains credulity). But Cisco's problems do not end there.

First, Cisco's evidence in support of its license theory consists entirely of unauthenticated emails that post-date the Microsoft Agreement by sixteen months or more. While "[e]vidence presented at the summary-judgment stage need not be in admissible form . . . 'the party submitting the evidence [must] show that it will be possible to put the information . . . into an admissible form.'" *Zinter v. Salvaggio*, 610 F. Supp. 3d 919, 934 (W.D. Tex. 2022), *appeal dismissed*, No. 22-50800, 2022 WL 18587913 (5th Cir. Nov. 17, 2022) (quoting *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 522 (5th Cir. 2021)). Cisco is at least required to articulate a theory of admissibility for the McWilliams emails, which it has not done. Cisco thus has offered no competent evidence that the '705 Patent was ever mentioned in connection with the Microsoft Agreement at all.

Second, K.Mizra has submitted percipient testimonial evidence from Mr. McWilliams himself, along with iPEL CEO Brian Yates, confirming that K.Mizra's interpretation of the factual record is correct. (ECF No. 123, Exs. G & H.) Mr. McWilliams and Mr. Yates were listed in K.Mizra's Fed. R. Civ. P. 26(a)(1) disclosures no later than November 12, 2021, and will testify to these facts at trial if necessary. (Ex. A at 3.) Such declarations at least create issues of material fact that preclude summary judgment. Fed. R. Civ. P. 56(c)(4); *Dadfar v. Liberty Mut. Ins. Co.*, No. A-20-CV-071 AWA, 2021 WL 272216, at *3 (W.D. Tex. Jan. 27, 2021). Moreover, Cisco's objections to these declarations proves this point well.

Cisco objects to the McWilliams and Yates declarations on various grounds, none of which are valid. (ECF No. 113 at 5 n.3.) First, Cisco asserts that the declarations are "self-serving" and that the declarants "are not disinterested parties." (*Id.* at 1 n.1, 5 n.3.) But "an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011). Next, Cisco complains that the declarations "were produced too late." (ECF No. 113 at 5 n.3.) But this Court considers, for the purpose of summary judgment, declarations "obtained following the discovery deadline." *See, e.g.*, *Richardson v. Tex. Sec'y of State*, 485 F. Supp. 3d 744, 762 n.10 (W.D. Tex. 2020) *rev'd on other grounds*, 28 F.4th 649 (5th Cir. 2022). Cisco also alleges that the declarations are "rife with inadmissible hearsay, impermissible legal conclusions, inconsistent statements, and pure speculation." (ECF No. 113 at 5 n.5.) It is unclear which statements Cisco believes fall into these categories, as K.Mizra is relying on the testimony of Mr. McWilliams as the author of the McWilliams emails to explain their contents, and on the testimony of Mr. Yates as the CEO of iPEL concerning iPEL's patent due diligence and acquisition activities. Their sworn, factual testimony, based on personal knowledge, is precisely what is authorized by the Federal Rules to support or oppose summary judgment. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Further, Cisco itself seeks to rely on the McWilliams emails to prove its defense. But Cisco fails to explain why these out-of-court statements would be admissible at a trial. Further, Mr. McWilliams is prepared to testify at trial, based on his own personal knowledge, that Cisco's reading of the emails is

completely wrong. The Court therefore can and should consider the Yates and McWilliams declarations in ruling on the parties' motions for summary judgment.

In any case, the Court can ignore the declarations entirely and still deny Cisco's motion. As explained above, even taking the documents at face value with no explanatory testimony, Cisco's conclusion that the emails identify the '705 Patent as a ███████████████████ ██████████████ requires a series of increasingly outlandish assumptions that Cisco simply cannot justify.

Cisco's motion should be denied on the merits.

**D.**    **If the Court Determines that The '705 Patent is a "Covenanted Patent," the Microsoft Agreement Should Be Reformed Based on Mutual Mistake**

If the Court adopts Cisco's theory that Mr. McWilliam's act of listing the '705 Patent on a document titled ███████████ conclusively established as a matter of law the '705 Patent as a ████████████████ the Court should grant the equitable relief of reformation based on mutual mistake. Under Washington law, "mutual mistake can be grounds for reformation, an equitable remedy that brings a writing that is materially different from the parties' agreement into conformity with that agreement." *Ocean Gold Seafoods Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, No. C18-5425JLR, 2020 WL 6561611, at *4 (W.D. Wash. Nov. 9, 2020) (citing *GLEPCO, LLC v. Reinstra*, 307 P.3d 744, 752 (Wash. Ct. App. 2013)). Here, the parties' intent concerning ████████████████ in the Microsoft Agreement was to limit those assets to ████████████ ████████████████████████████████████████████████████████████ This intent is evident from the fact that ██████████████████████████████████ ████████████████████████████████████████████████████████████ ████ To the extent Mr. McWilliams identified the '705 Patent as a ██████████████ this was an error, as ████████████████████████████████████████████████. (ECF

12

████████████████████████████████████████

No. 123 at 8-9.) Rather, ████████████████████████████████████████, but if it is found as a matter of law not to have been, it should have been listed as an ████████ Accordingly, if the Court accepts Cisco's theory that merely listing the '705 Patent on "Exhibit C" transformed the '705 Patent into a ████████████ under the Microsoft Agreement, then the updated ████████ documents should be reformed to correctly categorize the '705 Patent as an ████████████ perhaps on a different exhibit.

E.    **Cisco's Alternative Theory of Relief Should Be Rejected**

Cisco asserts "[i]n the alternative, K.Mizra violated the Agreement by ████████████

████████████████████████████████████████████████████

████████████████████████████████ (ECF No. 113 at 5-6.) But this theory, too, requires as a threshold matter that Cisco establish standing as a third-party beneficiary and that Cisco prove K.Mizra's infringement theories implicate ████████████████ Cisco has not proven by undisputed evidence either of these predicate propositions for the reasons discussed in Sections A and B *supra*. Cisco's here too should thus be denied and the motion in its entirety denied.

IV.    **CONCLUSION**

K.Mizra respectfully requests that the Court deny Cisco's motion.

Dated: June 23, 2023                             Respectfully submitted,

By: /s/ *Matthew C. Holohan*
    Michael C. Smith
    Texas Bar No. 18650410
    michael.smith@solidcounsel.com
    Scheef & Stone, LLP
    113 E. Austin Street
    Marshall, TX 75670
    (903) 938-8900

    Anna Rebecca Skupin
    State Bar No. 24084272
    becca.skupin@solidcounsel.com
    Scheef & Stone, LLP
    200 North Travis Street, Suite 402
    Sherman, Texas 75090
    (430) 262-5660

    Robert R. Brunelli*
    CO State Bar No. 20070
        rbrunelli@sheridanross.com
    Paul Sung Cha*
    CO State Bar No. 34811
        pscha@sheridanross.com
    Patricia Y. Ho*
    CO State Bar No. 38013
        pho@sheridanross.com
    Matthew C. Holohan*
    CO State Bar No. 40996
        mholohan@sheridanross.com
    Bart A. Starr*
    CO State Bar No. 50446
        bstarr@sheridanross.com
    Angela J. Bubis*
    CO State Bar No. 58144
        abubis@sheridanross.com
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200
    Denver, CO 80202
    Telephone: 303-863-9700
    Facsimile: 303-863-0223
    litigation@sheridanross.com

    *Admitted pro hac vice*
    *Attorneys for Plaintiff K.Mizra LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 23, 2023, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned case were subsequently served on all counsel of record by electronic mail.

By: <u>*/s/ Matthew C. Holohan*</u>
Matthew C. Holohan*
CO State Bar No. 40996
mholohan@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223
litigation@sheridanross.com

*Admitted pro hac vice*
*Attorney for Plaintiff K.Mizra LLC*

15