PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| K.MIZRA LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>　　　　Defendant. | Civil Action No.: 6:20-cv-01031-ADA<br><br>**Jury Trial Demanded** |

**PLAINTIFF K.MIZRA LLC'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS OF AMBREEN SALTERS ON BEHALF OF PLAINTIFF K.MIZRA LLC**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................................................................... ii

**I.       ARGUMENT** ...................................................................................................................... 1

    **A.**       **The Lump-Sum Analysis Has No Basis** ................................................................. 1

    **B.**       **The Running Royalty Should Be Stricken** ............................................................ 3

ii

## TABLE OF AUTHORITIES

**Cases**

*Comcast IP Holdings I, LLC Sprint Commc'ns Co. L.P.*,
  No. 12-CV-0205-RGA,
  2015 WL 4730899 (D. Del. Aug. 10, 2015) .............................................................................. 3

*Env't Tex. Citizen Lobby v. Exxonmobil Corp.*,
  968 F.3d 357 (5th Cir. 2020) .................................................................................................... 2

*Function Media L.L.C. v. Google Inc.*,
  No. 2:07-CV-279-CE,
  2010 WL 272409 (E.D. Tex. Jan. 14, 2010) ............................................................................. 3

Cisco's Opposition (ECF No. 141, "Opposition") is tantamount to a supplement to the Salters Report, inserting and inferring an analysis into the lump sum calculation that simply is not there. The reason for this approach is clear—Ms. Salters did not conduct a proper lump sum analysis and Cisco now is scrambling to try and save her deficient opinion. It now seems only too obvious that Ms. Salters' lump sum analysis boils down to copying the purchase price of the Radix/Spectrum Sale. The defenses provided by Cisco for Ms. Salters reasonable royalty analysis provide weak excuses that are not supported by the documents or the evidence of this case. In short, Cisco's arguments only highlight the deficiencies of the Salters Report. K.Mizra's Motion (ECF No. 131) should be granted.

I. **ARGUMENT**

A. <u>The Lump-Sum Analysis Has No Basis</u>

Cisco now contends that Ms. Salters based her ▇▇▇ lump sum calculation on the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Opposition, p. 10.) But the Salters Report does not state that, nor is there any analysis set forth that provides that connection. The *only* support for the lump sum royalty amount of ▇▇▇ is in Paragraphs 32 and 98 of her report. There, Ms. Salters simply sets forth the lump sum conclusion, and cites StoneTurn Exhibit 2, which is stark in its brevity:



1

(Salters Report (ECF 130-1), p. 57.) Even considering the ▮▮▮▮▮▮▮▮, there is no analysis or discussion of how any of the paragraphs preceding Paragraph 98 relate to a lump sum calculation. (*See* Salters Report, ¶¶ 1-97.) K.Mizra should not be forced to infer what Ms. Salters' basis is for her opinions through vague referential language. *See, e.g., Env't Tex. Citizen Lobby v. Exxonmobil Corp.*, 968 F.3d 357, 374 (5th Cir. 2020) (characterizing reference to "hundreds of pages" of plaintiff's expert report as insufficient).

Even if the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Paragraphs 50-59 could be an inferred basis and cross-examination fodder, fatally missing is any analysis or methodology for how these agreements should be applied to calculate a ▮▮▮▮ amount. These agreements were for amounts ranging from ▮▮▮▮ up to ▮▮▮▮▮, and ran the gamut of factual scenarios involving litigations or whole portfolio licenses. (Salters Report, ¶¶ 50-59; *see also* Motion (ECF No. 130, pp. 9-14 (discussing comparability factors and lack thereof in the agreements).) Indeed, Ms. Salters does not explain how the lump sums of ▮▮▮▮ and ▮▮▮▮ in the two ▮▮▮▮ ▮▮▮▮▮▮▮▮ agreements play into the lump sum calculation. (Salters Report, ¶¶ 32, 67, 98.) Moreover, purchase price can be relevant, but again, Ms. Salters did not state in her Report that the ▮▮▮▮▮▮ price was the determining factor or only consideration by which she came to a ▮▮▮▮ lump sum amount. (Opposition (ECF No. 141), pp. 7-8 (citing *Robocast, Inc. v. Microsoft Corp.*, No. 10-1055-RGA, 2014 WL 202399, at *2 (D. Del. Jan. 16, 2014) (where the opinion does not set forth any facts on why the sale in question was comparable other than it was similar technology)). Here, her Report says nothing – K.Mizra would be cross-examining Ms. Salters on the statements in Cisco's Opposition, not her Report.[1] There is nothing in her Report

---

[1] Moreover, K.Mizra has never argued that ownership has fewer rights than a license, nor that Ms. Salters is required to quantify ownership rights. (Opposition, p. 7.) Instead, Ms. Salters has never

2

for why and how she settled upon a ▮▮▮ lump sum royalty and her sum opinion should be stricken.[2]

B. **The Running Royalty Should Be Stricken**

What remains is Ms. Salters' ▮▮▮ running royalty calculation up until the date of trial. However, such a damage calculation directly contradicts Cisco's own preference for a ▮▮▮ ▮▮▮ and could be stricken on this basis alone. (Motion (ECF No. 130), p. 3 (citing Hamilton Deposition); K.Mizra's Opposition to Cisco's Motion to Exclude Pellegrino (ECF No. 146), pp. 19-21.)

Nevertheless, with respect to the exclusion of ISE Hardware revenue, Cisco's claims that the ▮▮▮ in the 956 Workbook was produced because it is "maintained in the course of Cisco's business." (Opposition, pp. 6-7.) That does not explain why it was produced in the first place, or why it is included on the ▮▮▮ page of the 956 Workbook, if it is irrelevant:



---

explained how ownership is determinative of purchase price, and how that, in turn, is relevant to the hypothetical negotiation here and the cases Cisco cites here are easily distinguishable. In *Function Media*, the plaintiff agreed to not use the purchase price of acquisitions of entire companies, but rather was allowed to opine on acquisition agreements for the limited purposes of showing preferred licensing structure and what amount defendant was willing to pay to exclude competitors. *Function Media L.L.C. v. Google Inc.*, No. 2:07-CV-279-CE, 2010 WL 272409, at *2 (E.D. Tex. Jan. 14, 2010). In *Comcast IP Holdings I, LLC*, defendants moved to exclude the damages award because it did not use a mathematical formula. *Comcast IP Holdings I, LLC Sprint Commc'ns Co. L.P.*, No. 12-CV-0205-RGA, 2015 WL 4730899, at *6-7 (D. Del. Aug. 10, 2015) (where also plaintiff's damages expert did explain the considerations that led to her damages figure, including that "factors related to uncertainty at the time would lead to a substantial discount on the purchase price of the transaction"). Neither of those situations are here present.

[2] Cisco clarifies in its Opposition that Ms. Salters' lump sum opinion was not limited to the date of trial. (Opposition, p. 11 ("Nothing in paragraph 32 or anywhere else in her report says that her lump sum should only cover damages through the date of trial."); *see also* Motion (ECF No. 130), pp. 2-3.) In light of this clarification, K.Mizra has nothing further on this issue.

3



This leaves only the ▮▮▮▮ to exclude the ISE Hardware revenue ▮▮▮▮ K.Mizra's damages expert report and they contradict Mr. Boyle's Fed. R. Civ. P. 30(b)(6) testimony. (Opposition, pp. 6-7; Motion (ECF No. 130), p. 8; Salters Report (ECF No. 130-1), ¶ 103, n. 199, ¶ 20, n. 30 (citing ▮▮▮▮.) In view of the actual evidence Cisco produced in discovery, Ms. Salters has no independent basis to exclude the hardware revenue. (Motion, pp. 8-9.)

Cisco also dismissively characterizes K.Mizra's licensing activities as ▮▮▮▮ because there "aren't many" licenses to the '705 Patent. (Opposition, pp. 8-9.) That is neither a factual basis nor a methodology by which to judge what "many" means. To simply conclude that Ms. Salters "made no errors" on this basis flies in the face of Fed. R. Evid. 702. (Motion, p. 14; Salters Report, ¶ 78.)

Next, just because Ms. Salters' statements about Cisco's commercial success and the maturity of the NAC market are "general" does not mean they are exempted from meeting Fed. R. Evid. 702. (Opposition, p. 9.) That ███████████████████████████, not one, does not advance reliability, especially where that second document appears to be even less relevant than CISCO-0000263. It is a third-party webpage from an entity named Radware that is titled, "History of Network Security Methods." The article does not mention NAC, whether the relevant market is mature or not, or discuss competitors. (Ex. 6.) Ms. Salters also never explains who Radware is, or why the article is a reliable source.

Similarly, Ms. Salters cannot conclude that the Accused Products have ███████ ███████ without proffering a way to measure ███████ While common sense may suggest profitability and revenues are indicators, Ms. Salters does not indicate in what context to judge these metrics (e.g., size of company, market, industry). Even if posture checking was an ████████████████████████████████ those are not the challenged opinions in Paragraphs 80-81. (Opposition, p. 9 (citing deposition testimony regarding a different section of Salters' Report).) Similarly, her ██████ interview with Cisco employees is a fact, not a suggestion, and K.Mizra was told it was used to ██████████████████████████████████████ ██████. (Opposition, p. 10.) K.Mizra is surprised to learn now that the interview included potentially other substantive discussions that were never disclosed. (*Id.*) Cisco's meritless and unsupported arguments only emphasizes that these opinions are utterly unsupported in fact or methodology and should be stricken.

Finally, the 956 Workbook is the only data source that makes any sense, quite literally. (*See* K.Mizra's Opposition to Cisco's Motion to Exclude (ECF No. 146), pp. 1-16.) Even if the Court finds a running royalty up until trial appropriate (which it is not), the 928/929 Workbooks

do not reliably reflect revenue as compared to the 956 Workbook, as compared and summarized here:

- The data in the 928/929 Workbooks is unintelligible other than the ███ listed. (K.Mizra's Opposition to Cisco's Motion to Exclude Pellegrino (ECF No. 146), pp. 4-17.)

- ███████████████████████████████████████████. (Boyles Dep. (Ex. 7), 78:17-23.)

- The 928/929 Workbooks ███████████████████████████████.[3] (Opposition, pp. 4-5; *see also* Boyles Dep. (Ex. 7), 218:2-7); 1 CHISUM ON PATENTS, § 20.07 (2023) (the profitability of accused products is relevant in the hypothetical negotiation as evidence of anticipated profits and citing *Aqua Shield v. Inter Pool Cover Team*, 775 F.3d 766, 772 (Fed. Cir. 2014)).

- ███████████████████████████████████████████ ███████████████ Pellegrino Report, p. 44.)

- The 956 Workbook does include ███████████████ (Boyles Dep. (Ex. 7), 227:1-4.)

- The 956 Workbook provides ███████████████████████████████ ███████████ (Boyles Dep. (Ex. 7), 181:3-:5-186:17; (ECF No. 146, p. 13 (summary page of 956 Workbook).)

Ms. Salter's reliance upon the 928/929 Workbooks is just factually wrong and thus unreliable, meaning her reasonable royalty that is based thereon should be stricken.

---

[3] Ms. Salters only reviewed ███████████████████████████████. She did not consider ███████████████████████. (Opposition, p. 5; *see* Salters Report (ECF No. 130-1), pp. 41-42.)

6

Dated: June 30, 2023                     Respectfully submitted,

                                                                                            By: */s/ Patricia Y. Ho*

                                                                                                Michael C. Smith
                                                                                                Texas Bar No. 18650410
                                                                                                michael.smith@solidcounsel.com
                                                                                                Scheef & Stone, LLP
                                                                                                113 E. Austin Street
                                                                                                Marshall, TX 75670
                                                                                                (903) 938-8900

Anna Rebecca Skupin
State Bar No. 24084272
becca.skupin@solidcounsel.com
Scheef & Stone, LLP
200 North Travis Street, Suite 402
Sherman, Texas 75090
(430) 262-5660

Robert R. Brunelli*
CO State Bar No. 20070
    rbrunelli@sheridanross.com
Paul Sung Cha*
CO State Bar No. 34811
    pscha@sheridanross.com
Patricia Y. Ho*
CO State Bar No. 38013
    pho@sheridanross.com
Matthew C. Holohan*
CO State Bar No. 40996
    mholohan@sheridanross.com
Bart A. Starr*
CO State Bar No. 50446
    bstarr@sheridanross.com
Angela J. Bubis*
CO State Bar No. 58144
    abubis@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223
litigation@sheridanross.com

    *Admitted pro hac vice
    *Attorneys for Plaintiff K.Mizra LLC*

## CERTIFICATE OF SERVICE

I certify that on June 30, 2023 the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned case were subsequently served on all counsel of record by electronic mail.

By: */s/ Patricia Y. Ho*
Patricia Y. Ho*
CO State Bar No. 38013
pho@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
303-863-9700
litigation@sheridanross.com

*\*Admitted pro hac vice*
*Attorney for Plaintiff K.Mizra LLC*