**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| K.MIZRA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. NO. 6:20-CV-01031-ADA |
| | ) | |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO
EXCLUDE K.MIZRA'S DAMAGES EXPERT**

# TABLE OF CONTENTS

                                                                                            **Page**

I. INTRODUCTION ...................................................................................................................1

II. LEGAL STANDARDS ..........................................................................................................1

III. ARGUMENT ..........................................................................................................................2

      A. Mr. Pellegrino used incorrect facts and data to overstate the royalty base by [redacted] and K.Mizra's opposition fails to show otherwise ...................................................................................................................3

           1. Mr. Pellegrino used overinclusive sales data rather than actual U.S. sales to customers who purchased ISE and AnyConnect software at the accused Premier-level licenses ...................................................................3

           2. Mr. Pellegrino incorrectly included sales of non-accused hardware appliances ........................................................................................................5

      B. Mr. Pellegrino's methodology is unreliable, and K.Mizra's opposition fails to show otherwise ...................................................................................................7

           1. Mr. Pellegrino failed to apportion .................................................................7

           2. Mr. Pellegrino conflated a running profit apportionment analysis with a lump sum royalty to shoe-horn projected profits beyond trial ..........8

      C. K.Mizra's misrepresentations of the record and history do not save Mr. Pellegrino from being excluded ...............................................................................9

IV. CONCLUSION ....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Seating Co. v. USSC Group, Inc.*,
514 F.3d 1262 (Fed. Cir. 2008)..................................................................................................6

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)...................................................................................................................3

*Daedalus Blue LLC v. SZ DJI Technology Company, Ltd.*,
No. W-20-CV-00073, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022).......................................1

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)................................................................................................................1, 8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)............................................................................................3, 7, 8

*Longhorn HD LLC v. Netscout Sys., Inc.*,
No. 2:20-CV-00349-JRG-RSP, 2022 WL 903934 (E.D. Tex. Mar. 27, 2022) .........................8

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)..................................................................................................9

*Pax v. Brush Engineered Materials, Inc.*,
555 F.3d 383, 388 (5th Cir. 2009) ............................................................................................1

*Protradenet, LLC v. Predictive Trade, Inc.*,
Civil No. 6:18-CV-00038-ADA, 2019 WL 6499488, at *3 (W.D. Tex. Oct. 11, 2019) .....................................................................................................................................2

*Rite-Hite Corp. v. Kelley Co. Inc.*,
56 F.3d 1538 (Fed. Cir. 1998)....................................................................................................6

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015)..............................................................................................1, 2

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)..................................................................................................8

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
778 F.3d 1365 (Fed. Cir. 2015), *vacated on other grounds sub. nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 577 U.S. 1099 (2016), *reinstated*, 824 F.3d 1344 (2016)................................................................................................6

*Westinghouse Co. v. Wagner Mfg. Co*,
   225 U.S. 604 (1912)................................................................................................................6

**Statutes**

35 U.S.C. § 284..............................................................................................................................3

**Other Authorities**

Fed. R. Evid. 702 ...........................................................................................................................1

## I.     INTRODUCTION

K.Mizra fails to offer a meaningful response to or defense of any of the four significant errors of its damages expert. To recap, Mr. Pellegrino (1) relied on inflated, incorrect sales data that included worldwide and unaccused sales although accurate data was available, (2) further inflated his royalty base by including hardware sales, (3) failed to apportion correctly for the value of the patented invention, and (4) disguised what is really a running royalty long past trial as a lump sum, claiming the parties would have negotiated the amount in 2012 or 2015 based on 14–17 years of projected accused sales, and not paid that lump sum until 2020. Because these errors are egregious and fatally undermine his opinions, the Court should exclude Mr. Pellegrino.

## II.     LEGAL STANDARDS

The parties agree that the proponent, here K.Mizra, must establish[1] that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015) (district courts may exclude evidence based on unreliable principles or methodology insufficiently tied to facts of the case). As gatekeeper, this Court "ensure[s] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993).

To the extent K.Mizra suggests that experts are entitled to have any of their opinions admitted even if "shaky," and that the questions Cisco has raised "relating to the *bases* and *sources*

---

[1] *Daedalus Blue LLC v. SZ DJI Technology Company, Ltd.*, No. W-20-CV-00073, 2022 WL 831619, at 3 (W.D. Tex. Feb. 24, 2022) (citing *Pax v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

of an expert's opinion," go to weight rather than admissibility, ECF No. 146 ("Opp.") at 4 (citing *Protradenet, LLC v. Predictive Trade, Inc.*, Civil No. 6:18-CV-00038-ADA, 2019 WL 6499488, at *3 (W.D. Tex. Oct. 11, 2019)), K.Mizra misstates the law and the nature and gravity of the problems Cisco has identified. *Protradenet* was a bench trial where the criticisms involved unaudited financials and failure to inspect totals. *Id.* This is a jury trial whereby using the wrong data Mr. Pellegrino overstated the accused royalty base by hundreds of millions of dollars.

K.Mizra must, but cannot, satisfy the threshold requirement that the expert's "methodology is sound and the evidence relied upon is sufficiently related to the case." *Summit 6,* 802 F.3d at 1299. *See also Protradenet*, 2019 WL 6499488, at *3 (citing *Summit 6*, 802 F.3d at 1295 "a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case.").

### III.  ARGUMENT

K.Mizra concedes that the accused combination of Cisco products requires at least (1) Premier level licenses for two Cisco software products (ISE and AnyConnect), (2) running on top of Microsoft Windows 10 or 11, and (3) both products further configured in order to practice the accused "posture check" feature. *See* ECF No. 128 ("Mot.") at 1–3. K.Mizra further concedes that the Premier level license levels for ISE and AnyConnect provide other, unaccused functionality, and does not even attempt to argue that there is any evidence that the accused posture check feature drives purchases of these Premier licenses.

In addition, K.Mizra concedes that the footprint of the invention resides in the software. *See* Opp. at 15. K.Mizra's story about hardware is inconsistent (*see* ECF No. 139 at 3 (defining the "Accused System" to include Cisco SNS hardware devices)), but in its opposition to this

motion, K.Mizra agrees that the "Accused Products are software with subscription level licenses," and that ISE hardware is not accused of satisfying any claim limitation. Opp. at 15.

### A. Mr. Pellegrino used incorrect facts and data to overstate the royalty base by ███████████████████, and K.Mizra's opposition fails to show otherwise.

K.Mizra's opposition fails meaningfully to address the fact that Mr. Pellegrino dramatically overestimated Cisco's accused sales revenue by relying on the wrong data, and then making speculations based on such data—even though the actual (and far more modest) data was available. Mot. at 11–12. The opposition also offers no response to the fact that Mr. Pellegrino further inflated the revenue base ███████████████████ more by including hardware sales. Mot. at 12–13. The damages experts both understood that the hardware product was not accused of infringing, but more importantly, even if it was, the hardware sales Mr. Pellegrino included were not limited to customers who also purchased the accused combination. This mismatch between reality and the facts and data Mr. Pellegrino used is indefensible. *See, e.g.*, *LaserDynamics*, 694 F.3d 51, 79–81 (Fed. Cir. 2012) (ordering retrial and, on remand, precluding expert from presenting a theory that "finds no support in the facts in the record"); *see also Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("[W]hen indisputable record facts contradict or otherwise render the [expert's] opinion unreasonable, it cannot support a jury's verdict.").

### 1. Mr. Pellegrino used overinclusive sales data rather than actual U.S. sales to customers who purchased ISE and AnyConnect software at the accused Premier-level licenses.

It is undisputed (and beyond dispute) that Section 284 authorizes reasonable royalty damages only for activities that constitute infringement, 35 U.S.C. § 284, and that the royalty base thus cannot include foreign sales or domestic sales of non-accused products. Mot. at 11–12. Instead of relying on data that was concededly available identifying accused sales, specifically (a) U.S. sales data for the accused products (b) at the accused license levels (c) to holders of both required

3

licenses (ISE and AnyConnect), Mr. Pellegrino decided to calculate his royalty base beginning with ***worldwide*** data for ***all*** ISE and AnyConnect sales at ***all*** license levels. Mot. at 11–12. Furthering his mistake, Mr. Pellegrino only adjusted his starting point to estimate (a) U.S. sales (b) at the accused license levels, resulting in a clearly overinclusive royalty base that is not limited to holders of ***both*** required licenses. K.Mizra concedes that this resulted in "revenue numbers" that "were orders of magnitude larger" than the correct sales data, limited to accused sales. Opp. at 14.

K.Mizra's opposition to this point consists of over eleven pages of misleading accounts of discovery disputes and the record.[2] The only substantive argument it makes for why Mr. Pellegrino did not rely on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even with the benefit of trying to make both of these mistaken points for the second time, *see* ECF No. 130 (K.Mizra's Mot. Exclude Salters) at 5 and ECF No. 141 (Cisco's Opp. to Mot. Exclude Salters) at 4–6, K.Mizra still fails to explain why this would make these spreadsheets unsuitable as a source of accused ***revenue***. It would not.

1. These spreadsheets are the only reliable source of ***revenue***, and other documents provide profit, cost, and margin information. Far from testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as K.Mizra wrongly claims, Opp. at 17, Mr. Boyles testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that Cisco produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 15 (Boyles Dep. Excerpts) at 181:3–19; 221:11–224:9. In the two pages immediately preceding the range K.Mizra quotes, Opp. at 17, Mr. Boyles explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] *Infra* pp. 7–10.

4

███████████████████████████████████████ Ex. 15 at 222:22–224:9.[3]

2. K.Mizra's argument that Mr. Pellegrino properly disregarded ██████████

████████████████████████████████████████████████████████████████████████

██ is similarly backwards. Even accepting this deferred revenue model *arguendo*, K.Mizra offers no support for the notion that royalty payments are (commonly, or ever) tied to when a licensee recognizes revenue on its income statement or under GAAP accounting rules, instead of when the licensee actually receives payment from its customers. To the contrary, and as Cisco's expert explained, ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████ ECF No. 130-1 (Salters Rep.) ¶ 122; Ex. 16 (Salters Dep.) at 147:4–148:17.

There is thus no defense for Mr. Pellegrino's decision to inflate the royalty base by disregarding the available U.S. revenue data limited to the accused sales, and instead relying on worldwide data that concededly included unaccused sales and attempting (but failing) to make adequate adjustments to estimate accused sales. His opinion should be excluded.

### 2. Mr. Pellegrino incorrectly included sales of non-accused hardware appliances.

K.Mizra's opposition on this point is incomprehensible. It concedes that the "Accused Products are software with subscription level licenses;" that ISE hardware is not accused of satisfying any claim limitation; that ISE hardware can run non-accused license levels of ISE software; and that customers can use ISE hardware without any version, let alone the accused version, of AnyConnect. Opp. at 15; Mot. at 3, 12. K.Mizra also does not dispute the lack of any

---

[3] Ms. Salters' report is one example illustrating the feasibility of this method: ████████████
████████████████████████████████████████████████████████████████████████
████████████████████ ECF No. 130-1 ¶¶ 83–84, 123 & Exs. 1–2; *see* ECF No. 141 at 5.

5

evidence whatsoever that the accused posture check feature drives *any* sales, let alone sales of ISE hardware appliances. Mot. 12. It does not even dispute that in order for Mr. Pellegrino to include *any* hardware sales in his royalty base, he had to have a basis to treat them as convoyed sales. *See id*. at 3, 12–13. As a result, the fact that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 18, is no excuse for including them.

Instead, K.Mizra's entire argument seems to be that Mr. Pellegrino's inclusion of hardware sales in his royalty base was proper because he did not include all hardware revenue but only the hardware revenue ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. But that is, in fact, ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ because, for example, the customer did not also purchase premier licenses to both ISE and AnyConnect. Mot. at 3 (citing Pellegrino Dep. at 234:21–239:20).[4] That does not even come close to the standard K.Mizra must meet to include hardware in the royalty base. Hardware cannot be included because K.Mizra has properly conceded that the footprint of the invention is software. Similarly, K.Mizra cannot claim the hardware as a convoyed sales, which requires K.Mizra to prove that the invention is the basis for customer demand for the unaccused hardware. *Westinghouse Co. v. Wagner Mfg. Co*, 225 U.S. 604, 615 (1912). And it certainly does not even attempt to show that there was a functional relationship between the hardware and the invention. *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008); *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1998); *see also Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375–76 (Fed. Cir. 2015), *vacated on other grounds sub. nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 577 U.S. 1099 (2016), *reinstated*, 824 F.3d 1344, 1350 (2016). Mr. Pellegrino's opinion

---

[4] Cisco has made clear that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

should be excluded because of his indefensible inclusion of hardware sales in his royalty base.[5]

### B. Mr. Pellegrino's methodology is unreliable, and K.Mizra's opposition fails to show otherwise.

#### 1. Mr. Pellegrino failed to apportion.

K.Mizra tries in vain to defend Mr. Pellegrino's failure to apportion. It implicitly concedes that Mr. Pellegrino is not aware of ***any*** Cisco customers who actually use the accused products in the accused way and that there is ***no evidence*** of specific customers who have ***ever*** used the accused Cisco software with Microsoft Windows devices. Mot. at 17–18. K.Mizra also cannot and does not dispute that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. These concessions are fatal. Mot. at 7, 14–18.

K.Mizra's entire defense consists of attributing Mr. Pellegrino's failed apportionment to its other expert Dr. Cole. K.Mizra falsely contends that because Dr. Cole is a technical expert who made the "technological assessment" of the apportionment values that Mr. Pellegrino used, Mr. Pellegrino's use of these values—and those values themselves—are beyond scrutiny under *Daubert*.[6] Opp. at 18. Not so. Dr. Cole pulled his numbers out of thin air. Mot. 6–7, 16–17. And Mr. Pellegrino has an independent duty to provide credible economic analysis to support his conclusions. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012). The only case K.Mizra cites in support of its untenable position merely holds that a damages expert may rely on a technical expert's opinion about the technical importance of the patent-in-suit to

---

[5] To the extent K.Mizra's newly minted definition of the "Accused System" includes Cisco Secure Network Server Hardware, the experts would have to reduce their calculations even further to remove from the accused revenue base those customers who purchased Premier license levels to the ISE and AnyConnect software but did not run ISE on the SNS hardware appliance.
[6] K.Mizra also wrongly says Cisco "chose not to challenge any aspects of Dr. Cole's opinions." Opp. at 18. *See* Mot. at 16–17 (challenging his failure to apportion in a defensible manner).

support the damages expert's apportionment analysis. *Longhorn HD LLC v. Netscout Sys., Inc.*, No. 2:20-CV-00349-JRG-RSP, 2022 WL 903934, at *3 (E.D. Tex. Mar. 27, 2022). It does not say that a damages expert is excused from reviewing and considering the reasonableness (or here, the demonstrable *un*reasonableness) of an apportionment analysis. And it certainly does not alleviate patentees' damages experts of their burden under *Daubert* to "sufficiently tie the expert testimony on damages to the facts of the case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (cleaned up) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 591 (1993)). K.Mizra has failed to meet this burden here, and Mr. Pellegrino's testimony should be excluded for his failure to apportion. *See* Mot. at 14–18.

### 2. Mr. Pellegrino conflated a running profit apportionment analysis with a lump sum royalty to shoe-horn projected profits beyond trial.

Mr. Pellegrino's lump sum analysis wrongly excluded the actual, modest licenses to the patent. Mot. at 8, 18–21. K.Mizra doesn't dispute that a lump sum analysis would begin with "[a]ctual licenses to the patented technology," which are generally the most "highly probative as to what constitutes a reasonable royalty for those patent rights," *LaserDynamics, Inc.*, 694 F.3d 51 at 79; Mot. at 19, and also concedes that Mr. Pellegrino did not consider the modest license agreements and Radix sale relevant to his analysis. Opp. at 19. It provides no support for why these agreements licensing the same patent in similar contexts or selling the same patent close to the date of hypothetical negotiation are not relevant.

Similarly, K.Mizra provides no support for its notion that its profit apportionment analysis and opinion should be based on speculations about profits through the patent's expiration in 2029. Neither of K.Mizra's selective quotes from the deposition of Mr. Hamilton nor its three paragraph block quote from *Lucent* explains why—or how—a hypothetical negotiation in 2012 for a fully paid-up lump sum payment would take into consideration, let alone rely on, speculation about

8

profits *seventeen years* into the future. Yes, a fully paid lump sum may provide a license for the full term of the patent. That does not mean—and K.Mizra does not show—that parties in this case would base the *amount* of that lump sum on speculations about the licensee's profits during the life of the patent, including six years beyond trial.

*Lucent*, at the page K.Mizra cites, explains that the "willing licensor-willing licensee approach" is "*based **not** on the infringer's profit,* but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009) (emphasis added). This approach asks what payment the parties would have agreed to "had they successfully negotiated an agreement *just before infringement began*." *Id*. at 1324 (emphasis added). K.Mizra concedes that the hypothetical negotiation would have taken place five or eight years earlier, but insists that the royalty payment (in the form of a milestone payment) would be the date the Complaint was filed in 2020 (or 2021). Opp. at 21. Neither law nor facts produced in this case provide any support for this approach, and K.Mizra's opposition provides no defense of Mr. Pellegrino's flawed and unreliable methodology. His testimony should accordingly be excluded.

    **C.**    **K.Mizra's misrepresentations of the record and history do not save Mr. Pellegrino from being excluded.**

The majority of K.Mizra's opposition consists of misrepresentations of the record and history. None of these misstatements, even if they were true, would excuse Mr. Pellegrino's flawed methodology and factual errors. To keep the record clear, Cisco addresses a few illustrative misrepresentations. For example, K.Mizra wrongly states that Mr. Boyles testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Opp. at 13–14. Not so. Read in context, the quoted testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 15 at 205:5– 207:7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ K.Mizra never

9

asked Mr. Boyles whether the ISE Hardware tab included any bundled ISE software, and ▮

▮ Ex. 15 at 222:22–224:9.

Next, according to K.Mizra, the earliest possible damages date is the date the Complaint was filed in 2020. Opp. at 21. Yet, during discovery, it demanded sales data for the six years preceding the Complaint, which Cisco still endeavored to provide, and now K.Mizra attempts to excuse its expert's failure to rely on the correct, available data by claiming that the correct spreadsheets did not contain data for the relevant time period.[7] K.Mizra's claim that Cisco "refused to produce information for the relevant damages period," Opp. at 9–10, is demonstrably wrong and disproven by K.Mizra's own screenshots in its brief, which show that the sales spreadsheets that Cisco produced as early as March *2014* (Opp. at 7, 9), December 2015 (Opp. at 8) and November 2018 (Opp. at 5). The claim is also disproven by the exhibit K.Mizra cites to in support (ECF No. 128-10), which is a March 22 document production email that explains:

> These documents contain complete data for ISE and AnyConnect from 11/11/2021 onward, which, as we have expressed, is the only potentially relevant damages period. ***There is also data from July 2015 onward, but for that period, we are awaiting additional data from the archives for the period from July 2015 to June 2016.***

K.Mizra is grasping at straws trying to defend its expert's indefensible failure to rely on the correct data and use an economically sound methodology. Its characterizations of the record are demonstrably wrong and cannot excuse Mr. Pellegrino's incompetence to testify.

## IV.   CONCLUSION

Cisco respectfully asks the Court to exclude Mr. Pellegrino's report and testimony.

---

[7] ▮

10

Dated: June 30, 2023                              Respectfully submitted,


                                                  By: */s/ Melissa R Smith*
                                                      Melissa R. Smith (State Bar No. 24001351)
                                                      melissa@gillamsmithlaw.com
                                                      GILLAM & SMITH LLP
                                                      303 South Washington Avenue
                                                      Marshall, TX 75670
                                                      Telephone: 903.934.8450
                                                      Facsimile: 903.934.9257

                                                      Elizabeth R. Brannen (*Pro Hac Vice*)
                                                      ebrannen@stris.com
                                                      Kenneth J. Halpern (*Pro Hac Vice*)
                                                      khalpern@stris.com
                                                      STRIS & MAHER LLP
                                                      777 S. Figueroa St, Ste 3850
                                                      Los Angeles, CA 90017
                                                      Telephone: (213) 995-6800
                                                      Facsimile: (213) 216-0299

                                                      Jhaniel James (Pro Hac Vice)
                                                      jjames@stris.com
                                                      STRIS & MAHER LLP
                                                      111 N Calhoun St, Ste 10
                                                      Tallahassee, FL 32301
                                                      Telephone: (213) 995-6800
                                                      Facsimile: (813) 330-3176

                                                      *Attorneys for Defendant*
                                                      *Cisco Systems, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on June 30, 2023, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned case were subsequently served on all counsel of record by electronic mail.

<i>/s/ Melissa R. Smith</i><br>
Melissa R. Smith