**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| K. MIZRA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:20-cv-01031-ADA |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CISCO SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO SUPPLEMENT EXPERT REPORT OF DR. PAUL CLARK**

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | FACTUAL BACKGROUND | 1 |
| II. | ARGUMENT | 4 |
| III. | CONCLUSION | 8 |

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Complaint of C.F. Bean L.L.C.*,
 841 F.3d 365 (5th Cir. 2016) ...................................................................................................8

*Geiserman v. Macdonald*,
 893 F.2d 787 (5th Cir. 1990) ...................................................................................................4

*Guerra v. United States*,
 2019 WL 7761443 (W.D. Tex. Nov. 7, 2019)..........................................................................6

*Kaist IP US LLC v. Samsung Electronics Co., Ltd.*
 2018 WL 1833341 (E.D. Tex. Apr. 17, 2018).......................................................................6, 7

*Reliance Ins. Co. v. La. Land & Expl. Co.*,
 110 F.3d 253 (5th Cir. 1997) ...................................................................................................4

*Villavicencio v. BC Operating, Inc.*,
 2018 WL 11471780 (W.D. Tex. Sept. 11, 2018)......................................................................7

**Statutes**

35 U.S.C. § 273................................................................................................................3, 5, 7

Defendant Cisco Systems, Inc. ("Cisco") respectfully moves for leave to serve the attached brief supplement to the non-infringement report of its expert, Dr. Paul Clark. *See* Ex. 1 (Supplement to May 12, 2023 Expert Report of Paul Clark (Non-Infringement), referred to as the "Supplemental Report"). The supplement introduces no new technical or factual matter. It identifies a new legal basis for facts previously identified in Dr. Clark's opening report—in response to a new infringement theory. Good cause to permit the supplement exists because it refutes a theory K.Mizra raised for the first time on summary judgment.

**I.     FACTUAL BACKGROUND**

Throughout this case, K.Mizra has accused Cisco's ISE and AnyConnect products, *used together* in the right permutations. K.Mizra presented this theory in its infringement contentions, *e.g.*, Ex. 2 (10/5/21 Final Infringement Contentions) at Ex. A, pp. 9-14 (Claim 1[b]), 105 (Claim 12[c] (citing Claim 1[b])), and 112 (Claim 19[c] (citing Claim 1[b])), discovery, *e.g.*, Ex. 3 at 2 ¶ 7 (requests for production defining AnyConnect as among the accused products), and the report of its expert Dr. Eric Cole, ECF No. 119-3 (Cole Report) at ¶¶ 22-23, 84-97; *see also* ECF No. 119-6 (Appendix C to Cole Report, claim chart) at 1 ("Cisco Systems, Inc. Identity Services Engine ("ISE") and related software components and hardware appliances, including Cisco AnyConnect Secure Mobility Client (Cisco Secure Client), Adaptive Security Appliances, and Secure Network Server Appliances [], infringe the asserted claims of U.S. Patent No. 8,234,705); 10, 15-16 (Claim 1[b]) ("The trusted computing base (TCB) is part of the operating system that gets installed on a computer such as Windows 11. Since AnyConnect installs on a Windows Computer it would interface with and contact the trusted computing base that contains a TPM."), 50 (citing description of patch remediation management from Cisco AnyConnect Secure Mobility Client Administration Guide, Release 4.0), 57 (citing description of quarantine and remediation from Advanced AnyConnect Deployment and Troubleshooting with ASA), 129 (Claim 12[c]), and 140 (Claim

1

19[c]); *see also, e.g., id.* at 31, 38, 48 nn.2-4, 54, 116 (citing AnyConnect source code); *see also* ECF No. 119-5 (Cole Dep. Tr.) at 25:16-20,[1] 113:1-12,[2] 221:17-22.[3] To avoid summary judgment of noninfringement, however, K.Mizra recently shifted gears.

To avoid summary judgment, K.Mizra suggested for the first time that it would try to advance an infringement theory against ISE alone. *See* ECF No. 139 (Opp. Br.) at 4 (arguing, in the same paragraph, that the "Cisco ISE and AnyConnect software products provide computer instructions, and those instructions cause the Accused System to perform each of the recited functions, as explained in Dr. Eric Cole's expert report on infringement and accompanying claim chart," and also that "Dr. Cole has shown ISE, as provided by Cisco, meets all limitations of claim 19 in a customer environment"). Elsewhere, K.Mizra's opposition suggested it was standing by its original theory, contending that the ISE and AnyConnect products infringe together: "Specifically, Cisco makes, uses, sells, and offers to sell in the United States Cisco's [ISE] as sold and employed in conjunction with the Cisco 'AnyConnect' Secure Mobility Client and the Cisco Secure Network Server." *Id.* at 3. It was only during the July 13, 2023 hearing that plaintiff's counsel confirmed K.Mizra would advance this entirely new theory, "accusing the Cisco ISE product," standing alone, "of directly infringing system Claim 12 and product Claim 19." ECF No. 181 (Transcript) at 16:11-16; *see also id.* at 17:22-25 ("[I]t's our contention that the Cisco ISE software is that thing, that thing that performs each claimed function or step recited in Claims 12 and 19."); 19:23-25 ("Our

---

[1] Q: And is it your opinion that ISE running on a network carries out the steps of the claims of the '705 patent? A: ISE with AnyConnect together would perform those steps.

[2] Q: Dos your report discuss any evidence of users or sets of users who set up ISE with a particular policy? A: No. The report's focused on the methods performed by AnyConnect and ISE and how the system runs and operates. But I don't opine on specific user environments or specific clients and how they have it set up.

[3] Q: And to use the . . . accused posture module . . . you do understand that you need both an ISE Premier or Apex license and also an AnyConnect Premier or Apex license? A: That is correct.

contention is and our expert's contention is that the computer program product is Cisco ISE – is Cisco ISE product."); 20:22-24 (asserting that "the Cisco ISE product performs each and every function that is recited in that claim"); 27:18-20 ("The recited functions of the claim are performed by ISE. Cisco ISE. Which is our infringement position.").

In serving its opening and rebuttal expert reports (before summary judgment), Cisco and its non-infringement expert Dr. Clark relied on K.Mizra's originally disclosed theory. In particular, Dr. Clark opined that under K.Mizra's (mistaken) interpretation of the asserted patent claims, Cisco's NAC product, which Cisco sold more than a year before the effective filing date of the '705 patent,[4] has the same functionality as ISE and renders the asserted claims invalid in combination with other known prior art products. ECF No. 119-2 at ¶ 102. He did not, however, respond to theories K.Mizra had not asserted. That is, he did not offer a noninfringement opinion based upon Cisco's prior commercialization of ISE alone.[5]

Now that K.Mizra has announced its new theory, Cisco seeks to supplement Dr. Clark's report to make clear that the same facts previously presented in his opening report—facts about the predecessor to the accused ISE product—support a Section 273 prior commercial use defense.[6] *See* Ex. 1. The Supplemental Report is a minor change based entirely on already-disclosed facts. *Id.*

---

[4] Cisco contends that the effective filing date is September 27, 2005, and that the original specification fails to disclose the TPM limitation such that the '705 patent is invalid for inadequate written description.

[5] And while Cisco sold NAC, the predecessor to ISE, as early as June 2004, Cisco did not sell the other product in the accused combination, AnyConnect, early enough to constitute prior art or to support a prior commercial use defense under 35 U.S.C. § 273.

[6] Cisco objects to K.Mizra's belated introduction of a new infringement theory and anticipates moving *in limine* to bar the new theory at the appropriate time. Cisco seeks to present the supplement to Dr. Clark's report now given that the schedule for filing and resolving motions *in limine* has yet to be determined pending completion of additional damages-related discovery.

Fairness requires granting Cisco leave to make the proposed minor amendment in view of K.Mizra's new theory of liability. And permitting the amendment will not cause any prejudice to K.Mizra—particularly since trial has already been adjourned to allow *K.Mizra* to take additional damages-related discovery and rewrite the originally deficient report of its expert, Mr. Pellegrino.[7] Cisco therefore respectfully requests leave to serve the attached Supplemental Report.

## II. ARGUMENT

The Court has discretion to permit a party to supplement an expert report on a showing of "good cause." *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997). Courts consider four factors in evaluating good cause: "(1) the explanation for the failure [to submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Geiserman v. Macdonald*, 893 F.2d 787, 791 (5th Cir. 1990)). Each factor weighs in favor of granting Cisco's requested leave.

The ***first*** factor, Cisco's "explanation for the failure to submit a complete report on time," favors allowing the Supplemental Report. In its Preliminary Infringement Contentions served in February, 2021, K.Mizra identified only the ISE product as infringing. Ex. 4 (2/5/21 Preliminary Infringement Contentions) at cover doc. p. 2 and Ex. A p. 1. But after Cisco pointed out that K.Mizra had not identified any component of the ISE product that met the "trusted platform module" limitation, K.Mizra amended its contentions to allege that the Cisco AnyConnect Secure Mobility Client was "associated with a trusted platform module" when running on top of the Windows 10 or 11 operating system, Ex. 5 (8/27/21 First Amended Prelim. Infringement

---

[7] Although the supplement does not entail any new or additional facts on the part of Dr. Clark, Cisco has offered to make Dr. Clark available to K.Mizra for an additional deposition.

4

Contentions) at Ex. A p. 11-12; Ex. 2 (10/15/21 Final Infringement Contentions), at Ex. A pp. 16-17, 105, 112-13, and revised the definition of "Accused ISE Products" in its infringement contentions to include AnyConnect Secure Mobility Client, Ex. 2 (10/15/21 Final Infringement Contentions) at cover doc. pp. 1-2 and Ex. A pp. 1, 7. From the service of its Final Infringement Contentions in October 2021 through July 12, 2023, K.Mizra's only disclosed theory of the case was that the Cisco ISE and AnyConnect products, *together*, (and with AnyConnect installed on a Windows 10/11 device, at that), infringe the '705 patent. K.Mizra did *not* maintain an ISE-only infringement theory in its final contentions or expert report. The theory it presented included AnyConnect. K.Mizra also ceased to offer any definition of "accused products" that was limited to ISE, and relied solely on AnyConnect to meet, for example, the "trusted platform module" limitation (among other limitations). Ex. 2 (10/15/21 Final Infringement Contentions) at Ex. A pp. 16-17, 105, 112-13.

When he prepared his May 12, 2023 Report, Dr. Clark therefore appropriately responded to K.Mizra's theory. It was not until two months later, during summary judgment, that K.Mizra disclosed its new theory of the case (i.e., that the ISE product standing alone infringes Claims 12 and 19). Dr. Clark had no reason to respond to an un-asserted theory when he prepared his rebuttal report. Nor was the Section 273 defense available before K.Mizra asserted its new theory.[8] As a result, any "failure" to present his supplemental opinion in his original report is attributable to

---

[8] A Section 273 defense is available to any person who "commercially used the subject matter" claimed as infringing more than one year before "the effective filing date of the claimed invention." 35 U.S.C. § 273(a)(1)-(2). When K.Mizra's sole theory was that the ISE and AnyConnect products together were required for infringement, this defense was unavailable because Cisco did not sell AnyConnect far enough in advance of the effective filing date of the '705 patent. Now that K.Mizra has changed horses midstream, or at least added a new horse, the defense is available under K.Mizra's mistaken interpretation of the claims: the NAC product (the predecessor to ISE, which "does not differ from ISE in any way that is relevant to infringement" (Ex. 1 at ¶ 4)) was available more than a year before the effective filing date of the '705 patent.

K.Mizra's decision to advance a new infringement theory after the expert disclosure deadline, and not to Dr. Clark or Cisco.

*Kaist IP US LLC v. Samsung Electronics Co., Ltd.,* is instructive. 2018 WL 1833341, at *2 (E.D. Tex. Apr. 17, 2018). There, plaintiff KAIST accused defendants of infringing a patent related to a "fin field effect transistor." *Id.* at *1. But after KAIST served its infringement and damages reports, defendants disclosed, for the first time, their position that another product in the market (a "14 nm SOI") was a "commercially acceptable, noninfringing alternative." *Id.* KAIST's experts had not addressed the "14 nm SOI" process, and KAIST sought leave to supplement their reports. *Id.* Rejecting arguments that KAIST "should have anticipated" this position, the court held that the first *Reliance Insurance* factor favored amendment because nothing in the record before the expert disclosure indicated that defendants "would" take their new position (such that KAIST was not chargeable for failure to address it). *Id.* at *2.

So too here. Nothing in the record before summary judgment indicates that K.Mizra would (or could) argue that the ISE product, standing alone, directly infringes Claims 12 and 19. To the contrary, K.Mizra abandoned its "ISE only" infringement theory two years earlier after Cisco pointed out that it fails for lack of proof, including of the key "trusted platform module" limitation. This history strongly indicated that K.Mizra would *not* take such a stance. Accordingly, K.Mizra, not Cisco, is responsible for necessitating the supplement.

The **second** factor, "importance of the testimony," likewise favors supplementation. An expert's testimony is limited to the scope of his or her report. ECF No. 103, Order on Court MIL No. 23; *see also Guerra v. United States*, 2019 WL 7761443, at *3 (W.D. Tex. Nov. 7, 2019) ("However, the scope of the expert's testimony is limited to the opinions expressed in the written report supplied to the court pursuant to Rule 26."); *Kaist*, 2018 WL 1833341, at *2 ("[E]xperts are

confined to the content of their reports."). Unless Cisco can serve the Supplemental Report, Dr. Clark will be unable to present a full response to K.Mizra's new theory of infringement. Because it is "important" to allow Cisco to present a full defense, the Court should allow the Supplemental Report. *Kaist*, 2018 WL 1833341, *2 (finding supplementation "important" because, without it, "KAIST would arguably be unable to respond to Defendants' [new] contention").

The ***third and fourth*** factors, "potential prejudice" and "the availability of a continuance to cure such prejudice," also support allowing the Supplemental Report.

K.Mizra will not be prejudiced if the Court permits the Supplemental Report. While the Supplemental Report identifies a new legal basis for their relevance (that Cisco's NAC product "constitutes a prior commercial use of the invention claimed in the '705 patent" for purposes of 35 U.S.C. § 273), it does not depend on *any* new facts. Instead, Dr. Clark explains that his new opinion is based on "the same facts and technical analysis set forth in [his] opening report" for the proposition that the NAC anticipates and invalidates the '705 patent, was sold "before the priority date of the '705 patent," and "does not differ from the ISE in any way that is relevant to infringement." Ex. 1 at ¶¶ 4-6. K.Mizra has already had the chance to explore these reasons in discovery, so no additional inquiry should be necessary, but in any event Cisco is willing to make Dr. Clark available.

Any arguable prejudice will be easily mitigated. Because Dr. Clark's new opinion relies on the *same facts* as his prior opinion, this is not a case in which burdensome additional discovery will be required. *See Villavicencio v. BC Operating, Inc.*, 2018 WL 11471780, at *2 (W.D. Tex. Sept. 11, 2018) (no unfair prejudice where claims to be added to complaint were "sufficiently similar to [the] existing claims"). Nevertheless, if K.Mizra believes that Dr. Clark's Supplemental Report requires additional deposition testimony, it will have no trouble:  Cisco has already agreed

7

to produce Dr. Clark *and* its Rule 30(b)(6) witness again. And while a continuance to permit additional expert discovery is "preferred" over the exclusion of a supplemental expert report, *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 374 (5th Cir. 2016) (quotation marks omitted), none is necessary here: trial has already been adjourned to give *K.Mizra* time to supplement its damages expert's report. K.Mizra cannot fairly complain that the limited additional discovery (if any) attendant to the Supplemental Report will be overly burdensome while it is simultaneously rewriting its damages report from whole cloth. As a result, the third and fourth *Reliance Insurance* factors also support permitting the Supplemental Report.

\* \* \*

In short: each of the *Reliance Insurance* factors supports allowing the Supplemental Report. K.Mizra's shifting positions created the need for Dr. Clark's added opinion. Without the Supplemental Report, Cisco will be unable to present expert evidence on an important defense. And allowing the Supplemental Report will not prejudice K.Mizra, particularly because the Court has already continued the trial to allow *K.Mizra* to take additional expert discovery.

### III.   CONCLUSION

For these reasons, the Court should permit Cisco to serve Dr. Clark's Supplemental Report.

Dated: August 25, 2023                                      Respectfully submitted,

By: *Melissa R. Smith*
Melissa R. Smith (State Bar No. 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

8

Elizabeth R. Brannen (*Pro Hac Vice*)
ebrannen@stris.com
Kenneth J. Halpern (*Pro Hac Vice*)
khalpern@stris.com
Sarah Rahimi *(Pro Hac Vice)*
srahimi@stris.com
**STRIS & MAHER LLP**
777 S. Figueroa St, Ste 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Facsimile: (213) 216-0299

Jhaniel James *(Pro Hac Vice)*
jjames@stris.com
**STRIS & MAHER LLP**
111 N Calhoun St, Ste 10
Tallahassee, FL 32301
Telephone: (213) 995-6800
Facsimile: (813) 330-3176

*Attorneys for Defendant
Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 25, 2023, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned case were subsequently served on all counsel of record by electronic mail.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant met and conferred with counsel for Plaintiff. Counsel for Plaintiff opposes this motion.

*/s/ Melissa R. Smith*
Melissa R. Smith
